**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re

Dana Corporation, <u>et al.</u>,

                    Debtors.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

07 Civ. _____ (  )

Chapter 11

Bankr. Case No. 06-10354 (BRL)
(Jointly Administered)

## MEMORANDUM IN SUPPORT OF MOTION FOR WITHDRAWAL
## OF THE REFERENCE PURSUANT TO 28 U.S.C. § 157(d)

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
Attorney for EPA, Department of Commerce, and
Department of the Interior
86 Chambers Street – 3rd Floor
New York, New York 10007
Telephone: (212) 637-2745
Facsimile:  (212) 637-2730

- Of Counsel: -

RUSSELL M. YANKWITT
PIERRE G. ARMAND
Assistant United States Attorneys

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.   Nature and Stage of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    1.   The EPA Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    2.   The Claims of the Departments of the Interior and Commerce . . . . . . . . . . . . . . . 4

B.   Dana's Ownership of the CDE Site . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

C.   EPA's Activities at the Site . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

D.   EPA's Division of the Property Into Four Operable Units . . . . . . . . . . . . . . . . . . . 7

E.   Dana's Liability Under CERCLA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

F.   Debtors' Claim Objection and Estimation Motion Require the Consideration of Federal
Environmental Law and Determination of Matters at the Intersection of Environmental
and Bankruptcy Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

A.   Debtors' Claim Objection and Estimation Motion Are Subject to Mandatory
Withdrawal of the Reference to the District Court . . . . . . . . . . . . . . . . . . . . . . . 13

    1.   Proceedings that Require Consideration of Federal Laws Affecting Interstate
Commerce Must Be Withdrawn to the District Court . . . . . . . . . . . . . . . . . 13

    2.   CERCLA Affects Interstate Commerce as Is Required for Withdrawal of the
Reference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    3.   Resolution of Debtors' Claim Objection and Estimation Motion Requires a
Significant Interpretation of CERCLA . . . . . . . . . . . . . . . . . . . . . . . . . . 16

B.   This Court Should Withdraw the Reference As a Matter of Discretion . . . . . . . . . . . 21

    1.   The Issues Raised in Debtors' Claim Objection and Estimation
Motion Relate to Non-Core Matters . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    2.   The Other Orion Factors Further Favor Permissive Withdrawal . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

Page

Bear, Stearns Sec. Corp. v. Gredd,
    No. 01 Civ. 4379 (NRB), 2001 WL 840187 (S.D.N.Y. Jul. 25, 2001) . . . . . . . . . . . . . 17

City of New York v. Exxon Corp.,
    932 F.2d 1020 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Consolidated Edison Co. of NY v. UGI Utils. Inc.,
    423 F.3d 90 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

EPA v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.),
    134 B.R. 188 (N.D. Tex. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

EPA v. Nat'l Gypsym Co. (In re Nat'l Gypsum Co.),
    139 B.R. 397, 414 (N.D. Tex. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Hatzel & Buehler, Inc. v. Orange & Rockland Utils.,

    107 B.R. 34 (D. Del. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Hodel v. Virginia Surface Mining & Reclamation Assoc.,
    452 U.S. 264 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

In re Cablevision S.A.,
    315 B.R. 818 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17

In re Combustion Equip. Assocs., Inc.,
    67 B.R. 709 (S.D.N.Y. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16, 21

In re Lion Capital Group,
    63 B.R. 199 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Mishkin v. Ageloff,
    220 B.R. 784 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.),
    4 F.3d 1095 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23, 25

O'Neil v. Picillo,
    883 F.2d 176 (1st Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 20

Revere Copper and Brass, Inc. v. Acushnet Co. (In re Revere Copper and Brass, Inc.),
    172 B.R. 192 (S.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Silverman v. General Ry. Signal Co. (In re LECO Enters., Inc.),
    144 B.R. 244 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Southern Pacific Transp. Co. v. Voluntary Purchasing Groups, Inc.,
    252 B.R. 373 (E.D. Tex. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

United States v. Alcan Aluminum Corp. (In re Alcan Aluminum),
    315 F.3d 179 (2d. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

United States v. Alcan Aluminum Corp. (In re Alcan Aluminum),
    990 F.2d 711 (2d cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

United States v. Gurley,
    317 F. Supp. 2d 870 (E.D. Ark. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

United States of America v. Johns-Manville Corp. (In re Johns-Manville Corp.),
    63 B.R. 600 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 21

## FEDERAL STATUTES

28 U.S.C. § 157(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 24

30 Cong. Rec. § 6081 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

42 U.S.C. § 9601(14) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

42 U.S.C. § 9607(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9, 1 0

42 U.S.C. § 9607(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

42 U.S.C. § 9607(a)(4)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,

42 U.S.C. § 9607(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 25

42 U.S.C. § 9607(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## FEDERAL REGULATIONS

40 C.F.R. § 300 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 27

-iii-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - x

In re

Dana Corporation, et al.,

                          Debtors.

- - - - - - - - - - - - - - - - - - - - - - - - - - x

07 Civ. _____ (    )

Chapter 11

Bankr. Case No. 06-10354 (BRL)
(Jointly Administered)

## MEMORANDUM IN SUPPORT OF MOTION FOR WITHDRAWAL
## OF THE REFERENCE PURSUANT TO 28 U.S.C. § 157(d)

The United States of America, on behalf of the United States Environmental Protection

Agency ("EPA"), the National Oceanic and Atmospheric Administration of the Department of

the Commerce (the "Department of Commerce"), and the Department of the Interior acting

through the Fish and Wildlife Service (the "Department of the Interior") (collectively the

"Government"), respectfully move for withdrawal to the District Court of the objection of Dana

Corporation and forty of its domestic direct and indirect subsidiaries ("Dana" or "Debtors") to

the Government's Proofs of Claim ("Debtors' Claim Objection") and Debtors' motion for an

order establishing procedures to estimate the Government's claims ("Debtors' Estimation

Motion"), filed in In re Dana Corporation, No. 06-10354 (BRL).

### PRELIMINARY STATEMENT

The mandatory withdrawal provision of 28 U.S.C. § 157(d) require a District Court to

withdraw the reference if the District Court "determines that resolution of the proceeding

requires consideration of both title 11 and other laws of the United States regulating

organizations or activities affecting interstate commerce." Here, the issues raised in Debtors'

Claim Objection and Estimation Motion require substantial and material consideration of a

complex federal environmental statute, namely, the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 et seq., which regulates organizations or activities affecting interstate commerce. To resolve Debtors' Claim Objection and Estimation Motion, the Court must, inter alia, consider claims for reimbursement of past and future environmental cleanup costs arising from six different Superfund sites pursuant to CERCLA. This process will necessarily involve adjudication of significant issues of joint and several liability, natural resources damages, divisibility, and the response actions selected to address environmental contamination against the backdrop of Debtors' goal of emerging from bankruptcy as soon as possible. Consideration of these legal issues requires the Court to withdraw the reference from the Bankruptcy Court to the District Court.

Alternatively, should this Court find that the mandatory withdrawal provision does not apply, the Government respectfully requests that the Court exercise its discretion to withdraw the reference to consider Debtors' Claim Objection and Estimation Motion pursuant to 28 U.S.C. § 157(d), which provides for permissive withdrawal for "cause shown." The CERCLA issues raised by Dana relate to non-core proceedings, and the most efficient use of the parties' and the courts' resources will be achieved by withdrawal to the District Court.

## FACTUAL BACKGROUND

### A.    Nature and Stage of Proceedings

On March 3, 2006, Dana filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Thereafter, on September 21, 2006, the Government timely filed two Proofs of Claim, asserting claims on behalf of EPA, the Department of Interior, and the Department of Commerce. Copies of the two Government Proofs of Claim at issue (Claim Nos. 13796 and

13321), are attached as Exhibit A to the Declaration of Russell M. Yankwitt ("Yankwitt Decl."), dated September 18, 2007, and submitted herewith.

Almost one year after the Government filed its Proof of Claim, on September 5, 2007, Dana filed its Estimation Motion for the entry of an order establishing certain proposed estimation procedures with respect to the Government's Proofs of Claim and to estimate the Proofs of Claim pursuant to those procedures. A copy of the Estimation Motion is attached as Exhibit B to the Yankwitt Decl. In this motion, Dana proposes that the Court adopt a schedule pursuant to which the parties would be required to complete all fact and expert discovery within two months and appear for a final estimation hearing in December 2007. Thereafter, on September 7, 2007, Dana objected to the Government's Proofs of Claim. A copy of Dana's objection to the Government's Proofs of Claim is attached as Exhibit C to the Yankwitt Decl.

On September 14, 2007, the Government filed an objection to the Estimation Motion on the grounds, inter alia, that: the matter should be withdrawn to district court; five of the six Government claims are not suitable for estimation or early adjudication because they are relatively small and/or not contingent and unliquidated environmental liabilities and thus would not unduly delay administration of the bankruptcy; and the schedule proposed by Dana is unreasonable and fails to provide adequate time for the parties to complete meaningful discovery concerning the parties' claims and defenses. A copy of the Government's objection to the Estimation Motion is attached as Exhibit D to the Yankwitt Decl.

1.    The EPA Claim

In the Proofs of Claim, the Government asserted EPA's entitlement to recovery of response costs incurred and to be incurred by EPA in connection with one "Superfund site" in

Page 3

South Plainfield, New Jersey, which Dana owned during the time that the Site was operated by Cornell-Dubilier Electronics, Inc. ("CDE') (the "CDE site"). (See Yankwitt Decl. Ex. A (Proof of Claim No. 13796 ("POC 13796 ") ¶ 1(a). In addition, EPA seeks recovery of past and future response costs incurred and to be incurred by EPA at five other Superfund sites owned and/or operated by Dana during the time that hazardous substances were disposed of there, or at which Dana arranged for disposal of hazardous substances. (See id.; see also Yankwitt Decl. Ex. A, Proof of Claim 13321 ("POC 13321") ¶ 1)).

Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), Dana is liable for such environmental response costs as an owner and/or operator at the time of disposal of hazardous substances, or as an arranger for disposal of hazardous substances. EPA has estimated that Dana will be responsible for approximately $295 million for past and future costs for the six Superfund sites. (See generally POC 13796 and POC 13321).

   2.    The Claims of the Departments of the Interior and Commerce

In the Proofs of Claim, the Government also asserted a claim on behalf of the Department of the Interior and the Department of Commerce pursuant to section 107(f) of CERCLA, 42 U.S.C. § 9607(f), for natural resource damages at the CDE site in an amount estimated to be between $20 million and $37 million. (POC 13796 ¶ 51). These damages represent the reasonable costs to "restore, replace or acquire the equivalent of the injured natural resources, plus the reasonable costs of assessing the damages" at the CDE site. (Id.). This amount is estimated because remedial action has not been completed. (Id. ).

**B.    Dana's Ownership of the CDE Site**

The response costs associated with the CDE site account for the largest portion of the

Page 4

Government's claim. The Government's Proofs of Claim seek $250 million for past and future

costs of environmental cleanup, as well as penalties for the CDE site. (See POC 13796 ¶¶ 42,

43, 47, 48). The property formerly owned by Dana and operated by CDE (the "Facility")[1] now

operates as an industrial park, which consists of approximately 26 acres, containing buildings

that until recently were used by commercial and industrial tenants. (Id. ¶ 34). The CDE site also

includes contaminated residential, commercial, and municipal properties in the vicinity of the

Facility, contaminated groundwater, and contaminated sediments at the Bound Brook. (Id.).

Dana, and its corporate predecessor, Spicer Manufacturing Corporation, owned the

Facility from approximately 1914 until 1956, when Dana sold the Facility to CDE. (Debtors'

Claim Objection ¶¶ 1, 3, 26). Dana leased the Facility to CDE from 1936 to 1956. (See id.

¶ 27). CDE occupied the Facility from 1936 to 1962, manufacturing electronic components

including capacitors. (Id.).

While Dana owned the Facility, CDE used polycholorinated biphenyls ("PCBs") and

chlorinated organic solvents in its manufacturing processes. (POC 13796 ¶ 35). CDE also

spilled and disposed of PCB-contaminated materials and other hazardous substances within the

buildings, as well as directly on the Facility soils. (Id.). During this time, CDE further disposed

of defective capacitors in a low-lying open area on the property. (Declaration of Peter Mannino,

dated September 18, 2007 ("Mannino Decl.") ¶ 7). CDE's activities led to migration of

contaminants to the area near the Facility. (See id.). As a result of environmental investigations

---

[1]    For ease of reference, the term the "Facility" refers to the real property owned by Dana
and leased to CDE, whereas the term the "CDE site" refers to both the Facility property as well
as the area outside of the Facility that is contaminated as a result of releases of hazardous
substances from the Facility; i.e., adjacent properties, groundwater, and soil and sediments in the
Bround Brook corridor.

performed at the CDE site, EPA has detected PCBs in the groundwater, soils and in building interiors at the industrial park, at adjacent residential, commercial, and municipal properties, and in the surface water and sediments of the Bound Book. ( POC 13796 ¶ 34). EPA has also detected high levels of volatile organic compounds in the Facility soils and in the groundwater at the CDE site. (Id. ¶ 36).

From the time CDE stopped using the Facility in 1962, it has been operated as a rental property, occupied by more than 100 commercial and industrial companies. (Mannino Decl. ¶ 9). However, the majority of the disposal of hazardous substances occurred while Dana owned the Facility and leased it to CDE.[2] (Id.).

## C.    EPA's Activities at the Site

In June 1996, at the request of the New Jersey Department of Environmental Protection ("NJDEP"), EPA collected and analyzed surface soil, surface water, and sediment samples at the CDE site. (Id. ¶ 10). The results of the analysis revealed that elevated levels of PCBs, VOCs and inorganic substances were present at the CDE site. (Id.).

In January 1997, EPA issued notices of liability to CDE and DSC advising them of their status as potentially responsible parties ("PRPs") for the CDE site. (Id. ¶ 11). In March 1997, EPA ordered DSC to perform a removal action to mitigate risks associated with contaminated soil and surface water runoff at the Facility. (Id.). In October and November 1997, EPA

---

[2]    In June 1961, CDE sold the Facility to Lamitex, Inc. and C.R.D. Realty Corp., but CDE remained as a tenant on the property until June 1962. Lamitex and C.R.D. Realty Corp. were later merged into Marco Investing Corp., and, in November 1976, Marco sold the property to a sister corporation, the corporate predecessor of the current owner, D.S.C. of Newark Enterprises, Inc. ("DSC"). (Mannino Decl. ¶ 13).

Page 6

collected soil and interior dust samples from residential properties near the Facility, and

concluded that exposure to PCBs in dust and soil posed a potential health concern for residents

of the properties tested.  (Id. ¶ 12).  To limit the potential for exposure to PCBs until a final

remedy could be selected, in March 1998, EPA initiated removal activities to clean additional

residential properties near the Facility.  (Id.).  EPA cleaned the interiors of several homes, and

entered into an administrative order on consent ("AOC") with DSC and CDE for removal of

contaminated soil from the affected properties.  (Id. ¶ 13).  In July 1998, EPA included the CDE

site on the National Priorities List.  (POC 13796 ¶ 37).

**D.    EPA's Division of the CDE Site into Four Operable Units**

EPA initiated the Remedial Investigation ("RI") for the CDE site in 2000, and divided the

Site into four operable units ("OUs").  (Id. ¶ 37).  EPA completed the RI and Feasibility Study

("FS") for OU1, consisting of contaminated soil and interior dust at residential, commercial and

municipal properties in the vicinity of the Facility, in August 2001.  EPA issued the Record of

Decision ("ROD") for OU1 on September 30, 2003.  (Id. ¶ 38).  The OU1 ROD calls for the

excavation of soils contaminated with PCBs from several properties within the CDE site, and the

investigation of additional properties in a defined study area during the remedial design phase to

determine which, if any, additional properties will require remediation.  (Id.).

In March 2004, EPA wrote to Dana, demanding payment of costs incurred at the CDE

site, inviting Dana to make a good faith offer to perform the remedial design and remedial action

("RD/RA") that EPA had selected for OU1.  (Mannino Decl. ¶ 17).  Dana declined to make an

offer to pay any costs or perform the work.  (POC 13796 ¶ 38).  Thereafter, in August 2004, EPA

issued a unilateral administrative order ("UAO") to Dana.  (Id.).  Again, Dana declined to

perform the work required. (Id.). Dana contended that it had sufficient cause to refuse to perform on the asserted grounds that: 1) it had never owned the properties that comprise OU1, the spread of contaminants to the OU1 properties likely occurred after Dana had sold the Facility and the definition of the "Site" should properly be limited to the Facility; 2) there is no imminent and substantial endangerment to support the issuance of a UAO for the OU1 RD/RA; 3) the RI/FS and the ROD for OU1 prepared by EPA do not comply with the National Contingency Plan ("NCP"); and 4) the harm is divisible, and Dana should not have to pay for any cleanup of PCBs because it never used PCBs in its own operations. (Mannino Decl. ¶ 18).

On September 30, 2004, EPA issued the ROD for OU2, which addressed contaminated soil and buildings at the Facility. (POC 13796 ¶ 38). The ROD for OU2 calls for excavation of capacitors discarded on the Facility by CDE as well as some of the contaminated soils, and capping of the remainder of the soils. (Id.). The most heavily contaminated soils will be treated on-site using low temperature thermal desorption or transported off site for disposal. (Id.). EPA is performing the remedial design for OU2, and has also begun the OU2 remedial activities. (Id.). To date, EPA has demolished approximately half of the contaminated buildings located in OU2. (Mannino Decl. ¶ 20).

In July 2005, Dana entered into an AOC with EPA to perform the RI/FS for OU3, which addressed contaminated CDE site groundwater and associated soil vapor, under EPA's oversight. (POC 13796 ¶ 40). On February 3, 2006, Dana submitted a draft work plan for EPA's review and comment. (Mannino Decl. ¶ 22). This groundwater investigation will be especially complex, given the complicated hydrogeology in this part of New Jersey, the fact that trichloroethylene ("TCE") contamination is known to be widely present in the South Plainfield

groundwater, and the possibility that other sources of contamination will be identified. (Id. ¶ 23). EPA was nearing completion of its review of the draft work plan, when on May 1, 2006, Dana advised EPA that, in light of its bankruptcy, it would cease compliance with the AOC. (POC 13796 ¶ 40).

After Dana terminated its performance of the OU3 RI/FS, EPA was compelled to undertake this work. (Mannino Decl. ¶ 25). EPA expects to complete the RI/FS for OU3 and to undertake the RI/FS for OU4 to address the contaminated sediments in the Bound Brook by March 2010. (Id.). While sufficient information is available concerning the CDE site conditions for EPA to draw reasonable conclusions and reach an understanding of the remedial activities that will likely be required at the CDE site to address the groundwater contamination and associated soil vapor for the OU3 remedy, presenting an estimate of the cost for the remedial action for OU3 will require EPA to examine carefully many variables associated with the construction, operation and maintenance of the groundwater treatment system. (Id. ¶ 26).

Similarly, preparing and presenting a cost estimate for the OU4 remedy, and the long-term monitoring that will likely be required following removal of contaminated soils and sediments, will require examination of complex environmental, ecological and engineering issues. (Id. ¶ 27). These issues will include the use and ecological profile of the Bound Brook and associated low-lying areas, the volume of contaminated material likely to be excavated (including capacitors buried in the banks of the Bound Brook), the expected treatment and disposal costs for the excavated materials, and the duration of the remedy. (Id. ¶ 28).

E.    **Dana's Liability Under CERCLA**

Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in pertinent part that:

(1)    the owner and operator of a vessel or a facility,

(2)    any person who at the time of disposal of any hazardous substances owned or operated any facility at which such hazardous substances were disposed of,

. . .

from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance,

shall be liable for all costs of all response actions incurred by the United States consistent with the National Contingency Plan, 40 C.F.R. § 300.

The CDE site is contaminated with "hazardous substances," as defined in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14). This contamination at the CDE site constitutes a release or threatened release of hazardous substances within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a). As described above, while Dana owned the Facility, CDE disposed of hazardous substances at the CDE site by spilling and dumping hazardous substances in and on the Facility, and through air emissions and surface water run-off from the manufacturing facility onto other parts of the CDE site. EPA's remedial work at the CDE site is being undertaken to abate the release or threatened release of hazardous substances and to alleviate the imminent and substantial threat to the environment posed by conditions at the CDE site. Accordingly, Dana is liable for the costs that EPA incurs or has incurred in conducting response actions at the Site.

Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), Dana is liable to the Government for all response costs incurred and to be incurred by the Government in connection

with the CDE site. Debtors' liability to the Government is strict, joint and several with that of other liable parties. See United States v. Alcan Aluminum Corp. (In re Alcan Aluminum Corp.), 315 F.3d 179, 186 (2d. Cir. 2003) (applying joint and several liability to CERCLA claim); O'Neil v. Picillo, 883 F.2d 176, 179 (1st Cir. 1989) (noting that "courts have continued to impose joint and several liability on a regular basis"); EPA v. Nat'l Gypsym Co. (In re Nat'l Gypsum Co.), 139 B.R. 397, 414 (N.D. Tex. 1992) ("CERCLA as developed by case law provides for a joint and several standard of liability where the harm is indivisible."); see also United States v. Gurley, 317 F. Supp. 2d 870, 883-84 (E.D. Ark. 2004) (same, collecting cases).

EPA anticipates that additional response actions will be conducted at the CDE site and that EPA will continue to incur costs in connection with those response actions. Because EPA has not yet completed its investigation of the CDE site, the ultimate cost of the response actions is unknown. (See Mannino Decl. ¶ 26, 27). However, at this time, EPA estimates that it will incur approximately $250 million in response costs at the CDE site. (See POC 13796 ¶¶ 42, 43, 47, 48). These future costs will likely include the costs for soil excavation and disposal at an approved off-site hazardous waste disposal facility. (See id.). The Government's Proofs of Claim seek recovery of all past and future response costs incurred by EPA at the CDE site. (See id.).

**F.**     **Debtors' Claim Objection and Estimation Motion Require the Consideration of Federal Environmental Law and Require Determination of Matters at the Intersection of Environmental and Bankruptcy Law**

Dana recognizes that it is liable for environmental response costs as an owner and/or operator at the time of disposal of hazardous substances, or as an arranger for disposal of hazardous substances pursuant to Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2). (See

Debtors' Claim Objection ¶ 28).  Dana asserts, however, that its liability with respect to the CDE

site should be mitigated, arguing that during part of the period when Dana owned the property

and leased it to CDE, the United States Department of Defense "actively utilized the CDE site for

manufacturing activities in support of the United States government's efforts in World War II."

(Id.).[3]  Debtors' Claim Objection essentially contends -- contrary to established Second Circuit

precedent -- that the Government cannot assert a claim for joint and several liability.  (See, e.g.,

id. ¶ 42).  Debtors submit that "[u]nder the terms of CERCLA, the court should allocate

liability."  (Id. ¶¶ 50-55).  Dana also asserts that under Section 107(b)(1) of CERCLA, 42 U.S.C.

§ 9607(b)(1), the damages at the CDE site were the result of "unforeseeable climatic conditions."

(Debtors' Claim Objection ¶ 86).

     In addition, to resolve Debtors' Claim Objection and to evaluate the Government's

claims, the Court will be required to assess the validity of the Government's causes of action

based on natural resource damages under CERCLA.  Pursuant to the relevant federal

environmental laws, Dana asserts, in part, that it did not "proximately cause" the alleged releases,

injuries, destruction, and loss of property under Section 107(a)(4)(c) of CERCLA, 42 U.S.C. §

9607(a)(4)(c).  (Debtors' Claim Objection ¶ 86).  This Court will, therefore, be required to

undertake a detailed and complex interpretation of federal, non-bankruptcy law.  Accordingly,

this Court must withdraw the reference to adjudicate Debtors' Claim Objection and Estimation

Motion in accordance with 28 U.S.C. § 157(d).

---

[3]   The Government is in the process of reviewing data from the 1940s and interviewing
consultants/experts to determine if the Department of Defense bears any liability for the
contamination of the CDE site, but, in any event, the Government's potential liability is not
before the Court at this time.

## ARGUMENT

**A.**     **Debtors' Claim Objection and Estimation Motion Are Subject to Mandatory Withdrawal of the Reference to the District Court**

Under the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, 98 Stat. 333, the district courts have original, but not exclusive, jurisdiction of "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157(a), a federal district court has discretion to refer to bankruptcy judges "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11."

An express limitation on the authority of district courts to refer matters to bankruptcy courts is contained in 28 U.S.C. § 157(d). That section provides that:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court <u>shall</u>, on timely motion of a party . . . withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d) (emphasis added). Accordingly, withdrawal is mandatory where resolution of proofs of claim involves consideration of a federal law outside the Bankruptcy Code that affects interstate commerce. <u>See</u> <u>id.</u>[4]

    1.     Proceedings that Require Consideration of Federal Laws Affecting Interstate Commerce Must Be Withdrawn to the District Court

Courts in this District have consistently held that the "shall" language in 28 U.S.C.

---

[4]     The legislative history of 28 U.S.C. § 157(d) makes it clear that when laws affecting interstate commerce "are material to resolution of the proceeding," withdrawal of the proceeding to the district court is mandatory. 130 Cong. Rec. § 6081 (daily ed. June 19, 1984) (remarks of Sen. DeConcini).

§ 157(d) imposes a mandatory condition on district courts.  For example, in <u>In re Combustion</u> <u>Equipment Associates, Inc.</u>, 67 B.R. 709, 711 (S.D.N.Y. 1986), the district court rejected the argument that the statutory term "shall" actually means "may."  The court indicated that "[n]ot only is the word 'shall' unambiguous on its face, but the legislative history, which is controlling, supports the conclusion that withdrawal is mandatory" where substantial and material consideration of federal statutes other than the Bankruptcy Code is necessary to resolve the case or proceeding.  <u>Id.</u>

Similarly, in <u>American Telephone and Telegraph Company. v. Chateauguay Corp.</u>, the court held that where the issues in question require a "significant interpretation of federal laws that Congress would have intended to have decided by a district judge rather than a bankruptcy judge[,] . . . [the] district court <u>does not have</u> discretion to deny a petition for withdrawal."  88 B.R. 581, 584 (S.D.N.Y. 1988) (emphasis added) (citing <u>United States of America v. Johns-Manville Corp. (In re Johns-Manville Corp.)</u>, 63 B.R. 600, 602 (S.D.N.Y. 1996) and <u>In re Combustion Equip. Assocs.</u>, 67 B.R. at 711)).  <u>See also</u> <u>In re Cablevision S.A.</u>, 315 B.R. 818, 821 (S.D.N.Y. 2004) ("matters 'must be withdrawn under § 157(d) if they require the bankruptcy court to substantially interpret Federal statutes which affect interstate commerce.'") (quoting <u>City of New York v. Exxon Corp.</u>, 932 F.2d 1020, 1026 (2d Cir. 1991)).

2.    CERCLA Affects Interstate Commerce as Is Required for Withdrawal of the Reference

CERCLA is "'rooted in the commerce clause' and clearly is the 'type of law [ ] Congress had in mind when it enacted the mandatory withdrawal provision.'"  <u>In re Combustion Equip. Assocs.</u>, 67 B.R. at 713 (granting withdrawal of reference with respect to issue of whether post-

bankruptcy CERCLA claim was discharged) (quoting <u>United States v. ILCO (In re ILCO)</u>, 48 B.R. 1016, 1021 (N.D. Ala. 1985)); <u>Johns-Manville</u>, 63 B.R. at 602 (granting withdrawal of reference regarding whether post-petition CERCLA claim was covered by automatic stay) (quoting <u>ILCO</u>, 48 B.R. at 1021).

Indeed, the very basis for federal environmental regulation is the Commerce Clause. <u>See</u> <u>Hodel v. Virginia Surface Mining & Reclamation Assoc.</u>, 452 U.S. 264, 282 (1981) ("[W]e agree with the lower Federal courts that have uniformly found the power conferred by the Commerce Clause broad enough to permit congressional regulation of activities causing air or water pollution, or other environmental hazards that may have effects in more than one State"). Moreover, the mandatory withdrawal provision of 157(d) "assures litigants that under certain circumstances their assertion of a federally created right will be considered outside the narrow confines of a bankruptcy court proceeding by a district court, which considers laws regulating interstate commerce on a daily basis and are 'better equipped to determine them than are bankruptcy judges.'" <u>American Tel. & Tel.</u>, 88 B.R. at 582 (quoting 1 Collier on Bankruptcy ¶ 3.01 at 3-53 (15th ed 1986)).

The federal courts have consistently recognized that CERCLA affects interstate commerce and that matters arising under CERCLA are subject to the mandatory withdrawal provision of 28 U.S.C. § 157(d). For example, in <u>ILCO</u>, the United States sought relief under provision of CERCLA and other environmental statutes against debtors. 48 B.R. at 1021. At the time the United States filed suit, ILCO was undergoing a Chapter 11 bankruptcy reorganization. <u>Id.</u> The district court concluded that mandatory withdrawal was appropriate because, to resolve the disputed matter, the court had to consider and apply the relevant environmental statutes. <u>Id.</u>

Page 15

at l021-1022.[5]  See also In re Combustion Equip. Assocs., 67 B.R. at 713; Johns-Manville, 63

B.R. at 602.

3.    Resolution of Debtors' Claim Objection and Estimation Motion Requires a
Significant Interpretation of CERCLA

Withdrawal of the reference is required in actions presenting issues at the intersection of

environmental and bankruptcy laws, such as those presented in Debtors' Claim Objection and

Estimation Motion. See Nat'l Gypsum Co., 134 B.R. at 192. There, the district court held that

mandatory withdrawal of the reference was appropriate where the Government had filed proofs

of claim against the Chapter 11 debtors for past response costs, future response costs, and natural

resource damages under CERCLA. Id. at 192. The court noted the inherent goals of CERCLA

(i.e., cleaning up toxic waste sites promptly and holding liable those responsible for the

pollution) can be in conflict with the goals of bankruptcy (i.e., allowing debtors a fresh start by

discharging them of liability). Id. at 192. Weighing these competing goals, the court held that

withdrawal was appropriate. Id. In particular, the court rejected the debtors' claim that issues

relating to response costs and allocating liability involved an application of bankruptcy law. Id.

at 193. Finally, the court noted that "[i]n all bankruptcy cases involving consideration of

CERCLA where at least one party has moved for withdrawal of the reference pursuant to section

157(d), mandatory withdrawal has been granted." Id. (citing American Tel. & Tel., 88 B.R. at

581; In re Combustion Assocs., 67 B.R. at 713; Johns Manville, 63 B.R. at 602-03).

In Johns-Manville, a court in this District held that cases involving "significant

interpretation of the CERCLA statute, . . . in addition [to] assessment of the relationship of such

---

[5]    Mandatory withdrawal applies to both core and non-core proceedings. See ILCO, 48
B.R. at l020; In re Lion Capital Group, 63 B.R. 199, 203 (S.D.N.Y. 1985).

Page 16

CERCLA claims to the automatic stay arising under § 362(a)(1) of the Bankruptcy Code . . . falls within the category of cases mandatorily withdrawn from the Bankruptcy court's jurisdiction by § 157(d)."). 63 B.R. at 603. See also In re Cablevision S.A., 315 B.R. at 821 ("'substantial and material' standard is satisfied even where a non-bankruptcy federal statute only 'arguably conflicts' with the Bankruptcy Code") (citing Bear, Stearns Sec. Corp. v. Gredd, No. 01 Civ. 4379 (NRB), 2001 WL 840187, at *2 (S.D.N.Y. Jul. 25, 2001) (holding that mandatory withdrawal was required where the court had to resolve a question pursuant to the federal securities laws to resolve the proceeding)); Southern Pac. Transp. Co. v. Voluntary Purchasing Groups, Inc., 252 B.R. 373 (E.D. Tex. 2000) (process of approving debtors' contested environmental settlement agreement required substantial and material consideration of CERCLA, which mandated withdrawal to the district court); Hatzel & Buehler, Inc. v. Orange & Rockland Utils., 107 B.R. 34, 39 (D. Del. 1989) (applying the mandatory withdrawal provision where a subcontractor-debtor brought an adversary proceeding against primary contractors alleging violations of federal safety and environmental regulations).

Similarly, in ILCO, the Government sought to recover its costs under CERCLA and other environmental statutes while ILCO was undergoing Chapter 11 reorganization. 48 B.R. at 1021. In granting the Government's motion to withdraw the reference as to its environmental claims, the district court concluded that under the "substantial and material consideration" test, withdrawal was mandatory because "[w]ithout a substantial and material consideration of these [environmental] statutes, the Federal government has no case against defendants." Id. at 1021-1022.

That same substantial and material consideration is presented by Debtors' Claim

Objection in the present action. CERCLA delineates the statutory causes of action asserted in the

Government's Proofs of Claim against Dana for recovery of its environmental response costs.

Dana's Claim Objection goes to the heart of the validity of these claims and its liability under

CERCLA.[6]

Resolution of Debtors' Claim Objection and Estimation Motion will require substantial

consideration of CERCLA as well as potential conflict between CERCLA and the Bankruptcy

Code. For example, Dana appears to argue that under CERCLA, it should not be held jointly and

severally liable for the costs incurred and to be incurred at the CDE site.[7] In its Claim Objection,

Dana asserts that "basic principles of equity should preclude" the Government from asserting

---

[6]    There is some conflict among courts as to whether withdrawal of the reference is
mandatory to resolve the issue of when a CERCLA claim arises for bankruptcy purposes. For
example, in American Tel. & Tel., the district court held that resolution of when a CERCLA
claim arises for bankruptcy purposes requires mandatory withdrawal. See 88 B.R. at 588
(reasoning that withdrawal of reference was appropriate because "[r]esolution of the issues
presented by the AT&T Complaint will require significant interpretation of CERCLA and
consideration of the ways in which the values of environmental preservation was enacted to
protect can be reconciled with the familiar concerns of the Bankruptcy Code"). On the other
hand, in an earlier decision, a district court held that the issue of when a CERCLA claim arises
was a matter of bankruptcy law. See Revere Copper and Brass, Inc. v. Acushnet Co. (In re
Revere Copper and Brass, Inc.), 172 B.R. 192, 198 (S.D.N.Y. 1994); see also LTV Steel Co., Inc.
v. City of Buffalo (In re Chateaugay Corp.), No. 00 Civ. 9429 (SHS), 2002 WL 484950, at *6
(S.D.N.Y. Mar. 29, 2002) (following Revere Copper and denying a withdrawal motion where the
issue was when the debtors' claim arose and whether it was previously discharged by a prior
bankruptcy).

    These decisions, however, are immaterial because the question before this Court is not
when the Government's CERCLA claims arose, but rather the resolution of substantive disputes
under CERCLA (namely, whether joint and several liability applies, allocation of liability among
PRPs, whether EPA employed the proper remedial measures, and the proper costs of those
remedial measures) – issues that are not governed by bankruptcy law.

[7]    Dana also asserts in its Objections that it should not be held liable under the principle of
joint and several liability for the other five Superfund sites. (Debtors' Claim Objection ¶¶ 87-
110).

joint and several liability against Dana because the Defense Department is allegedly partially liable for the contamination at the CDE site. (Debtors' Claim Objection ¶ 42). Thus, Debtors are appealing to the inherent equitable powers of a Bankruptcy court.

Debtors' contention is contrary to Second Circuit case law under which the Government may assert a CERCLA claim against Dana for the entire cost of the remedial action, and Dana can then assert a Section 113 counterclaim for any amounts for which the Government is allegedly responsible. See Consolidated Edison Co. of NY, Inc. v. UGI Utils. Inc., 423 F.3d 90, 100, n.9 (2d Cir. 2005). Thus, Dana's equitable argument contradicts recent case law under CERCLA. See id. ("Some might argue that a person who, if sued would be partly liable for necessary costs of response may be unjustly enriched if allowed under section 107(a) to recover 100 percent of its costs from other persons. This fear seems misplaced . . . [because there is] no bar precluding a person sued under 107(a) from bringing a counterclaim under section 113(f) for offsetting contribution against the plaintiff volunteer who, if sued, would be liable under section 107(a)."). Id. Moreover, at a minimum, Dana's contention would require the Court to decide whether to apply applicable CERCLA precedent or employ equitable principles of bankruptcy law notwithstanding the contrary dictates of CERCLA.

To resolve Debtors' Claim Objection, the Court will also have to address Dana's divisibility of harm argument, which in turn, will require the Court to interpret CERCLA. Dana asserts that if a Court determines that it "did not contribute to the release and the clean-up costs that followed, or contributed at most to only a divisible portion of the harm," it "may escape any liability for response costs." (Debtors' Claim Objection ¶ 48 (citing United States v. Alcan Aluminum Corp.), 990 F.2d 711, 722 (2d Cir. 1993)). To determine the validity of Dana's

assertion, this Court must apply CERCLA -- not bankruptcy law. See id. (applying CERCLA and determining that claim was not divisible); see also O'Neil, 883 F.2d at 178-179 (applying CERCLA and noting that "[t]he practical effect of placing the burden on defendants has been that responsible parties rarely escape joint and several liability [and that] courts regularly find that where wastes of varying (and unknown) degrees of toxicity and migratory potential commingle, it simply is impossible to determine the amount of environmental harm caused by each party").[8]

Debtors' Claim Objection will also require the court to evaluate whether the Government's response costs were incurred for "response actions" taken in a manner "not inconsistent" with the National Contingency Plan ("NCP") as defined by CERCLA. Dana asserts that some of the Government's response costs are inconsistent with the NCP, which contains regulations addressing the performance of CERCLA removal and remedial response actions. Dana contends that the Government's costs are allegedly the result of arbitrary and capricious actions. Dana's challenge to EPA's costs and the Government's response will therefore raise legal, technical, and policy issues that will require the application of CERCLA.

The resolution of Debtors' Objection to the claims of the Department of Interior and Department of Commerce will also require a substantial and material consideration of CERCLA, thus warranting removal to the district court. For example, with respect to injuries to natural resources, the Court will have to consider, among other non-bankruptcy legal issues, an interpretation of the causal link required by § 107(a)(4)(C) of CERCLA, and to interpret what

---

[8]   Further, to the extent that Dana argues that the Court may under CERCLA allocate response costs among liable parties, Dana concedes that such allocation occurs through application of CERCLA -- not through an application of title 11 of the Bankruptcy Code. (See Debtors' Claim Objection ¶¶ 50-55).

qualifies as an "act of God" defense under CERCLA. (<u>See</u> Debtors Objections ¶ 86).

As noted above, courts in this District have, on several occasions, faced the conflict between CERCLA's policy of comprehensive environmental cleanups and the Bankruptcy Code's policy of equity and discharges of debtors to give them a fresh start. In these cases, the district courts have decided such issues in favor of CERCLA. <u>See, e.g.</u>, <u>American Tel. & Tel.</u>, 88 B.R. at 587 ("The AT&T Complaint raises important issues of Federal environmental policy, which can at times take precedence over seemingly contrary provisions of the Bankruptcy Code"); <u>In re Combustion Equip. Assocs.</u>, 67 B.R. at 713 ("[T]he determination [of when a CERCLA claim accrues is] . . . an important question with economic and environmental ramifications reaching beyond the bankruptcy arena); <u>Johns-Manville</u>, 63 B.R. at 602 ("The question for adjudication in these adversary proceedings requires not only . . . significant interpretation of the CERCLA statute, but, in addition, assessment of the relationship of such CERCLA claims to the automatic stay [provisions] of the Bankruptcy Code"). In each of these cases, resolution of the potential conflict required a balancing of the statutes' competing objectives, which, under § 157(d) must be performed by the district court.

Accordingly, resolution of the Debtors' Claim Objection and Estimation Motion will require substantial and material consideration, interpretation and application of CERCLA. Such adjudication of Debtors' Claim Objection and Estimation Motion thereby falls squarely within the mandatory withdrawal provision of 28 U.S.C. § 157(d). This Court should therefore withdraw the reference to resolve these matters.

**B.    This Court Should Withdraw the Reference As a Matter of Discretion**

In the alternative, this Court should withdraw the reference as a matter of discretion

pursuant to § 157(d), which provides, in relevant part, that "[t]he district court may withdraw, in

whole or in part, any case or proceeding referred under this section, on its own motion or on

timely motion of any party, for cause shown." 28 U.S.C. § 157(d) (emphasis added). Although

§ 157(d) does not define "cause," the Second Circuit has held that district courts should consider

the following factors to determine if cause exists to withdraw the reference: "(1) whether the

claim is core or non-core, (2) what is the most efficient use of judicial resources, (3) what is the

delay and what are the costs to the parties, (4) what will promote uniformity of bankruptcy

administration, (5) what will prevent forum shopping, and (6) other related factors." Orion

Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.), 4 F.3d 1095, 1101 (2d Cir.

1993). Although the district courts have been directed to apply all six factors, failure to apply all

of them will not warrant a dismissal. See In re Burger Boys, Inc., 94 F.3d at 761 (affirming

district court decision to withdraw the reference, but noting that it would have been preferable if

the court had applied all the Orion factors).

1.    The Issues Raised in Debtors' Claim Objection and Estimation Motion Relate to
      Non-Core Matters

The Second Circuit has held that the core/non-core factor is generally the most important

factor to consider when determining if cause exists to withdraw the reference, because that factor

drives the efficiency and uniformity determinations. See In re Burger Boys, 94 F.3d at 762;

Orion Pictures Corp., 4 F.3d at 1101. For example, it is generally more efficient and may

promote uniformity for district courts to decide non-core matters, because bankruptcy courts are

only empowered to submit proposed factual findings and legal conclusions to district courts for

de novo review in non-core matters. Orion Pictures Corp., 4 F.3d at 1101; 28 U.S.C. § 157(d). It

Page 22

may, conversely, be more efficient and may promote uniformity for bankruptcy courts to determine core matters, because bankruptcy courts may be more familiar with the law and facts surrounding those matters. Id.

Core proceedings are those which invoke "a substantive right provided by title 11 of [those proceedings] that, by nature, could arise only in the context of a bankruptcy case." See Silverman v. General Ry. Signal Co. (In re LECO Enters., Inc.), 144 B.R. 244, 249 (S.D.N.Y. 1992). Here, Debtors' Claim Objection and Estimation Motion raise substantial issues that would exist independently of the bankruptcy, and because the claims arise under CERCLA, are not the type that "could arise only in the context of a bankruptcy case." Id. To the contrary, the issues raised in Debtors' Claim Objection and Estimation Motion could have arisen as a CERCLA enforcement action even in the absence of the bankruptcy case. Thus, the instant dispute would exist independently of the bankruptcy. Accordingly, the Court should hold that the objection to resolution of the Government's claim is a non-core proceeding.

Finally, even if the Court were to hold that resolution of the Government's CERCLA matters is a core matter, the Court should still withdraw the reference after considering the other Orion factors. See LTV Steel Co., 2002 WL 484950, at *6 (holding that dischargability of claims against LTV were core proceedings, but withdrawing the reference after applying the five other factors). See also Mishkin v. Ageloff, 220 B.R. 784, 800 (S.D.N.Y.1998) (finding that if a matter is "core" weighs against withdrawal of the reference, but is not dispositive, because "[i]n the final analysis, the critical question is efficiency and uniformity").

Page 23

2.    <u>The Other Orion Factors Further Favor Permissive Withdrawal</u>

An application of the remaining <u>Orion</u> factors further supports permissive withdrawal here.  First, permissive withdrawal would be an appropriate use of judicial resources because the district courts have an expertise in handling complex Federal environmental statutes such as CERCLA.  Moreover even a bankruptcy court decision on a core issue is appealable as a matter of right to this Court.  28 U.S.C. § 157(c)(1).  In the event that the bankruptcy court resolves Debtors' Claim Objection in the first instance, it is likely that the non-prevailing party would appeal to the district court.  Therefore, it is a more efficient use of judicial resources for the District Court to decide this case in the first instance.

Second, resolution of these CERCLA issues in District Court would not unduly delay the proceedings.  This Court can impose a discovery schedule to resolve the CERCLA issues that would take into account any claim that time is of the essence.  Further, the Government has agreed to work with Debtors' counsel to work on a mutually agreeable, yet expedited schedule. Accordingly, permissive withdrawal will prevent unnecessary cost and delay to the parties by withdrawing the reference.  Third, withdrawal of the reference will not hinder uniformity in bankruptcy administration.  The Government seeks to withdraw the reference as to resolution of its claim; <u>i.e.,</u> only the Federal CERCLA issues.  This "limited withdrawal of the reference as to this single issue pose[s] no threat to the uniformity of the administration of the estate."  <u>In re Burger Boys, Inc.,</u> 94 F.3d at 762.  Rather, the validity and extent of the Government's claims will be resolved in this Court, and the claims, as allowed, will receive whatever treatment under a plan that the bankruptcy court deems appropriate.

Finally, there is no evidence of forum shopping on behalf of the Government.  As stated

above, if this Court were to deny this motion, any appeal of the bankruptcy court's ruling with respect to the CERCLA issues would ultimately be presented to this Court in any event. See In re Burger Boys, 94 F.3d at 762; Orion Pictures Corp., 4 F.3d at 1101; 28 U.S.C. § 157(c)(1). Accordingly, the Orion factors favor permissive withdrawal of the reference as a matter of the Court's discretion.

CONCLUSION

For the foregoing reasons, the motion of the Government for withdrawal of reference pursuant to 28 U.S.C. § 157(d) should be granted.

Dated:  New York, New York
          September 18, 2007

                                      Respectfully Submitted,

                                      MICHAEL J. GARCIA
                                      United States Attorney for the
                                      Southern District of New York
                                      Attorney for EPA, Department of Commerce, and
                                      Department of the Interior


                            By:     /s/   Russell M. Yankwitt
                                      RUSSELL M. YANKWITT
                                      PIERRE G. ARMAND
                                      Assistant United States Attorneys
                                      86 Chambers Street – 3rd Floor
                                      New York, New York 10007
                                      Telephone: (212) 637-2745
                                      Facsimile:  (212) 637-2730


- Of Counsel: -

Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044

Page 25

## CERTIFICATE OF SERVICE

I, Russell M. Yankwitt, an Assistant United States Attorney for the Southern District of New York, hereby certify that on September 18, 2007, I caused to be served a copy of the foregoing Motion to Withdraw the Reference, and the Declarations of Peter Mannino and Russell M. Yankwitt, and exhibits thereto upon the following:

By e-mail and overnight mail:
Marc S. Levin, Esq.
Deputy General Counsel
Dana Corporation
4500 Dorr Street
Toledo, Ohio 43615

Corinne Ball, Esq.
Richard H. Engman, Esq.
Jones Day
222 East 41st Street
New York, New York 10017
Counsel to the Debtors

Heather Lennox, Esq.
Carl E. Black, Esq.
Jones Day
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Counsel to the Debtors

Jeffrey B. Ellman, Esq.
Jones Day
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309-3053
Counsel to the Debtors

Kenneth H. Eckstein, Esq.
Thomas Moers Mayer, Esq.
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
Counsel to the Official Committee of Unsecured Creditors

The BMC Group, Inc.
Attn: Dana Corporation Noticing
1330 E. Franklin Avenue
El Segundo, California 90245
Noticing Agent

The BMC Group, Inc.
Attn: Dana Corporation Noticing
P.O. Box 952
El Segundo, California 90245-0952
Noticing Agent

Douglas B. Bartner, Esq.
Shearman & Sterling LLP
599 Lexington Avenue
New York, New York 10022
Counsel to Citicorp

Gary L. Kaplan, Esq.
Brian Pfeiffer, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004
Counsel to Equity Holders

Jon D. Cohen, Esq.
Trent P. Cornell, Esq.
Scott N. Schreiber, Esq.
Stahl Cowen Crowley LLC
55 West Monroe Street, Suite 1200
Chicago, IL 60603
Counsel to Retiree Committee

<u>By overnight mail:</u>

Greg M. Zipes, Esq.
Office of the United States Trustee
Southern District of New York
33 Whitehall Street, 21st Floor
New York, New York 10004

Dated: New York, New York
        September 18, 2007

                                   ___/s/  Russell M. Yankwitt___
                                   RUSSELL M. YANKWITT
                                   Assistant United States Attorney