JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Corinne Ball (CB 8203)
Richard H. Engman (RE 7861)
Steven C. Bennett (SB 2746)

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
Heather Lennox (HL 3046) (admitted to Southern District of
New York Bankruptcy Court *pro hac vice*)

JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia  30309-3053
Telephone:  (404) 521-3939
Facsimile:  (404) 581-8330
Jeffrey B. Ellman (JE 5638) (admitted to Southern District of
New York Bankruptcy Court *pro hac vice*)

Attorneys for Debtors
and Debtors in Possession

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
                                                           :
In re                                                      :     07 Civ. 8160 (SAS)
                                                           :
Dana Corporation, *et al.*,                                :     Chapter 11
                                                           :
                                        Debtors.           :     Bankr. Case No. 06-10354 (BRL)
                                                           :     (Jointly Administered)
---------------------------------------------------------- x

### MEMORANDUM OF LAW OF DEBTORS AND DEBTORS IN POSSESSION IN OPPOSITION TO MOTION OF UNITED STATES GOVERNMENT FOR WITHDRAWAL OF REFERENCE PURSUANT TO 28 U.S.C. § 157(d)

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 4

    I.      WITHDRAWAL OF THE REFERENCE IS NOT MANDATORY .................... 4

          A.      Mandatory Withdrawal Applies Only Where The Court Must Engage In Substantial And Material Interpretation Of Non-Bankruptcy Law, Rather Than Mere Application Of The Law ................ 4

          B.      The Issues Presented Here Do Not Require Any Substantial Or Material Interpretation Of CERCLA, But Only Application Of Established Law ....................................................................................... 6

    II.     THE GOVERNMENT HAS NOT SHOWN "CAUSE" TO WITHDRAW THE REFERENCE ........................................................................................... 12

CONCLUSION .................................................................................................................. 16

# TABLE OF AUTHORITIES

## CASES

AT&T v. Chateaugay Corp.,
    88 B.R. 581 (S.D.N.Y. 1988)...................................................................................10, 11

Adelphia Commc'ns Corp. v. Rigas,
    No. 02 Civ. 8495 (GBD), 2003 U.S. Dist. LEXIS 9349 (S.D.N.Y. June 4, 2004)..........5, 6

In re Allegheny Int'l Inc.,
    158 B.R. 361 (Bankr. W.D. Pa. 1993) .................................................................................3

In re Amfesco Indus., Inc.,
    No. 99 CV 2662 (ERK), 1988 U.S. Dist. LEXIS 13227 (E.D.N.Y. Nov. 14, 1988)..........6

In re Board of Directors of Telecom Argentina, S.A.,
    No. 05 Civ. 8803 (SAS), 2005 U.S. Dist. LEXIS 28640 (S.D.N.Y. Nov. 18, 2005) ......4, 6

In re Burger Boys, Inc.,
    94 F.3d 755 (2d Cir. 1996)..................................................................................................12

Cadillac Fairview/California, Inc. v. Dow Chemical Co.,
    299 F.3d 1019 (9th Cir. 2002) ..............................................................................................8

Central Vermont Public Service Corp. v. Herbert,
    341 F.3d 186 (2d Cir. 2003)................................................................................................13

In re Chadbourne Industrial, Ltd.,
    100 B.R. 663 (S.D.N.Y. 1989).....................................................................................4, 5, 6

In re Chateaugay Corp.,
    193 B.R. 669 (S.D.N.Y. 1996).............................................................4, 5, 10, 12, 13, 14

In re Chateaugay Corp.,
    944 F.2d 997 (2d Cir. 1991)................................................................................................10

In re Coated Sales, Inc.,
    146 B.R. 83 (S.D.N.Y. 1992).............................................................................................11

Coeur D'Alene Tribe v. Asarco, Inc.,
    280 F. Supp.2d 1094 (D. Idaho 2003) .................................................................................9

In re Combustion Equipment Associates, Inc.,
    67 B.R. 709 (S.D.N.Y. 1986)......................................................................................10, 11

Dow Jones/Group W Television Co. v. Consumer News and Business Channel
    Partnership,
    127 B.R. 3 (S.D.N.Y. 1991)............................................................................5

In re Enron Power Marketing, Inc.,
    No. 02 Civ. 7964, 2003 U.S. Dist. LEXIS 189 (S.D.N.Y. Jan. 8, 2003)...........5

In re FV Steel & Wire Co.,
    No. 04-22421 (SVK), 2007 WL 2116385 (Bankr. E.D. Wis. July 19, 2007)....................3

In re Ionosphere Clubs, Inc.,
    103 B.R. 416 (S.D.N.Y. 1989)...................................................................4, 5

In re Johns-Manville Corp.,
    63 B.R. 600 (S.D.N.Y. 1986).................................................................10, 11

In re Kaiser Group Int'l, Inc.,
    289 B.R. 597 (Bankr. D. Del. 2003) ...........................................................3

Keating v. United States Lines, Inc.,
    No. 04 Civ. 6614 (LTS), 2006 WL 1559237 (S.D.N.Y. June 7, 2006) ...........13

In re Laventhol & Horwath,
    139 B.R. 109 (S.D.N.Y. 1992).................................................................5, 6

In re The Leslie Fay Cos., Inc.,
    No. 97 Civ. 2244 (MGC), 1997 U.S. Dist. LEXIS 13431 (S.D.N.Y. Sept. 4, 1997) ..12, 14

In re Manville Forest Products Corp.,
    896 F.2d 1384 (2d Cir. 1990)...................................................................13

In re McMahon,
    222 B.R. 205 (S.D.N.Y. 1998).............................................................12, 14

In re National Gypsum Co.,
    134 B.R. 188 (N.D. Tex. 1991)...............................................................11

In re National Gypsum Co.,
    No. 390-37212 (SAF), 1992 WL 426464 (Bankr. N.D. Tex. June 24, 1992) ....................3

Oneida Ltd. v. Pension Benefit Guaranty Corp.,
    No. 06 Civ. 15323 (MGC), 2007 U.S. Dist. LEXIS 52298 (S.D.N.Y. July 18,
    2007) .............................................................................................4

In re Orion Pictures Corp.,
    4 F.3d 1095 (2d Cir. 1993)................................................................12, 14

In re Ponce Marine Farm, Inc.,
    172 B.R. 722 (D.P.R. 1994) ................................................................10

In re Revere Copper & Brass Inc.,
    172 B.R. 192 (S.D.N.Y. 1994) .............................................................10

S.G. Phillips Constructors, Inc. v. City of Burlington,
    45 F.3d 702 (2d Cir. 1995)..................................................................13

Southern Pacific Transportation Co. v. Voluntary Purchasing Groups, Inc.,
    252 B.R. 373 (E.D. Tex. 2000) ............................................................11

State of Ohio v. Department of Interior,
    880 F.2d 432 (D.C. Cir. 1989) ..............................................................9

United States v. Alcan Aluminum Corp.,
    990 F.2d 711 (2d Cir. 1993)..................................................................7

United States v. Alcan Aluminum Corp.,
    964 F.2d 252 (3d Cir. 1992)..................................................................7

United States v. Atlantic Research Corp.,
    127 S. Ct. 2331 (2007).........................................................................8

United States v. Barrier Industrial, Inc.,
    991 F. Supp. 678 (S.D.N.Y. 1998).........................................................9

United States v. ILCO, Inc.,
    48 B.R. 1016 (N.D. Ala. 1985) ............................................................11

United States v. M/V Santa Clara I,
    887 F. Supp. 825 (D.S.C. 1995).............................................................9

United States v. R.W. Meyer,
    889 F.2d 1497 (6th Cir. 1989) ...............................................................7

United States v. Shell Oil,
    294 F.3d 1045 (9th Cir. 2002) ...............................................................8

**STATUTES AND REGULATIONS**

28 U.S.C. § 157..................................................................................................1, 3, 4, 12, 13

42 U.S.C. §§ 9601-9675 ("CERCLA")....................................................................................1

43 C.F.R. § 11.14....................................................................................................................9

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 433A (1965) .......................................................................7

Dana Corporation ("Dana") and 40 of its domestic direct and indirect subsidiaries, as debtors and debtors in possession in the above-captioned bankruptcy cases (collectively, the "Debtors") respectfully submit this Memorandum of Law in Opposition to the United States Government's Motion for Withdrawal of the Reference Pursuant to 28 U.S.C. § 157(d).

## INTRODUCTION

On March 3, 2006, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). After 18 months of intense effort, the Debtors' chapter 11 cases are now moving toward conclusion, with the goal of emerging from chapter 11 at or about the end of 2007 within sight. At this important juncture in these cases, the Debtors are working diligently to resolve the claims of creditors asserted against their bankruptcy estates. Such resolution is particularly important because the filed plan of reorganization (the "Plan"), and the support for the Plan by key creditor groups, is premised on the total allowed amount of general unsecured claims in certain categories being less than $3.25 billion (the "Plan Condition"). Moreover, the resolution of claims — particularly large claims — has a direct impact on creditor recoveries, because general unsecured creditors will share recoveries on a *pro rata* basis under the proposed Plan.

Among the largest claims asserted in the Debtors' cases are two proofs of claims filed by the Government[1] and designated as Claim Numbers 13321 and 13796 (collectively, the "Claim"). The Claim asserts liabilities estimated by the Government to total more than $300 million, pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601-9675 ("CERCLA"), with respect to six

---

[1]    As used herein, the "Government" refers, collectively, to the United States Environmental Protection Agency, the National Oceanic and Atmospheric Administration of the United States Department of Commerce and the United States Department of the Interior acting through the Fish and Wildlife Service.

"Superfund" locations associated in some way, over the course of more than 100 years, with Dana and its predecessor. This Claim constitutes the largest disputed claim in the Debtors' cases. Although multiple sites are at issue, the vast majority of the Claim — comprising over $250 million of the alleged liabilities — relates solely to a single site located in South Plainfield, New Jersey, generally referred to as the Cornell-Dubilier Electronics, Inc. Superfund Site (the "CDE Site").

        On September 7, 2007, the Debtors filed their Objection to the Government's Claim (the "Objection"), including, among others, the following specific objections with regard to the CDE Site: (1) the Government does not allege that the Debtors contributed to the disposal or release of hazardous substances at the CDE Site; and (2) the Government's remediation figures are inflated and unsupported. See Exh. A, Objection ¶ 34.[2] The Debtors' Objection to the claim is currently pending in the Bankruptcy Court.

        Given the importance of resolving the Claim without delay to both the Plan process and creditor recoveries, on September 5, 2007, the Debtors filed a motion to establish procedures for the estimation of the Claim under section 502(c) of the Bankruptcy Code (the "Estimation Motion"). See Exh. B, Estimation Motion. At a hearing on September 19, 2007, the Bankruptcy Court granted the Estimation Motion, and set a hearing date of January 14, 2008 for consideration of the Objection and estimation of the Claim. See Exh. C, Transcript of Hearing dated September 19, 2007. Subsequently, on September 25, 2007, the Bankruptcy Court entered an order (the "Estimation Procedures Order") that was jointly submitted by the Debtors and the Government to establish a timeline and process for the estimation of the Claim, consistent with the Court's ruling at the hearing (the "Estimation Procedures"). See Exh. D,

---

[2]      All Exhibits are attached to the Declaration of Steven C. Bennett, dated September 28, 2007.

Estimation Procedures Order.  By these procedures, the Debtors seek to resolve the Claim fully and finally without delay, which is important to permit the Debtors to satisfy the Plan Condition, emerge from chapter 11 and maximize creditor recoveries.  Deferring resolution of the Claim would undermine these important goals, which are fundamental to the chapter 11 process.

On September 18, 2007, the Government filed its Motion for Withdrawal of the Reference Pursuant to 28 U.S.C. § 157(d) (the "<u>Withdrawal Motion</u>") in this Court.[3] The Government asserts that CERCLA-related issues can only be resolved by a District Court. Yet, many such cases have been addressed in bankruptcy courts over the years, in numerous jurisdictions.[4]  The Debtors' Objection to the Government's Claim, moreover, plainly is a core proceeding that requires only a straightforward application of CERCLA to the facts. The Bankruptcy Court is entirely competent to perform this factual inquiry, and case law makes clear that withdrawal of the reference is neither required nor appropriate.  As a result, the Government's Withdrawal Motion should be denied.[5]

---

[3]    That same day, the Government filed a Motion to Stay Debtors' Objection to the Government's Proof of Claim Pending a Decision on the Government's Motion to Withdraw the Reference (the "<u>Stay Motion</u>"). The Debtors are opposing the Stay Motion simultaneously with the Withdrawal Motion.  <u>See</u> Ex. E, Debtors' Opposition to Stay Motion, filed today.  The Stay Motion currently is pending before the Bankruptcy Court.

[4]    <u>See, e.g.,</u>  <u>In re FV Steel & Wire Co.</u>, No. 04-22421 (SVK), 2007 WL 2116385, at *4-9  (Bankr. E.D. Wis. July 19, 2007) (estimating environmental claim); <u>In re Kaiser Group Int'l, Inc.</u>, 289 B.R. 597, 608 (Bankr. D. Del. 2003) (same); <u>In re Allegheny Int'l Inc.</u>, 158 B.R. 361, 367 (Bankr. W.D. Pa. 1993) (same); <u>In re National Gypsum Co.</u>, No. 390-37212 (SAF), 1992 WL 426464, at *1 (Bankr. N.D. Tex. June 24, 1992) (same).

[5]    The Government has moved to withdraw the reference not only as to the Debtors' Objection, but also with regard to Debtors' Estimation Motion.  <u>See also</u> Withdrawal Motion at 1.  However, as noted above, the Bankruptcy Court already granted the Estimation Motion, on September 19, 2007.  <u>See</u> Ex. C, Transcript dated September 19, 2007; Ex. D, Estimation Procedures Order.

## ARGUMENT

## I.     WITHDRAWAL OF THE REFERENCE IS NOT MANDATORY

*A.     Mandatory Withdrawal Applies Only Where The Court Must Engage In Substantial And Material Interpretation Of Non-Bankruptcy Law, Rather Than Mere Application Of The Law*

The mandatory withdrawal provision of 28 U.S.C. § 157(d) states: "The district court shall, on timely motion of a party, so withdraw a proceeding [from the bankruptcy court] if the court determines that resolution of the proceeding requires consideration of both title 11 [i.e., the Bankruptcy Code] and other laws of the United States regulating organizations or activities affecting interstate commerce." This provision has been interpreted narrowly so as not to become an "escape hatch for matters properly before the bankruptcy court." See Oneida Ltd. v. Pension Benefit Guaranty Corp., No. 06 Civ. 15323 (MGC), 2007 U.S. Dist. LEXIS 52298, at *7 (S.D.N.Y. July 18, 2007) (further stating that "the Second Circuit has construed § 157(d) narrowly"); In re Ionosphere Clubs, Inc., 103 B.R. 416, 419 (S.D.N.Y. 1989) (Same).

Courts in this district therefore have applied the mandatory withdrawal provision only where resolution of the issue presented involves a "substantial and material consideration" of non-bankruptcy federal law. See Oneida, 2007 U.S. Dist. LEXIS 52298, at *7; In re Board of Directors of Telecom Argentina, S.A., No. 05 Civ. 8803 (SAS), 2005 U.S. Dist. LEXIS 28640, at *5 (S.D.N.Y. Nov. 18, 2005); In re Chateaugay Corp., 193 B.R. 669, 673 (S.D.N.Y. 1996); In re Chadbourne Indus., Ltd., 100 B.R. 663, 667-68 (S.D.N.Y. 1989); Ionosphere Clubs., 103 B.R. at 418-19.

Indeed, the test for mandatory withdrawal is satisfied only where a "substantial interpretation" of non-bankruptcy law is necessary. Conversely, where the Bankruptcy Court need only apply settled law to a new set of facts, mandatory withdrawal must be denied. See Telecom Argentina, 2005 U.S. Dist. LEXIS 28640, at *5 (withdrawal not required where

bankruptcy court would not need to "engage itself in the intricacies of non-Bankruptcy law, as opposed to routine application of that law"); Chateaugay Corp., 193 B.R. at 673 (withdrawal not required "when consideration of non-[Bankruptcy] Code law entails only the straightforward application of settled law to the facts of a particular case"); Dow Jones/Group W Television Co. v. Consumer News and Business Channel P'ship, 127 B.R. 3, 5 (S.D.N.Y. 1991) (no mandatory withdrawal because case at issue required "mere application of established antitrust principles to new facts"); Chadbourne Indus., 100 B.R. at 668 (no mandatory withdrawal because labor law question "will turn on a straightforward application" of precedent to facts of case).

Generally, only "novel" statutory issues or matters of "first impression" rise to the level required for mandatory withdrawal.  See Adelphia Commc'ns Corp. v. Rigas, No. 02 Civ. 8495 (GBD), 2003 U.S. Dist. LEXIS 9349, at *9 (S.D.N.Y. June 4, 2004) ("Courts have found the mandatory withdrawal standard more easily satisfied when complicated issues of first impression are implicated under non-bankruptcy federal laws"); In re Enron Power Marketing, Inc., No. 02 Civ. 7964, 2003 U.S. Dist. LEXIS 189, at *12, 16 (S.D.N.Y. Jan. 8, 2003) (although several defenses involved the Federal Power Act and Federal Energy Regulatory Commission, withdrawal not granted because the case presented no substantial issues of "first impression"); In re Laventhol & Horwath, 139 B.R. 109, 115 (S.D.N.Y. 1992) (no mandatory withdrawal where application of federal RICO law would not include "novel issues"); Ionosphere Clubs, 103 B.R. at 419 ("The mandatory withdrawal standard is more likely satisfied when the non-Bankruptcy law under consideration raises issues of first impression").

Consequently, district courts in the Second Circuit have often held, even where a dispute requires some interpretation of a non-bankruptcy federal statute, that withdrawal is not required, as long as the issue presented is not novel.  For example:

- In In re Board of Directors of Telecom Argentina, S.A, 2005 U.S. Dist. LEXIS 28640, at *5, this Court denied a request for mandatory withdrawal because a prior case had already addressed the relevant federal law issue of "whether the [Trust Indenture Act] bars the restructuring of a company's debt pursuant to an APE over the objections of a minority noteholder."  The Court determined that there was no need for substantial interpretation of non-bankruptcy federal law and that mandatory withdrawal did not apply.

- In In re Chadbourne Indus., Ltd., 100 B.R. at 668, the court refused to grant withdrawal of the reference despite the need to determine whether the trustee was "a successor employer within the meaning of the NLRA," because there already was an established legal standard that could be applied.

- In In re Laventhol & Horwath, 139 B.R. at 115, even faced with a Circuit split over issues of non-bankruptcy federal law under RICO, the court declined a request for withdrawal of the reference.  The court concluded that "substantial interpretation" of non-bankruptcy law was not required because "[l]iability under RICO for an organization such as an accounting firm" was recognized under prior Second Circuit law.

- In Adelphia Commc'ns Corp. v. Rigas, 2003 U.S. Dist. LEXIS 9349, at *9-10, the court denied the withdrawal motion, holding that "significant interpretation, as opposed to simple application, of the law to the facts" was not required because "[s]tanding and pleading requirements under both RICO and the Exchange Act are not complicated issues of first impression" and "[t]here exists a substantial body of case law discussing RICO and the Exchange Act to guide the bankruptcy court."

- In In re Amfesco Indus., Inc., No. 99 CV 2662 (ERK), 1988 U.S. Dist. LEXIS 13227 (E.D.N.Y. Nov. 14, 1988), withdrawal was denied even though the bankruptcy court was required to determine whether a cause of action was viable under federal copyright laws.  The district court held:  "While it is arguable that any determination of whether a copyright has been violated requires an interpretation of the copyright laws, such an argument could be raised when any statute is being applied; language must always be interpreted."  Id. at *5.

B.    *The Issues Presented Here Do Not Require Any Substantial Or Material Interpretation Of CERCLA, But Only Application Of Established Law*

The Government asserts that three issues raised in the Objection warrant mandatory withdrawal:  (1) whether joint and several liability should be applied; (2) whether the Government's alleged response costs are inconsistent with the National Contingency Plan; and (3) whether there was a causal link between Debtors' activities and the injuries to natural

resources.  See Withdrawal Motion at 18-21.  Yet, none of these issues will require "significant interpretation" of CERCLA sufficient to require mandatory withdrawal.  Instead, as Judge Lifland recently noted, the case here is "essentially factual."  See Exh. C, TR at 49.

First, the Government focuses on the Debtors' assertion that equitable principles preclude the Government from asserting joint and several liability.  The Government argues that this position conflicts with CERCLA, and warrants mandatory withdrawal.  Yet, there is no inherent conflict between equitable principles (whether applied in a bankruptcy context or otherwise) and the CERCLA statute.  The Debtors do not dispute that CERCLA authorizes courts to impose joint and several liability *where a claim is not divisible*.  See United States v. Alcan Aluminum Corp., 990 F.2d 711, 721-22 (2d Cir. 1993) (courts applying CERCLA must look to the common law principles of joint and several liability, including the Restatement (Second) of Torts).  The Debtors assert, however, that the Claim is divisible on the facts of this case.  Where a claim made under CERCLA is divisible, courts have recognized that joint and several liability does not apply.  See Restatement (Second) of Torts § 433A (1965) (where two or more joint tortfeasors act independently and cause a distinct or single harm for which there is a reasonable basis for division, each is liable only for its own portion of the harm); see also United States v. Alcan Aluminum Corp., 964 F.2d 252, 268-69 (3d Cir. 1992) (citing Restatement); United States v. R.W. Meyer, 889 F.2d 1497, 1506-08 (6th Cir. 1989) (same).  Determining whether the Government's Claim is divisible requires only a simple application of established law to the facts.  Indeed, as the Second Circuit noted in Alcan, the question of divisibility of harm or apportionment "is an intensely factual determination."  990 F.2d at 722 (citations omitted).  The need to develop these facts for examination under prevailing legal standards does not require withdrawal of the reference.

Further, even if the Claim is not divisible, the Debtors contend that the facts of the case will require equitable allocation because the CDE Site was operated at the direction of the Government — through the Department of Defense and its predecessor, the War Department — at the time that environmental damages were caused.  The issue of whether the Government may assert liability against Debtors under these circumstances is clear under the law and does not require any substantial interpretation of CERCLA or novel issue of first impression.  See Cadillac Fairview/California, Inc. v. Dow Chemical Co., 299 F.3d 1019, 1029 (9th Cir. 2002) (finding it "shocking" for government to ask servants to pay for what it told them to do); United States v. Shell Oil, 294 F.3d 1045 (9th Cir. 2002) (finding government 100 percent liable for cleanup costs of benzol-related waste due to government's role as an "arranger" with respect to the disposal of such wastes, which were created in the production of aviation fuel for the Air Force during World War II).

The equitable principles asserted by the Debtors in this regard are applicable under both CERCLA and bankruptcy law, and do not create a conflict warranting mandatory withdrawal.  See Cadillac Fairview/California, Inc., 299 F.3d at 1029 (applying equitable principles under CERCLA in a non-bankruptcy setting).[6]

With regard to the other two issues identified in the Withdrawal Motion, the Government essentially concedes that these involve routine application of the law.  Concerning the dispute over the Government's response costs, the Government argues that "Dana's challenge to EPA's costs and the Government's response will therefore raise legal, technical, and

---

[6]     The Government concedes that Debtors are entitled to assert a contribution claim against it for the Government's own liability at the CDE Site.  See Withdrawal Motion at 19.  This concession is fatal to the Government's argument that the equitable powers of the Bankruptcy Court have no place in this litigation.  As the Supreme Court recently noted, resolution of a CERCLA contribution claim "necessitate[s] the equitable apportionments of costs among liable parties, including the PRP that filed the § 107(a) action."  United States v. Atlantic Research Corp., 127 S. Ct. 2331, 2339 (2007).

policy issues <u>that will require the application of CERCLA</u>."  <u>See</u> Withdrawal Motion at 20

(emphasis added).  No legal issue is referenced by the Government, let alone a "novel" issue,

only the need to develop the factual record.

 The Government's natural resources claim similarly requires a straightforward

application of settled CERCLA law to the factual record.  <u>See</u> <u>State of Ohio v. Dep't of Interior</u>,

880 F.2d 432, 470 (D.C. Cir. 1989) (Department of the Interior regulations for CERCLA natural

resource damage evaluation and assessment that governed claim retained a "traditional causation

analysis for determining whether a hazardous substance release caused a particular injury ...."));

43 C.F.R. § 11.14(v) ("injury" definition requires that the impact result either directly or

indirectly from exposure to hazardous substances); <u>Coeur D'Alene Tribe v. Asarco, Inc.</u>, 280 F.

Supp.2d 1094, 1103 (D. Idaho 2003) (applying proximate cause standard in natural resource

damage case).

 The Government exaggerates the amount of interpretation of CERCLA required

when it argues that it is necessary here to interpret what qualifies as an "act of God" under

CERCLA.  <u>See</u> Withdrawal Motion at 21.  In fact, paragraph 86 of Debtors' Objection (cited by

the Government regarding the act of God defense) focuses on the factual issue of *causation*,

including whether natural resource damages resulted from unforeseeable climatic conditions,

such as 100-year floods.  <u>See</u> Exh. A, Objection.  Whether, on the facts, Dana is likely to prevail

on the Act of God defense will require the Bankruptcy Court to apply settled law involving that

defense.  <u>See</u>, <u>e.g.</u>, <u>United States v. Barrier Indus., Inc.</u>, 991 F. Supp. 678, 679 (S.D.N.Y. 1998)

(giving CERCLA statutory definition of "act of God"); <u>United States v. M/V Santa Clara I</u>, 887

F. Supp. 825, 843 (D.S.C. 1995) (same).  Thus, the critical issue concerning the natural resources

claim is simple causation, and the Bankruptcy Court is fully capable of resolving this purely factual dispute.

The Government cites several cases in which courts granted mandatory withdrawal in the CERCLA context.  None of these cases suggests a general rule that CERCLA claims are beyond the competence of bankruptcy judges.  Indeed, three of these cases have been effectively overruled.  See AT&T v. Chateaugay Corp., 88 B.R. 581 (S.D.N.Y. 1988); In re Johns-Manville Corp., 63 B.R. 600 (S.D.N.Y. 1986); In re Combustion Equipment Assocs., Inc., 67 B.R. 709 (S.D.N.Y. 1986).  These three cases all held that determination of *when* a CERCLA claim arises (which may have ramifications in a bankruptcy case) warrants mandatory withdrawal.  But this conclusion is no longer valid in light of the Second Circuit opinion in In re Chateaugay Corp., 944 F.2d 997 (2d Cir. 1991), which held that the time that a CERCLA claim arises is an issue to be determined under the Bankruptcy Code.  As such, the original line of Southern District cases no longer is good law, and is not followed.  In In re Revere Copper & Brass Inc., 172 B.R. 192, 196 (S.D.N.Y. 1994), for example, the court distinguished these precedents, holding that they "have been superseded."  Id. at 196-98.  "In light of [the Second Circuit's decision in] Chateaugay, the conclusion must be that the question of whether defendants' CERCLA claims arose prior to or after the filing of the defendants Chapter 11 petition is primarily a bankruptcy matter, fully capable of being resolved by the bankruptcy court and not requiring withdrawal of the reference."  Id. at 198; see also In re Chateauguay Corp., 193 B.R. 669, 674 (S.D.N.Y. 1996) (following the Revere Copper & Brass decision that caselaw prior to the Second Circuit ruling in Chateaugay has been superseded and is no longer good law).[7]

---

[7]    See also In re Coated Sales, Inc., 146 B.R. 83, 84 (S.D.N.Y. 1992) (denying mandatory withdrawal because "[a]ny application of CERCLA will be tangential"); In re Ponce Marine Farm, Inc., 172 B.R.

The other CERCLA cases cited by the Government are similarly inapposite. The 16-year old ruling in In re National Gypsum Co., 134 B.R. 188 (N.D. Tex. 1991), for example, was based on "the relatively recent origin of the environmental legislation," and the lack of precedent at that time for denial of mandatory withdrawal in CERCLA cases. Id. at 192-193. Those circumstances no longer apply. The National Gypsum court, moreover, relied upon the now-overruled AT&T line of cases described above. See id. (citing the AT&T, Combustion and Johns Manville cases).

The Government relies on another Texas case, Southern Pacific Transportation Co. v. Voluntary Purchasing Groups, Inc., 252 B.R. 373 (E.D. Tex. 2000). The court there emphasized that significant interpretation of CERCLA was central to resolution of the dispute, noting that the case involved "the process of determining whether … environmental settlement agreements with the State are fair, reasonable, and faithful to CERCLA's objectives." Id. at 383. Such is not the case here. Unlike Southern Pacific, the instant case does not deal with the assessment of policy considerations required for approving a settlement agreement within the confines of CERCLA. Rather, the instant case involves a straightforward application of CERCLA law to the facts of this case. Finally, in United States v. ILCO, Inc., 48 B.R. 1016 (N.D. Ala. 1985), an Alabama court granted a motion to withdraw the reference because the case involved a "determination of whether injunctive relief is available under [the Clean Water Act], [the Resource Conservation and Recovery Act] and CERCLA," an issue no longer novel, and not present in this case. Id. at 1022.

---

(continued…)

722, 724 (D.P.R. 1994) (denying mandatory withdrawal where "consideration of the Clean Water Act will only be tangential").

As there is no novel issue under CERCLA raised by Debtors' Objections, all that is required is a straightforward application of law to the facts of this case, and mandatory withdrawal must be denied.

## II.     THE GOVERNMENT HAS NOT SHOWN "CAUSE" TO WITHDRAW THE REFERENCE

Pursuant to 28 U.S.C. § 157(d), where mandatory withdrawal does not apply, the Court may only exercise its discretion to withdraw the reference "for cause shown."  As demonstrated below, the Government cannot demonstrate "cause" under established Second Circuit law, and therefore this Court should not exercise its discretion to withdraw the reference.

The Second Circuit has directed District Courts to weigh several factors to determine whether sufficient "cause" has been shown to warrant permissive withdrawal: (1) whether the matter is a core proceeding under 28 U.S.C. § 157(b)(2); (2) what is the most efficient use of judicial resources; (3) what is the delay and what are the costs to the parties; (4) what will promote uniformity of bankruptcy administration; (5) what will prevent forum shopping; and (6) other related factors.  See In re Burger Boys, Inc., 94 F.3d 755, 762 (2d Cir. 1996); In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir. 1993).

The first (and the threshold) factor is whether the matter is core or non-core.  See In re The Leslie Fay Cos., Inc., No. 97 Civ. 2244 (MGC), 1997 U.S. Dist. LEXIS 13431, at *5 (S.D.N.Y. Sept. 4, 1997) (describing "whether the claim is core or non-core" as "most important" factor); In re McMahon, 222 B.R. 205, 207 (S.D.N.Y. 1998) ("preliminary inquiry should focus on whether the adversary proceeding is core or non-core"); In re Chateaugay Corp., 193 B.R. 669, 675 (S.D.N.Y. 1996) (the court "first should consider whether the claim is a 'core' or 'non-core' bankruptcy claim") (citing Orion Pictures Corp., 4 F.3d at 1101 (the court "should

first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn")).

        Despite the Government's arguments to the contrary, the issue presented herein is clearly a core issue. The statutory definition of a core proceeding expressly includes "allowance or disallowance of claims against the estate . . . ." 28 U.S.C. § 157(b)(2)(B). This dispute is precisely about the allowance or disallowance of the Government's Claim against the Debtors' bankruptcy estates, and therefore, by definition, is a "core" proceeding. [8] See Chateaugay, 193 B.R. at 676 ("the Second Circuit's holding in Chateaugay that even a CERCLA claim requires application of the Bankruptcy Code's definition of a 'claim,' place[s] the proceeding here within the core bankruptcy jurisdiction"); Keating v. United States Lines, Inc., No. 04 Civ. 6614 (LTS)(FM), 2006 WL 1559237 at *6 (S.D.N.Y. June 7, 2006) (bankruptcy court may hear and enter judgments on all core matters, including allowance or disallowance of claims).

        Moreover, the Government chose to file its Claim in the Bankruptcy Court, invoking the jurisdiction of that court and removing any possible doubt that a proceeding relating to the Claim is a core proceeding. By filing a proof of claim, a party transforms any underlying litigation into a core proceeding and consents to the bankruptcy court's broad equitable jurisdiction. See In re Manville Forest Prods. Corp., 896 F.2d 1384, 1389 (2d Cir. 1990) ("By filing a proof of claim, Gulf submitted itself to the equitable power of the bankruptcy court to disallow its claim"); Central Vermont Public Service Corp. v. Herbert, 341 F.3d 186, 191 (2d Cir. 2003) (even if not part of core proceeding, filing of proof of claim gives bankruptcy court jurisdiction); S.G. Phillips Constructors, Inc. v. City of Burlington, 45 F.3d 702, 706 (2d Cir.

---

[8]    In addition, 28 U.S.C. § 157(b)(2)(A) states that "matters concerning the administration of the estate" are core proceedings. As described in the Estimation Motion, the timely resolution of the Claim is central to the administration of the Debtors' cases, inasmuch as the amount of the Claim could impact (a) the Debtors' ability to satisfy the conditions to implementing their Plan and emerging from chapter 11, and (b) the amount and timing of creditor recoveries.

1995) (stating that "[t]he filing of a proof of claim invokes the special rules of bankruptcy concerning objections . . . . Understood in this sense, a claim filed against the estate is a core proceeding because it could arise only in the context of bankruptcy") (quoting In re Manville, 896 F.2d at 1390).

   While not dispositive, a finding that the matter constitutes a core proceeding counsels strongly against permissive withdrawal.  See Leslie Fay, 1997 U.S. Dist. LEXIS 13431, at *5; Chateaugay Corp., 193 B.R. at 675; McMahon, 222 B.R. at 207; Orion Pictures Corp., 4 F.3d at 1101.

   The remaining factors adopted by the Second Circuit to evaluate permissive withdrawal requests also counsel against withdrawal here.  The best and most efficient use of judicial resources clearly lies with resolution of the Government's Claim by the Bankruptcy Court.  The Second Circuit has expressly acknowledged that bankruptcy courts are well equipped to deal with core issues such as those presented here:  "hearing core matters in a district court could be an inefficient allocation of judicial resources given that the bankruptcy court generally will be more familiar with the facts and issues." Orion, 4 F.3d at 1101.  Here, Judge Lifland has administered the Debtors' chapter 11 cases for over 18 months.  Judge Lifland is intimately familiar with the facts and circumstances of these cases, and he has guided the case through several major disputes (including disputes involving the federal labor laws, ERISA, and federal income tax issues).  Judge Lifland thus is already experienced in applying relevant non-bankruptcy federal laws in the context of these cases.  Moreover, the Bankruptcy Court is intimately familiar with the Plan and restructuring issues that make the timely resolution of the Claim important to the Debtors' emergence from chapter 11 and satisfaction of creditors' claims.

14

There is simply no need to burden this Court with developing an expertise about these matters, when the Bankruptcy Court is prepared to address them.  See Exh. F, Transcript of District Court Hearing, dated September 18, 2007, at 1 ("I know nothing about this case.  Why are you here?").  Clearly, the best and most efficient use of judicial resources requires that Judge Lifland continue to adjudicate the matter, rather than require this Court to expend undue time and effort to learn what Judge Lifland has been immersed in for 18 months.

Similarly, withdrawal raises the possibility of delay, which could adversely impact the Debtors' ability to emerge from chapter 11 on schedule and could impact the size of distributions available to other creditors.  Through no fault of its own,[9] Dana is operating under an aggressive deadline to enable it to emerge from bankruptcy by early next year.  Delay could put in jeopardy agreements regarding the Debtors' restructuring that took the Debtors months to negotiate with its key constituents.  Withdrawing the case to the District Court would almost certainly result in the Government seeking to establish a new and extended schedule for this litigation and, as such, potentially undermining the Debtors' and Judge Lifland's hard work to date to complete this restructuring and make distributions to creditors without delay.[10]

It is apparent that the Government seeks to forum shop in this case, presumably as a tactic for delay.  The Government has attempted to delay these proceedings on three separate occasions.  First, the Government attempted to delay the Bankruptcy Court consideration of the

---

[9]    Judge Lifland noted the Debtors' diligence in proceeding: "In a case such as the one currently before the Court, the Debtors have had much to accomplish in those eighteen months.  These Debtors negotiated new customer agreements which came on before the court in a very substantial nature this morning, secured their management team, renegotiated trade agreements, and resolved substantial and complex issues with their unions, breaking new ground in labor management issues for this industry.  This Court cannot fault the Debtors, as the Government suggests, for not litigating the environmental claims earlier in these proceedings, they have had, and this Court has had, a very full plate."  See Exh. C, Transcript dated September 19, 2007, at 50-51.

[10]    If the reference were withdrawn, the Debtors reserve the right to retain the existing litigation schedule in this Court, to complete the estimation of the Claim consistent with the schedule already in place in the Bankruptcy Court.

Estimation Motion to establish a schedule for estimating the Claim.  <u>See</u> Exh. G, Letter dated September 10, 2007.  The Government then attempted to delay the date of the estimation hearing, currently set for January 14, 2008.  <u>See</u> Exh. C, Transcript dated September 19, 2007, at 41-42. Finally, the Government filed a Stay Motion in the Bankruptcy Court, pending a ruling on the Withdrawal Motion.  The Stay Motion seeks to delay discovery activities in this dispute for several weeks, in the apparent hope that the current litigation schedule will be undermined regardless of this Court's ruling on the Withdrawal Motion.

The proposed reference withdrawal here appears to be directly in line with these Government tactics for delay.  Having already failed in its efforts to put off the consideration of an estimation process and to extend the schedule for two or more months, the Government appears poised to seek that same relief in this Court, which it apparently perceives as a friendlier forum.  Such forum shopping strongly counsels against withdrawal.

<u>CONCLUSION</u>

For all the foregoing reasons, (a) mandatory withdrawal of the reference is inapplicable because this matter does not involve any novel issue of CERCLA law and requires only the application of existing law to the facts; and (b) permissive withdrawal is not appropriate because this is a core bankruptcy proceeding most efficiently handled by the Bankruptcy Court, and the request for withdrawal is merely another tactic of the Government to seek delay in these proceedings, to the detriment of the Debtors and their bankruptcy estates and creditors.

WHEREFORE, the Debtors respectfully request that the Court:  (a) deny the

Government's Withdrawal Motion in its entirety; and (b) grant such other and further relief to

the Debtors as the Court may deem proper.

Dated:  September 28, 2007                    Respectfully submitted,
        New York, New York

                              /s/ Steven C. Bennett
                               Corinne Ball (CB 8203)
                               Richard H. Engman (RE 7861)
                               Steven C. Bennett (SB 2746)
                               JONES DAY
                               222 East 41st Street
                               New York, New York  10017
                               Telephone:  (212) 326-3939
                               Facsimile:  (212) 755-7306

                               Heather Lennox (HL 3046) (admitted to
                               Southern District of New York Bankruptcy
                               Court *pro hac vice*)

                               JONES DAY
                               North Point
                               901 Lakeside Avenue
                               Cleveland, Ohio  44114
                               Telephone:  (216) 586-3939
                               Facsimile:  (216) 579-0212

                               Jeffrey B. Ellman (JE 5638) (admitted to
                               Southern District of New York Bankruptcy
                               Court *pro hac vice*)

                               JONES DAY
                               1420 Peachtree Street, N.E.
                               Suite 800
                               Atlanta, Georgia  30309-3053
                               Telephone:  (404) 521-3939
                               Facsimile:  (404) 581-8330

                               ATTORNEYS FOR DEBTORS AND
                               DEBTORS IN POSSESSION

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record, who are deemed to have consented to electronic service are being served this September 28, 2007, with a copy of this document via the Court's CM/ECF system per Local Rule 5.2 and the Standing Order of the Southern District of New York relating to Procedures for Electronic Case Filing.


/s/ Patricia M. Carroll
Patricia M. Carroll