# EXHIBIT B

Hearing Date and Time:  September 19, 2007 at 10:00 a.m.
Response Deadline:  September 14, 2007 at 4:00 p.m.

JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Corinne Ball (CB 8203)
Richard H. Engman (RE 7861)
Steven C. Bennett (SB 2746)

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
Heather Lennox (HL 3046)

JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia  30309-3053
Telephone:  (404) 521-3939
Facsimile:  (404) 581-8330
Jeffrey B. Ellman (JE 5638)

Attorneys for Debtors
and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
                                                             :
In re                                                        :      Chapter 11
                                                             :
Dana Corporation, et al.,                                    :      Case No. 06-10354 (BRL)
                                                             :
                           Debtors.                          :      (Jointly Administered)
                                                             :
------------------------------------------------------------ x

### MOTION OF DEBTORS AND DEBTORS IN POSSESSION (A) FOR AN ORDER ESTABLISHING PROCEDURES TO ESTIMATE CLAIMS OF THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION OF THE DEPARTMENT OF COMMERCE AND THE DEPARTMENT OF THE INTERIOR ACTING THROUGH THE FISH AND WILDLIFE SERVICE (CLAIM NOS. 13321 AND 13796) AND (B) TO ESTIMATE THESE CLAIMS PURSUANT TO THE PROCEDURES

NYI-4017867v4

TO THE HONORABLE BURTON R. LIFLAND,
UNITED STATES BANKRUPTCY JUDGE:

Dana Corporation ("Dana") and 40 of its domestic direct and indirect subsidiaries, as debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), hereby move the Court, pursuant to section 502(c) of the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for (a) the entry of an order establishing procedures for the estimation of (i) proof of claim no. 13796 ("Claim 13796") filed collectively on behalf of the United States Environmental Protection Agency ("EPA"), the National Oceanic and Atmospheric Administration of the United States Department of Commerce ("DoC") and the United States Department of the Interior acting through the Fish and Wildlife Service (collectively with EPA and DoC, the "Government"), on or about September 21, 2006, in an unliquidated amount against Dana; and (ii) proof of claim no. 13321 filed on behalf of the EPA in an unliquidated amount against Debtor Brake Systems, Inc. ("Claim 13321" and, collectively with Claim 13796, the "Claims");[1] and (b) to estimate the Claims pursuant to the proposed procedures.  As and for their motion (this "Motion"), the Debtors state the following:

## Preliminary Statement

1.      On August 31, 2007, the Debtors filed their joint plan of reorganization and are pursuing confirmation of the plan and their long-stated goal of emerging from chapter 11 before the end of 2007.  Consistent with agreements between the Debtors and certain of their key stakeholders and investors, one condition to the effectiveness of the plan is that the total amount of allowed general unsecured claims in designated categories shall not exceed $3.25 billion

---

[1]      Copies of the Claims are attached hereto collectively as Exhibit A.

(the "Plan Emergence Condition"). As a result, the Debtors are working exceptionally hard, and expending significant resources, to review and resolve the numerous claims asserted in these cases with the goal of fulfilling the Plan Emergence Condition and emerging from chapter 11 without delay. The Debtors are addressing the Claims filed by the Government in this context.

2.      The Government asserts its Claims for remediation costs and other liabilities with regard to six "Superfund" locations associated in some way, over the course of more than 100 years, with Dana and its predecessors. Although the Claims are contingent and unliquidated, the estimated amounts asserted by the Government in attachments to the Claims exceed $300 million, primarily relating to a single site in South Plainfield, New Jersey. The Debtors believe that the Claims are substantially overstated and should be reduced, if not disallowed entirely. To that end, the Debtors will be filing an objection to the Claims in the coming days, identifying numerous defenses to the Government's asserted liabilities (the "Claim Objection").

3.      Based on the potential amounts to be pursued by the Government, it appears that, among all general unsecured claims, the Claims comprise the largest disputed claims asserted against the Debtors' estates. As such, resolving these Claims without delay will be important to Debtors' efforts to achieve the Plan Emergence Condition and emerge from chapter 11. To avoid a delay in the administration of these cases and to promote the Debtors' emergence from bankruptcy, the Debtors hereby seek approval of procedures to complete the prompt and final estimation of the Claims for purposes of allowance, treatment and distributions in these cases. Absent approval of such procedures, the prosecution of the Claim Objection could drag on for many additional months, undermining the Debtors' ability to fulfill the Plan Emergence Condition and emerge from chapter 11 by year's end.

**Background Regarding the Debtors**

4.    On March 3, 2006 (the "Petition Date"), the Debtors filed voluntary

petitions for relief under chapter 11 of the Bankruptcy Code.  By an order entered on the Petition

Date, the Debtors' chapter 11 cases have been consolidated for procedural purposes only and are

being administered jointly.  The Debtors are authorized to continue to operate their businesses

and manage their properties as debtors in possession, pursuant to sections 1107(a) and 1108 of

the Bankruptcy Code.

5.    On March 10, 2006, the Office of the United States Trustee for the

Southern District of New York (the "U.S. Trustee") appointed an official committee of

unsecured creditors (the "Creditors' Committee"), pursuant to section 1102 of the Bankruptcy

Code.  On June 27, 2006, the U.S. Trustee appointed an official committee of equity security

holders, pursuant to section 1102 of the Bankruptcy Code, which committee subsequently was

disbanded by the U.S. Trustee on February 9, 2007.  On August 31, 2006, the U.S. Trustee

appointed an official committee of non-union retired employees, pursuant to section 1114(d) of

the Bankruptcy Code and as directed by an order of the Court entered on August 9, 2006 (Docket

No. 2773).

6.    Debtor Dakota New York Corp. ("Dakota") is a New York corporation.

Debtor Dana is the direct or indirect parent of Dakota and each of the other Debtors.  Dana

maintains its corporate headquarters in Toledo, Ohio.  The Debtors and their nondebtor affiliates

(collectively, the "Dana Companies") have over 100 leased and owned domestic business

locations and have operations in approximately 25 states, as well as in Mexico, Canada,

11 countries in Europe and 14 countries elsewhere in the world.

7.    The Dana Companies are leading suppliers of modules, systems and

components for original equipment manufacturers and service customers in the light, commercial

and off-highway vehicle markets.  The products manufactured and supplied by the Dana

Companies are used in cars; vans; sport utility vehicles; light, medium and heavy trucks; and a

wide range of off-highway vehicles.

       8.     As disclosed in Dana's Form 10-K filed on March 20, 2007, for the year

ended December 31, 2006, the Dana Companies recorded revenue of approximately $8.5 billion

and had assets of approximately $6.7 billion and liabilities totaling $7.6 billion.  As of the

Petition Date, the Dana Companies had approximately 44,000 employees.

       9.     On August 31, 2007, the Debtors filed their Joint Plan of Reorganization

for Debtors and Debtors in Possession (Docket No. 6084) (as it may be amended, the "Plan") and

an accompanying Disclosure Statement (Docket No. 6083) (as it may be amended, the

"Disclosure Statement").

**Background Regarding the Claims Process**

      10.     On June 30, 2006, the Debtors filed their respective schedules of assets

and liabilities and statement of financial affairs (collectively, the "Schedules").  By an order

entered on July 19, 2006 (Docket No. 2073) (the "Bar Date Order"), the Court established

September 21, 2006 as the general bar date for creditors to file proofs of claim asserting

prepetition liabilities against the Debtors (the "General Bar Date").  The Bar Date Order, among

other things, also established bar dates for the filing of proofs of claim in response to any

amendments to the Schedules and claims for damages arising from the rejection of executory

contracts and unexpired leases (collectively with the General Bar Date, the "Bar Dates").

      11.     After the entry of the Bar Date Order, the Debtors provided notice of the

Bar Dates to all known creditors and potential creditors in accordance with the requirements of

the Bar Date Order.  Nearly 15,000 proofs of claim have been filed in these cases to date.

In addition to the filed proofs of claim, approximately 5,000 claims currently are identified in the Schedules as liquidated, non-contingent and undisputed.

12.    On October 25, 2006, the Debtors filed the Motion of Debtors and Debtors in Possession for Order Establishing Claims Objection and Settlement Procedures (Docket No. 3961) (the "Claims Procedures Motion"). On November 9, 2006, the Court entered an order granting the Claims Procedures Motion (Docket No. 4044) (the "Claims Procedures Order"). Among other things, the Claims Procedures Order approved certain detailed procedures for the filing and prosecution of objections to claims filed or scheduled in these chapter 11 cases, as described in Exhibit A to the Claims Procedures Order (the "Claims Objection Procedures"). Notwithstanding the approval of the Claims Objection Procedures, the Claims Procedures Order expressly provided that the Debtors retained their "rights to seek an order of the Court approving additional or different procedures with respect to specific Claims or categories of Claims." Claims Procedures Order ¶ 6. The Debtors hereby exercise that right with respect to the Government's Claims by filing this Motion to establish estimation procedures for the resolution of the Claims without delay.

### The Plan Emergence Condition

13.    Consistent with a Plan Support Agreement between the Debtors and certain of their stakeholders and potential investors (as further defined in the Plan, the "Plan Support Agreement"), the Plan includes the Plan Emergence Condition as one of the conditions to the effectiveness of the Plan, requiring that the total amount of allowed general unsecured claims in certain categories (collectively, the "General Unsecured Claims") shall not exceed

$3.25 billion (the "Plan Cap").[2]  See Plan at § IV.B.5.  The Government's Claims are within the

group of General Unsecured Claims covered by the Plan Cap.  As described above, although the

Claims are contingent and unliquidated, the amounts asserted by the Government in the Claims

exceed $300 million and thus could have a substantial impact on the Debtors' ability to achieve

the Plan Emergence Condition in a timely fashion.

14.     Other than the Debtors' unsecured bond claims, which total approximately

$1.62 billion, the Debtors believe that the amounts alleged in the Claims would make them the

largest potential General Unsecured Claims subject to the Plan Cap (equivalent at the asserted

amounts to approximately 20% of the non-bondholder portion of the Plan Cap).  Given the

potential size of the Claims, the Debtors believe that it is critical to determine the allowed

amount of the Claims promptly to avoid undue delay in the administration of these cases and to

enhance the Debtors' ability to satisfy the Plan Emergence Condition and emerge from

chapter 11 by their stated goal of the end of 2007.  To that end, the Debtors have engaged in

discussions with the Government to seek a resolution of the Claims.  Despite these efforts, the

parties have not made substantial progress in reaching agreement on the amounts of the Claims.

For these reasons, the Debtors hereby propose procedures to complete an estimation of the

Claims under section 502(c) of the Bankruptcy Code by the end of 2007.

## Jurisdiction

15.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§ 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).  See In re Wallace's

Bookstores, Inc., 317 B.R. 720, 725 (Bankr. E.D. Ky. 2004) (claims administration is within

---

[2]     The Plan Emergence Condition, which requires that General Unsecured Claims must fall within the Plan Cap, may be waived, but only by the Creditors' Committee acting reasonably and consistently with its fiduciary duties to all unsecured creditors.

"core" bankruptcy court subject matter jurisdiction).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Basis for Relief Requested

16.    Pursuant to section 502(c) of the Bankruptcy Code, "[t]here shall be estimated for purposes of allowance under this section — (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case[.]"  11 U.S.C. § 502(c).

17.    Pursuant to Bankruptcy Rule 9014, relief of the type requested herein shall be obtained by motion.

### Contingent/Unliquidated Nature of the Claims

18.    The Government asserts its Claims pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. §§ 9601-9675, with regard to six "Superfund" locations associated in some way, over the course of more than 100 years, with Dana and its predecessors.  The first six locations involve estimated claims of past and future costs (and penalties) totaling approximately $65 million.  For the final location, at a site formerly operated by Cornell-Dubilier Electronics, Inc. in South Plainfield, New Jersey (the "CDE Site"), the Government claims estimated amounts of more than $230 million for past and future costs.  The Government also claims "natural resources damages," pursuant to Section 107(f) of CERCLA, 42 U.S.C. § 9607(f), for damages at the CDE Site, in an amount estimated to be between $20 million and $37 million. Finally, the Government seeks $145,000 for penalties at one site (in Muskegon, Michigan) and injunctive relief for one site (in Antwerp, Ohio), and suggests that "Dana also has or may in the

future have environmental liabilities for [unnamed] properties that are part of its bankruptcy estate and/or for the migration of hazardous substances from property of its bankruptcy estate." Attachment to Claim 13796, ¶ 57.[3]

19.     Despite these various figures provided by the Government, the Claims are largely for estimated future costs to implement environmental remedial actions, including actions to address environmental issues where the actual remedy is still under investigation and has yet to be established.  Virtually the entirety of the Claims is based on unknown, unliquidated, contingent and estimated amounts.

20.     As such, each Claim, on its face, is not for any fixed or liquidated amount. The Government has merely stated "See Attached" in every category on the proof of claim forms that might state a fixed or liquidated amount for each of the Claims.  A description providing details about the Claims is attached to each of the proof of claim form (each, a "Claim Attachment").

21.     The text of the Claim Attachments, moreover, repeatedly confirm that the Claims are contingent and seek amounts not yet established.  See, e.g., Claim Attachment to Claim 13769, ¶ 1(a) (claim includes response costs "incurred and to be incurred"), ¶ 8 (referring to "future" remedial activities), ¶ 15 (referring to "future" costs), ¶ 22 (same), ¶ 24 (stating that the claim was filed in "protective manner"), ¶ 32 (referring to "future" response activities), ¶ 38 (stating the "protective" form and nature of the claim), ¶ 40 (stating that a "remedy has not yet been selected"), ¶ 43 (Government "expects substantial additional response activities will be necessary to fully assess and address contamination from the releasee of hazardous substances at

---

[3]     The Claims, particularly as they relate to the CDE Site (also referred to as the Hamilton Avenue Site), are summarized in the Disclosure Statement.  See Disclosure Statement, § III.A.2(c)(ii) ("Environmental Proceedings – United States Environmental Protection Agency").  Once filed in the coming days, the Claim Objection will provide additional background and information regarding the Claims.

or in connection with the CDE Facility"), ¶ 47 (stating that damages "cannot be calculated" until the EPA completes analysis), ¶ 51 ("As remedial action has not been completed, the eventual amount of natural resource damages, including the reasonable costs of assessing the existence and extent of such damages, is unknown."); Claim Attachment to Claim 13321, ¶ 1 (claim includes response costs "incurred and to be incurred"), ¶ 2 (claim is for "actions taken or to be taken"), ¶ 4 (seeking "costs incurred or to be incurred"), ¶ 7 (referring to costs that EPA "will continue to incur"), ¶ 8 ("As the work has not yet been completed, the eventual cost of the remedy is unknown.")

       22.    Consistent with the unknown nature of the asserted liabilities, the text of the Claim Attachments likewise confirms time and again that the Claims are not asserted for a fixed or liquidated amount. See, e.g., Claim Attachment to Claim 13769, ¶ 8 (stating that the claim is for "approximately" the amount of unreimbursed response costs), ¶ 15 (referring to "estimated" costs), ¶ 16 (referring to cost "estimates"), ¶ 22 (stating claimed amounts as "approximately" the amounts owed), ¶ 24 (referring to cost "estimates"), ¶ 33 (same), ¶ 38 (same), ¶ 39 (same), ¶ 40 (same), ¶ 43 (same), ¶ 47 (stating that the claim is "estimated"), ¶ 51 (stating that the claim amounts are an "estimation"); Claim Attachment to Claim 13321, ¶ 8 (indicating that the EPA "estimates" the amount of the claimed costs), ¶ 10 (identifying the "currently estimated" amount of the liability).

## Debtors' Objection to the Claims

      23.    In the coming days (and in advance of the hearing on this Motion), the Debtors will file the Claim Objection. The Debtors intend to object to virtually every element of the Claims. The Claim Objection will identify various admissions and pleading deficiencies in the Claims, reference significant additional facts omitted from the Government's recitation in the

Claim Attachments and advance numerous legal arguments regarding the sufficiency and limits of the Claims.

        24.    By way of example, the Debtors anticipate that the defenses to be raised in the Claim Objection will include the following: (a) the EPA cannot assert joint and several liability at the CDE Site where the United States government, through the Department of Defense and its predecessors, is a contributor to contamination; (b) the EPA's proposed remedial actions, in whole or in part, are arbitrary and capricious or otherwise not in accordance with the law; (c) the EPA cannot establish causation and/or alternate causation is the source of some or all of the asserted damages; (d) liability should be equitably allocated to responsible parties; and (e) the EPA's cost estimates are speculative and unsupported, or the EPA otherwise has not met its burden of proof.

### Conventional Litigation of the Claims Could Take an Extended Period of Time

        25.    The Claims cover a period beginning as early as 1914. See Claim Attachment to Claim 13796, ¶ 35. There are multiple sites at issue, raising a series of contested issues related to amount and appropriateness of the asserted liabilities. The numerous issues in dispute, including those referenced above, will be described in the Claim Objection.

        26.    The Claims indicate that the Government has been involved in oversight at the various sites for 20 years or more. See Claim Attachment to Claim 13767, ¶ 27 (referring to notification to the EPA in the "1980s"). The Government has included the largest of the sites (the CDE Site) on its "National Priorities List" for more than nine years. See id., ¶ 37. The second largest site (the subject of Claim 13321) has been on the "National Priorities List" for 24 years. See Claim Attachment to Claim 13321, ¶ 4

27.    Despite significant attention to these matters over many years, the issues in dispute remain numerous and the Government has yet to reach a conclusion even on the amount of potential liability.  The Government does not suggest any date certain by which it expects to complete the process of fixing liability for the sites, through conventional administrative procedure and/or litigation.  In any such proceeding, the Government may seek delay while it completes the additional administrative steps of establishing remedies and fixes amounts that are now contingent.  The Government could seek to pursue other litigation maneuvers to delay a final determination of the Claims.  As such, conventional litigation activities could take many months or even years to complete.  The Debtors therefore submit that conventional litigation is not appropriate as a means to resolve the Claims promptly.

## ARGUMENT

## I.    THE COURT SHOULD ESTIMATE THE CLAIMS

### A.    The Court Has Authority to Estimate the Claims

28.    Section 502(b) of the Bankruptcy Code generally provides that, upon an objection to claim, a bankruptcy court "shall determine the amount of such claim in lawful currency of the United States[.]"  Section 502(c) recognizes, however, that certain "contingent or unliquidated" claims may be difficult to determine, within the time-frame of a bankruptcy case. See In re Interco Inc. v. ILGWU Nat'l Ret. Fun (In re Interco Inc.), 137 B.R. 993, 997 (Bankr. E.D. Mo. 1992) (section 502(c) enacted to "further the requirement that all claims against a debtor be converted into dollar amounts").  Section 502(c) serves two essential purposes: "(1) the section is designed to avoid the need to await the resolution of outside lawsuits to determine issues of liability or amount owed by means of anticipating and estimating the likely outcome of these actions; and (2) the section is designed to promote a fair distribution to creditors through a

realistic assessment of uncertain claims[.]" O'Neill v. Continental Airlines, Inc. (In re Continental Airlines, Inc.), 981 F.2d 1450, 1461 (5th Cir. 1993); see also In re Lane, 68 B.R. 609, 611 (Bankr. D. Haw. 1986) (where section 502(c) applies, the duty of court to estimate is "mandatory," because the section says "shall").

29.    Under section 502(c), "[t]here *shall be estimated* for purposes of allowance under this section – (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case[.]" 11 U.S.C. § 502(c) (emphasis added). Here, the Government's Claims are both contingent and unliquidated. A substantial portion of the Claims relate to potential, future costs to be incurred. See supra, ¶¶ 18-22.

30.    The Debtors, moreover, dispute both the existence and the amount of liability, both for past and estimated future costs and damages, as will be set forth in greater detail in the Claim Objection. See id. Under these circumstances, the Claims are both contingent and unliquidated, as well as disputed, and are subject to estimation. See Drexel, 148 B.R. at 986 (contingency relates both to payment and liability); In re Interco, Inc., 137 B.R. 993, 997 (Bankr. E.D. Mo. 1992) (an unliquidated claim is "not subject to ready determination and precision in computation of the amount due or capable of ascertainment by reference to an agreement or by simple computation"); see also In re Pacor, 110 B.R. 686, 689 (E.D. Pa. 1990); In re Kaiser Group Int'l, Inc., 289 B.R. 597, 608 (Bankr. D. Del. 2003).

31.    Pursuant to the authority in section 502(c) of the Bankruptcy Code, bankruptcy courts have the power to estimate contingent and unliquidated claims for purposes of formulating and implementing a plan of reorganization. See, e.g., Kool, Mann, Coffee & Co. v. Coffey, 300 F.3d 340, 356 (3d Cir. 2002) ("[U]nder the authority of the Bankruptcy Court to

estimate the value of claims under 11 U.S.C. § 502(c), 'the bankruptcy court had exclusive jurisdiction to direct the manner and the time in which such a claim is to be liquidated or estimated as to its amount ... .'") (citation omitted); In re Trident Shipworks, Inc., 247 B.R. 513, 514 (Bankr. M.D. Fla. 2000) ("There is no question that the Court has discretion to determine the appropriate method of estimation [of the unliquidated claims at issue], especially the purpose of the estimation. The estimation proceeding is clearly a 'core' matter."); In re Poole Funeral Chapel, Inc., 63 B.R. 527, 533 (Bankr. N.D. Ala. 1986) ("Movants concede that the bankruptcy judge has authority to estimate their [unliquidated] claims under Section 502(c) of the Bankruptcy Code for the purposes of confirming a plan under Chapter 11.").

32.    In addition, bankruptcy courts have routinely exercised this power to estimate environmental claims. See, e.g., In re FV Steel & Wire Co., 2007 WL 2116385, at *4-9 (Bankr. E.D. Wis. July 19, 2007) (estimating environmental claim); Kaiser, 289 B.R. at 608 (same); AL Tech Specialty Steel Corp. v. Allegheny Int'l, Inc. (In re Allegheny Int'l Inc.), 158 B.R. 361, 367 (Bankr. W.D. Pa. 1993) (same); In re National Gypsum Co., 1992 WL 426464, at *1 (Bankr. N.D. Tex. June 24, 1992) (same).

### B.    Failure to Estimate Would Unduly Delay Administration of These Cases

33.    The Debtors have long stated their goal of emerging from chapter 11 by the end of 2007, which will benefit their businesses, estates, creditors and other stakeholders. The Debtors have made substantial progress in negotiating the terms of the Plan and related documents and believe that they are on track to achieve a prompt emergence from bankruptcy by year's end. As described above, however, the Plan Support Agreement and the Plan require that the Plan Emergence Condition be satisfied before the Debtors can emerge from chapter 11. To satisfy the Plan Emergence Condition, the Debtors must make sufficient progress in resolving claims so that the total amount of allowed General Unsecured Claims does not exceed the Plan

Cap. Given the potential size of the Claims asserted by the Government (asserting potential amounts equal to nearly 10% of the Plan Cap and approximately 20% of the non-bondholder portion of the Plan Cap), the prompt resolution of the Claims will be important to fulfilling the Plan Emergence Condition and permitting the Debtors to emerge from chapter 11 without delay.

34.    Numerous benefits to interested parties, including creditors who are awaiting distributions under the Plan, will accrue only upon emergence. It is critical to the Debtors' businesses, including their ability to secure new business opportunities (which have long lead times), for the Debtors to maintain their timetable for emergence. In any event, the Debtors cannot delay emergence much beyond year end or they risk losing the benefits of important agreements with stakeholders that are incorporated into, and form the foundation of, the Plan. In particular, the Plan Support Agreement will expire and no longer be effective for any Supporting Creditors thereunder (representing approximately $1.3 billion in bond debt) if the effective date of the Plan does not occur by February 28, 2008.

35.    Under these circumstances, the existence of substantial contingent and unliquidated Claims from the Government — which the Government has asserted could exceed $300 million — would unduly delay administration of these cases. The Government's Claims are the largest remaining unliquidated disputed claim in these cases. A delay in the resolution of the Claims could adversely impact the ability of the Debtors to satisfy the Plan Emergence Condition and emerge from bankruptcy on their current schedule. Such a delay also could cause the Debtors to lose the benefits of the settlements embodied in the Plan Support Agreement and undermine their ability to implement the Plan. The substantial size of the potential Claims also could significantly impact creditor recoveries under the Plan. As described in the Disclosure Statement, an increase of $250 million in the size of the General Unsecured Claims pool (which

is less than the amounts asserted in the Claims) could reduce creditor recoveries by approximately 6% to 8%, depending on the total amount of the claims pool. See Disclosure Statement, § II.B ("Classification and Treatment of Claims and Interests under the Plan") (providing estimated recoveries for General Unsecured Claims in $250 million ranges based on total claims between $2.5 billion to $3.25 billion).

36.    Because the existence of the Claims as substantial potential liabilities would unduly delay the administration of these cases and because traditional litigation of the Claims likely would not resolve these issues in a timely manner, the Debtors hereby propose procedures to estimate the Claims effectively and efficiently.[4]  The proposed estimation would establish a final and complete resolution of the Claims for purpose of allowance, treatment and distribution in these cases.

37.    Accordingly, for the foregoing reasons, this Motion to establish estimation procedures for the Claims is well-grounded.

## II.    THE COURT SHOULD ESTABLISH PROCEDURES FOR ESTIMATION

### A.    The Court Has Discretion to Choose the Form of Estimation

38.    Because the Bankruptcy Code does not prescribe any specific method for estimating claims, the process, procedure, timing and conduct of estimation proceedings are matters committed to the reasonable discretion of the bankruptcy court. See In re Ralph Lauren Womenswear, Inc., 197 B.R. 771, 775 (Bankr. S.D.N.Y. 1996); see Kool, Mann, 300 F.3d at 356-57 (bankruptcy court had "exclusive jurisdiction to direct the manner and the time in which such a claim is to be liquidated or estimated as to its amount, and its decision should be subject

---

[4]    The Debtors do not believe that settlement discussions alone will result in the prompt resolution of the Claims. The Debtors have engaged in discussions with the Government to explore the possibility of settlement, both before and after the Government filed its Claims in these cases. Despite some productive discussions, the Debtors believe that only through an estimation proceeding will the parties be able to make sufficient progress within the relevant timeframes to resolve the Claims.

to review only on the ground of abuse of discretion") (quotation omitted); In re Farley, Inc.,

146 B.R. 748, 754 (Bankr. N.D. Ill. 1992) (noting court's "broad discretion" in estimation).

       39.     A bankruptcy court need not be "clairvoyant" in estimating claims; rather,

it "need only arrive at a reasonable estimate of the probable value of the claim[.]" In re Baldwin-

United Corp., 55 B.R. 885, 898 (Bankr. S.D. Ohio 1985); see also In re The Nova Real Estate

Inv. Trust, 23 B.R. 62, 65 (Bankr. E.D. Va. 1982) (estimation "necessarily implies no certainty;

it is not a finding or a fixing of an exact amount;" estimation is "merely the court's best estimate

for the purpose of permitting the case to go forward and thus not unduly delay the matter"); see

also Bittner v. Borne Chemical Co., 691 F.2d 134, 135 (3rd Cir. 1982) (the court need only

provide a "reasonable estimate" of the value of a claim).

       40.     In choosing procedures for estimation, a bankruptcy court is authorized to

use "whatever method is best suited to the circumstances[.]" In re Thomson McKinnon Sec.,

Inc., 191 B.R. 976, 979 (Bankr. S.D.N.Y. 1996) (quoting In re Brints Cotton Mktg., Inc.,

737 F.2d 1338, 1341 (5th Cir. 1984)); see also Bittner, 691 F.2d at 135 (the procedure for

estimation is to be "undertaken initially by the bankruptcy judges, using whatever method is best

suited to the particular contingencies at issue"); In re Seaman Furniture Co., 160 B.R. 40, 41

(S.D.N.Y. 1993). Methods used by courts for estimation have "run the gamut," including

everything from "full-blown evidentiary hearings" to "a mere review of pleadings, briefs, and a

one-day hearing involving oral argument of counsel." In re Windsor Plumbing Supply Co.,

170 B.R. 503, 520 (Bankr. E.D.N.Y. 1994) (estimation completed based only upon the review of

documents submitted by the parties); see Thomson McKinnon, 143 B.R. at 619 (in an estimation

proceeding, each party was permitted to submit one live witness, plus discovery materials from

other litigation); see also Bittner, 691 F.2d at 136 (noting that broad discretion has been granted

to bankruptcy courts, based on a Congressional determination that "bankruptcy courts are better

equipped to evaluate the evidence supporting a claim within the context of a particular

bankruptcy proceeding").

       41.     Whatever method the bankruptcy court chooses, however, must be

consistent with the essential purposes of section 502(c) of the Bankruptcy Code:  to avoid

"unduly delay[ing]" the administration of the case.  See In re G-I Holdings, Inc., 323 B.R. 583,

599 (Bankr. D.N.J. 2005) ("to the greatest extent possible, a selected estimation procedure

should not run counter to the efficient and expeditious administration of the bankruptcy estate");

In re Dow Corning, Inc., 211 B.R. 545, 560 (Bankr. E.D. Mich. 1997) (estimation is "quick way

for a bankruptcy court to liquidate a disputed claim when a full fledged trial would delay

administration of the case").

       42.     As with environmental claims disputes that have arisen in other contexts,

it is anticipated that estimation of the Claims will involve both a determination of the amounts of

the asserted liabilities and issues of divisibility and allocation of any valid portion of these

liabilities.  Under such circumstances, courts commonly receive testimony from experts, who can

efficiently construct and present a proposed determination and allocation of costs.  See, e.g.,

United States v. Atlas Minerals & Chemicals, Inc., 1995 WL 510304, at *95 (E.D. Pa. Aug. 22,

1995); FV Steel, 2007 WL 2116385, at *2-3 (hearing involving experts in connection with

estimation of environmental claims).

       43.     Although the facts involved may be complicated, the Court can employ

methodology to estimate the Claims that is straightforward and familiar.  See, e.g., In re Xonic

Photochem., Inc., 841 F.2d 198, 200 (7th Cir. 1988) ("To value contingent liability it is

necessary to discount it by the probability that the contingency will occur and the liability

become real."); <u>Windsor Plumbing</u>, 170 B.R. 503, 521 ("An estimator of claims must take into account the likelihood that each party's version might or might not be accepted by a trier of fact. The estimated value of the claim is then the amount of the claim diminished by the probability that it may be sustainable in part or not at all."); <u>Lane</u>, 68 B.R. at 613 (estimating a claim by analyzing the present value of likely outcomes in pending action).[5]

44.    With the aid of appropriate experts and other relevant evidence, and in light of relevant legal principles (much of which will be described in the Claim Objection), the Court here may estimate and determine the proper amount of the Claims.  For example, such an estimation may take into account the overall potential exposure for Dana, reduce that amount by the degree to which the exposure (estimated costs and other damages) are overstated or improper and further discount the exposure by the probability that Dana will be held not liable (or only partially liable) on some or all of the liabilities asserted in the Claims.

**B.    The Court Should Set a Schedule and Procedure for Prompt Estimation**

45.    The Debtors anticipate that a hearing to consider confirmation of the Debtors' proposed Plan will be scheduled to be conducted in December 2007.  Assuming that the Plan is confirmed, the Debtors will seek to satisfy the Plan Emergence Condition and other conditions to the effective date of the Plan without delay, to permit the Debtors to emerge from chapter 11 at or about the end of 2007.

46.    As such, the Debtors propose an estimation process to fully and finally estimate the amount of the Claims for allowance, treatment and distribution before the end of the year.  Upon the filing of the Claim Objection, the Government will have 25 days to file an initial

---

[5]    As noted above, the Court has broad discretion to determine the appropriate methodology for estimation.

response, as set forth in the Claims Procedures Order.  In addition, the Debtors propose the

following schedule for the estimation of the Claim:

- ♦ **September 7, 2007 (projected)**:  Filing of Claim Objection.

- ♦ **September 19, 2007**: Hearing on this Motion and initial scheduling conference on the Claim Objection;

- ♦ **September 24, 2007:**  Parties to serve initial written discovery requests;

- ♦ **October 2, 2007 (projected):**  Filing of Response to the Claim Objection;

- ♦ **October 5, 2007:**  Parties to complete service of any supplemental written discovery requests;

- ♦ **October 12, 2007:**  Parties to disclose proposed witnesses (including experts);

- ♦ **October 29, 2007:**  Parties to complete all written fact discovery;

- ♦ **November 9, 2007:**  Parties to serve expert reports (if any);

- ♦ **November 19, 2007:**  Parties to complete all depositions;

- ♦ **November 28, 2007:**  Parties to file and serve pre-hearing memoranda;

- ♦ **November 30, 2007:**  Parties to exchange final witness lists, copies of exhibits and deposition designations (if any);

- ♦ **December 3, 2007**: Parties to serve and file pre-hearing reply memoranda (if any) and any affidavits or declarations;

- ♦ **December 3, 2007:**  Parties to submit a joint pre-trial order, identifying (a) the legal issues for trial (either as agreed or otherwise), (b) each party's witnesses and exhibits (pre-marked) and (c) any stipulated facts (the "Joint Pre-Trial Order").

- ♦ **Early December 2007:**  Pre-trial conference to be conducted in preparation for a final hearing; and

- ♦ **December 10-21, 2007:**  Parties to be available for a final hearing on the Claim Objection and the estimation of the Claims (subject to availability of the Court) (the "Final Hearing").

47.     The dates in the foregoing proposed schedule are tentative, and subject to

the direction of the Court.  For example, these dates, by their nature, depend upon the availability

of the Court to conduct the Final Hearing. Once a Final Hearing date is determined, the other dates can be adjusted accordingly. In addition, prior to the hearing on this Motion, the Debtors intend to discuss these issues with counsel for the Government and seek agreement on some or all of the terms of a scheduling order for this matter.

48.     Debtors propose that the following additional procedures be implemented to streamline the final estimation hearing (collectively with the proposed schedule above, the "Estimation Procedures"):

a.     To the fullest extent possible, each party should present its case in chief through written submissions, including affidavits or declarations of witnesses (to be available for cross-examination at the Final Hearing);

b.     Live witnesses will be permitted at the Final Hearing, but shall be limited to a set number of witnesses per party;

c.     As described in the proposed schedule above, the parties shall submit a Joint Pre-Trial Order at least a week before the Final Hearing to identify the issues to be addressed at the hearing, including any agreements as to the legal issues to be addressed and any relevant facts;

d.     Each party should be limited to a set period of time for its presentation at the Final Hearing;

e.     Certain threshold legal issues may be presented to the Court for determination prior to the Final Hearing at the omnibus hearing scheduled in these cases on November 15, 2007 at 10:00 a.m., *provided that* any request for such threshold rulings is filed and served no later than October 24, 2007, any responses are filed no later than November 7, 2006 and any replies are filed no later than November 12, 2007; and

f.      Additional procedures to streamline the Final Hearing may be agreed upon by the parties or determined by the Court.

49.    The Debtors submit that the proposed Estimation Procedures are "suited to the circumstances" of this matter.  See Thomson McKinnon, 191 B.R. at 979.  The proposed Estimation Procedures, while expedited, are designed to provide each party a fair opportunity to present its position with regard to estimation, and to provide the Court with information sufficient to establish a "reasonable estimate of the probable value" of the Claims.  See Baldwin-United, 55 B.R. at 898.

50.    For all of the foregoing reasons, the Debtors submit that the Estimation Procedures proposed herein are reasonable and appropriate, are in the best interests of the Debtors' estates and stakeholders and should be approved.  In addition, the Debtors submit that the Claims should be estimated, as described herein, pursuant to the Estimation Procedures.

## Memorandum of Law

51.    This Motion includes citations to the applicable authorities and does not raise any novel issues of law.  Accordingly, the Debtors respectfully request that the Court waive the requirement contained in Local Bankruptcy Rule 9013-1(b) that a separate memorandum of law be submitted.

## Notice

52.    Pursuant to the Amended Administrative Order, Pursuant to Rule 1015(c) of the Federal Rules of Bankruptcy Procedure, Establishing Case Management and Scheduling Procedures (Docket No. 574) (the "Case Management Order"), entered on March 23, 2006, notice of this Motion has been given to (a) the parties identified on the Special Service List and

the General Service List (as such terms are defined in the Case Management Order) and (b) the Government, by and through its counsel at the Office of the United States Attorney for the Southern District of New York.  The Debtors submit that no other or further notice need be provided.

**No Prior Request**

53.    No prior request for the relief sought in this Motion has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court: (a) enter an order substantially in the form attached hereto as Exhibit B, approving the Estimation Procedures, providing for the estimation of the Claims pursuant to the Estimation Procedures and otherwise granting the relief requested herein; and (b) grant such other and further relief to the Debtors as the Court may deem proper.

Dated: September 5, 2007           Respectfully submitted,
       New York, New York

/s/ Corinne Ball
Corinne Ball (CB 8203)
Richard H. Engman (RE 7861)
Steven C. Bennett (SB 2746)
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

Heather Lennox (HL 3046)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

Jeffrey B. Ellman (JE 5638)
JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia  30309-3053
Telephone:  (404) 521-3939
Facsimile:  (404) 581-8330

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION