# EXHIBIT E

Hearing Date and Time:  October 3, 2007 at 10:00 a.m.
Response Deadline:  September 28, 2007 at 4:00 p.m.

JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Corinne Ball (CB 8203)
Richard H. Engman (RE 7861)
Steven C. Bennett (SB 2746)

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
Heather Lennox (HL 3046)

JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia  30309-3053
Telephone:  (404) 521-3939
Facsimile:  (404) 581-8330
Jeffrey B. Ellman (JE 5638)


Attorneys for Debtors
and Debtors in Possession


# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------- x
                                                        :
In re                                                   :    Chapter 11
                                                        :
Dana Corporation, et al.,                               :    Case No. 06-10354 (BRL)
                                                        :
                              Debtors.                  :    (Jointly Administered)
                                                        :
------------------------------------------------------- x
```

## DEBTORS' OBJECTION TO MOTION OF THE UNITED STATES OF AMERICA TO STAY DEBTORS' OBJECTION TO THE GOVERNMENT'S PROOFS OF CLAIM AND DEBTORS' ESTIMATION MOTION PENDING A DECISION ON THE GOVERNMENT'S MOTION TO WITHDRAW THE REFERENCE

NYI-4025812v3

TO THE HONORABLE BURTON R. LIFLAND,
UNITED STATES BANKRUPTCY JUDGE:

Dana Corporation and the other above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby submit this Objection to the Motion of the United States of America to Stay Debtors' Objection to the Government's Proofs of Claim and Debtors' Estimation Procedures Motion Pending a Decision on the Government's Motion to Withdraw the Reference (Docket No. 6205) (the "Stay Motion"). In support of this Objection, the Debtors respectfully represent as follows:[1]

## INTRODUCTION

1.      This is another in an ongoing series of attempts by the Government[2] to delay the prompt estimation of its Claims in these cases.[3] At a hearing before this Court on September 19, 2007, less than two weeks ago, the Court granted the Debtors' motion to establish estimation procedures for the Government's Claims (Docket No. 6112) (the "Estimation Procedures Motion") and overruled the Government's objections. In doing so, the Court found that there was good cause to move forward with a prompt estimation process under section 502(c) of the Bankruptcy Code. Among other things, such an estimation process is necessary to avoid a delay in the Plan process and to permit the Debtors to emerge promptly

---

[1]      Capitalized terms not otherwise defined herein have the meanings given to them in the Debtors' Objection to Claims of the United States Environmental Protection Agency, National Oceanic and Atmospheric Administration of the Department of Commerce and the Department of the Interior (Claim No. 13321 and 13796) (Docket No. 6128) (the "Claim Objection").

[2]      As used herein, the "Government" refers, collectively, to the United States Environmental Protection Agency, the National Oceanic and Atmospheric Administration of the United States Department of Commerce and the United States Department of the Interior acting through the Fish and Wildlife Service.

[3]      The Government's initial request, to delay hearing on the Estimation Procedures Motion (as defined herein) for two weeks, was denied. In opposing the Estimation Procedures Motion, the Government then sought at least three months of delay on estimation of its claims (to March 2008 or later). The Court denied that request, and set the estimation hearing for January 14, 2008, as described below.

from chapter 11 and maximize creditor recoveries.  In light of the status of these cases, which are poised for completion in the coming months, and the efforts that have been expended by the Debtors, the Court and other constituencies over the past 18 months, the Court determined that prompt estimation of the Claims was necessary to avoid undue delay in the administration of these cases.  On September 25, 2007, the Court entered an order, submitted jointly by the Debtors and the Government, to establish an estimation process and timeline for the Claims, leading up to an estimation hearing to be conducted on January 14, 2008 (Docket No. 6274) (the "Estimation Procedures Order").

2.    The current Stay Motion now seeks a one-month delay (until at least October 25, 2007), during which the parties apparently would do nothing but await a decision on the Government's Motion to Withdraw the Reference (the "Withdrawal Motion"), which is pending before the District Court.  That Withdrawal Motion, the Debtors believe, is not well-founded.  See Exh. A, Debtors' Opposition to Withdrawal Motion (the "Withdrawal Opposition").[4]  More significantly, the Government cannot establish that it would suffer any harm as a result of continuing the discovery process, pending decision on the Withdrawal Motion.

3.    By contrast, the Debtors, this Court's resources and the public interest would all suffer if, as the Government apparently prefers, the parties sit and do nothing for a month.  Indeed, a stay in the litigation schedule just adopted by the Court would threaten to delay the prompt estimation hearing that the Court has determined is appropriate and necessary.  Moreover, regardless of whether the reference is withdrawn in this matter, the estimation process

---

[4]    All Exhibits are attached to the Declaration of Steven C. Bennett, dated September 28, 2007.

will continue and the Debtors will seek to maintain the current estimation schedule, either in this Court or in the District Court. A stay of litigation activities for a month, however, will make it much more difficult to achieve that result, and clearly is a tactic by the Government to achieve the delay that this Court already has (twice) denied. Such a delay, if permitted, could adversely impact the Plan implementation process and the timing and amount of creditor recoveries.

        4.      Because (a) the Government has not met its burden of demonstrating harm, (b) the Debtors and their estates and creditors will be directly and adversely impacted by a delay and (c) in any event, the Government cannot demonstrate a likelihood of prevailing on the Withdrawal Motion under governing law, the Court should deny the Government's Stay Motion.

## ARGUMENT

### THE COURT SHOULD DENY THE STAY MOTION

        5.      The filing of the Withdrawal Motion does not automatically stay proceedings in this Court. See, e.g., In re TJN, Inc., 207 B.R. 499, 500 (Bankr. D.S.C. 1996) (noting "no stay is created simply as a result of the filing of a Motion for Withdrawal of Reference"). Rather, a decision on a motion to stay is discretionary, and "the [movant] bears the burden of proof in demonstrating to this Court that a stay of these proceedings pending a determination on the Motion to Withdraw would be proper." TJN, Inc., 207 B.R. at 501 (denying stay where movant failed to "persuade this Court that a stay is reasonable, necessary or proper") (emphasis added).

        6.      To prevail on the Stay Motion, the Government must demonstrate the following: (a) the likelihood of prevailing on the merits, i.e., that the Withdrawal Motion will be granted; (b) that the Government will suffer irreparable harm if the stay is denied; (c) that the Debtors will not be substantially harmed by the stay; and (d) that the public interest will be

served by granting the stay. Miller v. Vigilant Ins. Co. (In re Eagle Enters, Inc.), 259 B.R. 83, 86

(Bankr. E.D. Pa. 2001) (citing 9 Collier on Bankruptcy, ¶ 5011.03[2][a], 5011-16,17 (Matthew

Bender 15th Ed. Revised 2000)). The Government has not provided, and cannot provide, any

evidence to support even one of the above factors. Accordingly, the Government's Stay Motion

must be denied.

## A. DELAY WILL HARM THE BANKRUPTCY ESTATE AND THE PUBLIC INTEREST

7.      As an equitable remedy, any request for a stay must be grounded in

fairness. See Hughes, Hooker & Co. v. American S.S. Owners Mut. Protection and Indem.

Ass'n, Inc., No. 04 Civ. 1859 (SHS), 2005 WL 1384055, at *6 (S.D.N.Y. June 9, 2005); U.S. v.

County of Nassau, 188 F.R.D. 187, 189 (E.D.N.Y. 1999). Thus, "if there is even a fair

possibility that the stay for which [a movant] prays will work damage to someone else, the

movant must make out a clear case of hardship or inequity in being required to go forward."

American Steamship Owners Mut. Prot. and Indem. Assoc. v. LaFarge N. Am., Inc., 474 F.

Supp.2d 474, 482 (S.D.N.Y. 2007) (quoting Landis v. N. Am. Co., 299 U.S. 248, 255 (1936)).

See also Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co., 339 F.2d 440, 442 (2d

Cir. 1964) (same); LaSala v. Needham & Co., 399 F. Supp.2d 421, 427 (S.D.N.Y. 2005) (same).

8.      Indeed, in the bankruptcy context, a court must concern itself not only

with harm to the non-movant from a stay, but harm to the interests of the entire bankruptcy

estate. In general, therefore, as numerous decisions have recognized, "[t]he public interest favors

expedient administration" of bankruptcy proceedings. In re Tower Auto., Inc., No. 05-

10578(ALG), 2006 WL 2583624, at *3 (Bankr. S.D.N.Y. June 28, 2006); ePlus, Inc. v. Katz (In

re Metiom, Inc.), 318 B.R. 263, 272 (S.D.N.Y. 2004) ("public interest lies in the expeditious

administration of bankruptcy cases"); American Film Tech. v. Taritero (In re Am. Film Tech.,

Inc.), 175 B.R. 847, 849 (Bankr. D. Del. 1994) ("It is one of the paramount interests of [a bankruptcy court] to assist the Debtor in its reorganization efforts.").

       9.     Here, the delay sought by the Government threatens to adversely impact the entire bankruptcy process and waste months of efforts by the Debtors to emerge promptly from chapter 11 and satisfy creditors' claims. As previously described in the Estimation Procedures Motion, a delay in estimating the Government's Claims jeopardizes the Debtors' prompt emergence from chapter 11 on the timeline contemplated by their Plan and various agreements with key constituents, and undermines the Debtors' ability to make prompt and complete distributions to their creditors. Delay thus is detrimental to the Debtors' estates, creditors and other constituents. All of this, in fact, formed the basis for the Court's decision to establish a prompt estimation schedule in the Estimation Procedures Order entered on September 25, 2007.

       10.    As this Court noted in its decision approving estimation procedures, the Debtors operate in a "major industrial segment," employing more than 40,000 people, and have creditors holding billions of dollars of prepetition obligations subject to treatment in these bankruptcy cases. See Exh. B, Transcript ("TR") of Hearing, dated September 19, 2007, at 46. The Debtors have spent 18 months addressing a myriad of complex issues critical to their reorganization, including issues relating to labor contracts, retiree benefits, executive management, tax planning, commercial relationships with customers and suppliers and other fundamental restructuring initiatives. See, e.g., Exh. B, TR at 51. The Debtors have now filed their Plan, reflecting the negotiations with key constituencies, as the blueprint to emerge from chapter 11 in the coming months. Among other things, consistent with agreements between the Debtors and certain of their key stakeholders and investors, one condition to the effectiveness of

the Plan is that the total amount of allowed general unsecured claims in designated categories

shall not exceed $3.25 billion.[5]  In this context, the Government's Claims asserting unliquidated

liabilities of $300 million or more are by far the largest remaining unresolved general unsecured

claims in these cases, and are particularly significant.  See Exh. B, TR at 46, 50.  As a result, this

Court has recognized that "[a] delay in the resolution of the claims may impact the ability of the

Debtors to emerge from bankruptcy in a timely manner."  Exh. B, TR at 50.

11.    Further, as this Court noted, "long, drawn out discovery and litigation

between the Debtors and the Government should not preclude Dana's creditors from receiving

their distributions measured in billions of dollars."  Exh. B, TR at 51; see also id. at 49 ("Lengthy

bankruptcy proceedings cause delayed distributions, which, in turn, greatly devalue the claims of

all creditors as they cannot use the assets until they receive them.") (citation omitted).

12.    The Government's contention that a one-month stay "will not significantly

delay administration of the bankruptcy proceeding" (Stay Motion, ¶ 26), is entirely unfounded.

Even if the District Court rules immediately on the Government's Withdrawal Motion at the

scheduled October 25, 2007 hearing, the parties would have lost an entire month in the process

of preparing for a hearing on the estimation of the Claims.  That time would be irretrievably lost,

and would directly undermine the Debtors' efforts to maintain the current litigation schedule

either in this Court or, if the reference is withdrawn, in the District Court.  Further, the

Government's offer to "work with Dana to agree to a mutually acceptable expedited discovery

schedule" rings hollow in light of the fact that the Government has already twice asked for delay

in these proceedings, and the fact that the Government's version of "expedited" proceedings is to

---

[5]    This condition to emergence may be waived, but only by the Creditors' Committee acting
reasonably and consistently with its fiduciary duties to all unsecured creditors.

try the estimation issues (at the earliest) in March 2008, not in January 2008, as the Court has directed.

13.    Moreover, rather than asking for a small adjustment to the discovery schedule just adopted by this Court (and submitted jointly by the parties consistent with the Court's ruling on the Estimation Procedures Motion), the Government seeks to stop *all progress* in this litigation. The Government takes this Draconian approach even though it is clear that this litigation will continue in either this Court or the District Court. Such an approach is a thinly veiled attempt to obtain the very delay in these proceedings that the Court denied in its ruling at the September 19 hearing.[6] As such, and for all of the reasons already acknowledged by the Court in granting the Estimation Procedures Motion, the Court should not permit such a delay.

## B.    THE GOVERNMENT HAS NOT DEMONSTRATED IRREPARABLE HARM

14.    In contrast to the obvious harm to the bankruptcy process caused by a delay, the Government here has made out nothing even approaching a "clear case of hardship or inequity in being required to go forward." American Steamship Owners, 474 F. Supp.2d at 482 (quoting Landis v. N. Am. Co., 299 U.S. 248, 255 (1936)). See also Nederlandse Erts-Tankersmaatschappij, 339 F.2d at 442 (same); LaSala, 399 F. Supp.2d at 427 (same). Here, the entire premise of the Government's harm argument is wrong-headed. The Government contends that it will "be forced to incur the duplicative expense of litigating" in two judicial fora simultaneously. See Stay Motion, ¶ 25. Yet, no such duplicative litigation exists. In this Court,

---

[6]    The Debtors note that the Government refused to withdraw the current application for a stay, even after being assured that the Government could request an extension of discovery (if it became necessary). See Exh. C, Bennett and Yankwitt email exchange dated September 24, 2007. Thus, the Government appears bent on a path of litigation on everything but the merits of its Claims.

the parties have embarked on a discovery schedule relating to the estimation of the Claims.[7] In

the District Court, the only matter pending is the Government's Withdrawal Motion. Briefing on

that motion will be completed shortly, and argument will be heard by the District Court on

October 25, 2007. During that time, under the Estimation Procedures Order, the only activity in

this Court will be the discovery conducted between the parties and the Government's filing of a

response to the Claim Objection (presumably in both cases without any court involvement).

Even if the Withdrawal Motion were granted, the litigation relating to the Claims would simply

be transferred to the District Court and the same discovery would be conducted and a response to

the Claim Objection would be required.[8] Thus, there simply are no "duplicative" activities here,

no risks of having to litigate the same issues twice and no risks that duplicative expenses will be

incurred.[9]

          15.    Further, if any hardship associated with the current discovery and briefing

schedule becomes manifest, the Government's remedy is to seek revision of that schedule, not to

---

[7]      After this Court approved estimation procedures, the Government insisted that the Debtors promptly serve written discovery requests, so that the Government could get a head start on responding to those requests. The Debtors complied with that request, and included as part of their written document requests copies of requests that were pending even before the Estimation Procedures Motion was filed, as part of informal discovery between the parties. Thus, the Government has been given the maximum advance notice of the Debtors' discovery requests, and Debtors have demonstrated a willingness to cooperate with the Government in setting a schedule for discovery responses.

[8]      Under paragraph 3(a)(ii) of the Estimation Procedures Order, the Government must file its response to the Claim Objection by October 12, 2007. This represents a ten day extension of the deadline that otherwise would apply. See Exh. D, Estimation Procedures Order.

[9]      Moreover, trial and discovery costs are generally not considered irreparable harm, because such costs can be reimbursed. See In re Perry H. Koplik & Sons, No. 02-B-40648(REG), 2007 WL 781905, at *1 (Bankr. S.D.N.Y. Mar. 13, 2007). Indeed, since a trial on estimation is required, whether in the Bankruptcy Court, or the District Court, such costs are inevitable, and cannot possibly be considered irreparable. See In re Baker, 2005 WL 2105802, at *9 (E.D.N.Y. Aug. 31, 2005). The decision in Eagle Enters., Inc. v. Vigilant Ins. Co., 259 B.R. 83, 88-89 (Bankr. D. Pa. 2001), cited by the government, is inapposite. It stands for the limited holding that irreparable harm may occur where the moving party would assume duplicative litigation expenses absent a stay. Here, however, the Government would not assume duplicative costs.

obtain a blanket stay of all proceedings.[10] The "remote and speculative" contention that

discovery could become burdensome cannot suffice to establish "imminent" irreparable harm,

requiring stay relief. See Perry H. Koplik & Sons,, 2007 WL 781905, at *1.

## C.    THE GOVERNMENT HAS NOT DEMONSTRATED LIKELIHOOD OF SUCCESS ON ITS WITHDRAWAL MOTION

16.    There is no basis for a stay of litigation pending the determination of the

Withdrawal Motion because the Government has not demonstrated that it has a likelihood of

succeeding on the merits of that motion. The flaws in the Withdrawal Motion are described in

detail in the Debtors' Withdrawal Opposition, filed in the District Court. See Exh. A. The

Debtors incorporate those arguments herein.

17.    Without reiterating all of the arguments in the Withdrawal Opposition, the

Debtors emphasize a handful of key points. In the Withdrawal Motion, the Government asserts

that mandatory withdrawal is required under 28 U.S.C. § 157(d)[11] because CERCLA-related

issues require the consideration of non-bankruptcy federal law and thus must be resolved by the

District Court. Yet, many such environmental cases have been addressed in bankruptcy courts

over the years, in numerous jurisdictions.[12]

---

[10]    Paragraph 6 of the Estimation Procedures Order expressly preserves the parties' rights to seek such modifications pursuant to Rule 16 of the Federal Rules of Civil Procedure and/or Rule 7016 of the Federal Rules of Bankruptcy Procedure.

[11]    The mandatory withdrawal provision of 28 U.S.C. § 157(d) states: "The district court shall, on timely motion of a party, so withdraw a proceeding [from the bankruptcy court] if the court determines that resolution of the proceeding requires consideration of both title 11 [i.e., the Bankruptcy Code] and other laws of the United States regulating organizations or activities affecting interstate commerce."

[12]    See, e.g., In re FV Steel & Wire Co., No. 04-22421 (SVK), 2007 WL 2116385, at *4-9 (Bankr. E.D. Wis. July 19, 2007) (estimating environmental claim); In re Kaiser Group Int'l, Inc., 289 B.R. 597, 608 (Bankr. D. Del. 2003) (same); In re Allegheny Int'l Inc., 158 B.R. 361, 367 (Bankr. W.D. Pa. 1993) (same); In re Nat'l Gypsum Co., No. 390-37212 (SAF), 1992 WL 426464, at *1 (Bankr. N.D. Tex. June 24, 1992) (same).

18.    Courts in this district narrowly construe 28 U.S.C. § 157(d), so that it will not be used as an "escape hatch for matters properly before the bankruptcy court." See Oneida Ltd. v. Pension Benefit Guar. Corp., No. 06 Civ. 15323 (MGC), 2007 U.S. Dist. LEXIS 52298, at *7 (S.D.N.Y. July 18, 2007) (further stating that "the Second Circuit has construed § 157(d) narrowly"). Following this approach, courts in this district have applied the mandatory withdrawal provision only where resolution of the issue presented involves a "substantial and material consideration" of non-bankruptcy federal law.[13]  Generally, only "novel" statutory issues or matters of "first impression" rise to the level required for mandatory withdrawal. See Adelphia Commc'ns Corp. v. Rigas, No. 02 Civ. 8495 (GBD), 2003 U.S. Dist. LEXIS 9349, at *9 (S.D.N.Y. June 4, 2004); In re Enron Power Marketing, Inc., No. 02 Civ. 7964, 2003 U.S. Dist. LEXIS 189, at *12, 16 (S.D.N.Y. Jan. 8, 2003); In re Laventhol & Horwath, 139 B.R. 109, 115 (S.D.N.Y. 1992); In re Ionosphere Clubs, Inc., 103 B.R. 416, 419 (S.D.N.Y. 1989).  As explained in detail in the Withdrawal Opposition, the Government simply has not identified any "novel" issues of law that require withdrawal of the reference.  The Objection to the Government's Claims plainly is a core proceeding that requires only a straightforward application of established CERCLA to the facts. See Exh. B, TR at 49 ("it is clear from the pleadings before this Court that the dispute is essentially a factual issue").

19.    Moreover, the Government has not demonstrated any cause for permissive withdrawal of the reference.  The Second Circuit has directed district courts to weigh several factors to determine whether sufficient "cause" has been shown to warrant permissive

[13]    See Oneida, 2007 U.S. Dist. LEXIS 52298, at *7; In re Bd. of Dirs. of Telecom Arg., S.A., No. 05 Civ. 8803 (SAS), 2005 U.S. Dist. LEXIS 28640, at *5 (S.D.N.Y. Nov. 18, 2005); LTV Steel Co. v. Union Carbide Corp. (In re Chateaugay Corp.),193 B.R. 669, 673 (S.D.N.Y. 1996); In re Chadbourne Indus., Ltd., 100 B.R. 663, 667-68 (S.D.N.Y. 1989); Int'l Ass'n of Machinists and Aerospace Workers v. E. Airlines, Inc. (In re Ionosphere Clubs, Inc.), 103 B.R. 416, 418-19 (S.D.N.Y. 1989).

withdrawal: (1) whether the matter is a core proceeding under 28 U.S.C. § 157(b)(2); (2) what is the most efficient use of judicial resources; (3) what is the delay and what are the costs to the parties; (4) what will promote uniformity of bankruptcy administration; (5) what will prevent forum shopping; and (6) other related factors. See South St. Seaport Ltd. P'ship. v. Burger Boys (In re Burger Boys), 94 F.3d 755, 762 (2d Cir. 1996); In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir. 1993). As described in the Withdrawal Opposition, an examination of these factors does not establish cause to withdraw the reference.

20.    This a core proceeding involving the determination of bankruptcy claims in a matter of manifest importance to the administration of these cases. This Court is entirely competent to perform the necessary factual inquiries and apply established CERCLA law to address this core matter. The Court's existing background regarding the Debtors and these cases developed over the past 18 months puts it in the best position to address these issues efficiently. The Second Circuit has expressly recognized the efficiencies of permitting bankruptcy courts to deal with core issues, such as those presented here: "hearing core matters in a district court could be an inefficient allocation of judicial resources given that the bankruptcy court generally will be more familiar with the facts and issues." Orion, 4 F.3d at 1101.

21.    In sum, under applicable case law, withdrawal of the reference is neither required nor appropriate under the circumstances, for reasons described in detail in the Withdrawal Opposition. Instead, the largely factual issues presented here can best be resolved by this Court, applying its well-informed understanding of bankruptcy practice and the needs of this case. As such, the Government cannot demonstrate a likelihood that the Withdrawal Motion will be granted, and there is no basis to stay litigation activities relating to the Claims for an entire month pending the District Court's consideration of the Withdrawal Motion.

## CONCLUSION

The Government has not met its burden to demonstrate its entitlement to a stay pending the District Court's decision on the Government's Withdrawal Motion. The Government cannot demonstrate any harm it would suffer if discovery on its claims were to continue pending the District Court's decision. On the other hand, the potential harm to the Debtors and their constituents, and to the public interest, is great. Finally, the Government cannot show a likelihood of success on the merits of its Withdrawal Motion.

WHEREFORE, for all of the foregoing reasons, the Debtors respectfully request that the Court: (a) deny the Government's Stay Motion in its entirety; and (b) grant such other and further relief to the Debtors as the Court may deem proper.


Dated: September 28, 2007                              Respectfully submitted,
      New York, New York

                              /s/ Corinne Ball
                                Corinne Ball (CB 8203)
                                Richard H. Engman (RE 7861)
                                Steven C. Bennett (SB 2746)
                                JONES DAY
                                222 East 41st Street
                                New York, New York 10017
                                Telephone: (212) 326-3939
                                Facsimile: (212) 755-7306

                                Heather Lennox (HL 3046)
                                JONES DAY
                                North Point
                                901 Lakeside Avenue
                                Cleveland, Ohio 44114
                                Telephone: (216) 586-3939
                                Facsimile: (216) 579-0212

                                Jeffrey B. Ellman (JE 5638)
                                JONES DAY
                                1420 Peachtree Street, N.E.
                                Suite 800
                                Atlanta, Georgia 30309-3053
                                Telephone: (404) 521-3939
                                Facsimile: (404) 581-8330

                                ATTORNEYS FOR DEBTORS AND
                                DEBTORS IN POSSESSION