# EXHIBIT F

79IMDANC.txt

1

```
    79IMDANC
 1  UNITED STATES DISTRICT COURT
 1  SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x
 2
 3  IN RE DANA CORPORATION,
 3
 4
 4  ------------------------------x
 5
 5  UNITED STATES OF AMERICA,
 6
 6               Plaintiff,
 7
 7          v.                          07 Civ. 8160 (SAS)
 8
 8  DANA CORPORATION,
 9
 9               Defendant.
10
10  ------------------------------x
11                                      New York, N.Y.
11                                      September 18, 2007
12                                      4:30 p.m.
12
13  Before:
13
14               HON. SHIRA A. SCHEINDLIN,
14
15                                      District Judge
15
16                   APPEARANCES
16
17  MICHAEL J. GARCIA
17       United States Attorney for the
18       Southern District of New York
18  RUSSELL YANKWITT
19  PIERRE ARMAND
19       Assistant United States Attorneys
20
20  JONES DAY
21       Attorneys for Defendant
21  BY:  STEVEN C. BENNETT
22
23
24
25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

2

```
    79IMDANC
 1          (Case called)
 2          THE COURT:  I know nothing about this case.  Why are
 3  you here?
 4          MR. YANKWITT:  Your Honor, this is a large bankruptcy
 5  case pending before Judge Lifland.  The government filed its
 6  proof of claim one year ago.  On September 5, the debtors filed
 7  an estimation procedures motion where they tried to settle the
 8  entire government's claim, which is $300 million in two months.
 9          On September 7, debtors then filed an objection to our
10  proof of claim.  We asked debtors for more time so we could
11  discuss with them withdrawing the reference to your Honor, as
```

Page 1

79IMDANC.txt

12    well as other discovery issues.  They said no.  Time is of the
13    essence, no extensions whatsoever.
14            Accordingly, this morning we filed a motion for a stay
15    in the bankruptcy court so we can move before your Honor to
16    withdraw the reference as to the government's claims in the
17    bankruptcy proceeding.  It's important to note we are only
18    asking to withdraw the federal CERCLA issues which are complex
19    environmental statutes which are not bankruptcy laws, so we are
20    going to ask your Honor to withdraw the reference on the basis
21    of core, noncore.  My memory of these words is poor.  That's
22    not it.
23            Your Honor, under 28 U.S.C. 157(d), there is
24    permissive and there is mandatory.  The government asserts that
25    this is under mandatory.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

3

79IMDANC

1            THE COURT:  The government asserts it's under
2    mandatory?
3            MR. BENNETT:  Yes.
4            THE COURT:  If it's under mandatory?
5            MR. YANKWITT:  Then your Honor must take it.  The
6    court has no discretion.  28 U.S.C. 157(d), in essence, says
7    that if there is an intersection between any complex federal
8    statute and bankruptcy law, the district court must take it.
9    The Court uses the word shall.  And the courts consistently say
10   shall means must.  Courts have consistently said that CERCLA is
11   a complex federal statute.  It affects interstate commerce and
12   the courts have widely held that these types of cases should be
13   withdrawn to the district court.
14           THE COURT:  So you asked for a stay in the bankruptcy
15   court.
16           MR. YANKWITT:  We asked for a stay this morning.
17   Tomorrow morning, there is a hearing before Judge Lifland.  We
18   would like to tell the judge not that your Honor has ruled on
19   this, but we have a date certain which we can be heard before
20   your Honor so we can have a ruling whether or not your Honor
21   will agree to withdraw the reference.
22           THE COURT:  You don't know if he will give you a stay.
23           MR. YANKWITT:  We don't know, your Honor.
24           THE COURT:  You want a stay of what in the bankruptcy
25   court?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

4

79IMDANC

1            MR. YANKWITT:  Two things, your Honor.  One is -- the
2    withdrawal of the reference has two parts.  One is the debtor's
3    objections to the government's proof of claim, which refers to
4    one site in New Jersey, which is the bulk of the claim, as well
5    as five sites throughout the country as well as the estimations
6    procedures motion which is their incredibly expedited discovery
7    schedule to resolve these motions.  We'd like to withdraw those
8    two items.
9            THE COURT:  I asked you about the stay.  What are you
10   looking to stay?  What are you asking the bankruptcy court
11   judge to stay?
12           MR. YANKWITT:  To stay the estimations procedures
13   motion as well as the objection of the proof of claim.  We want
14   to stay those proceedings so those could be heard in a district
15   court.
16           THE COURT:  Right now they are on a certain schedule?

Page 2

79IMDANC.txt

17         MR. YANKWITT:  The debtors proposed a schedule.  The
18   government objected to that schedule.  That's going to be heard
19   before Judge Lifland on October 3.
20         THE COURT:  What's going to be heard on October 3?
21         MR. YANKWITT:  I'm sorry, your Honor.  Tomorrow
22   morning there will be a hearing on debtors' schedule,
23   estimation schedule for the government's claims.  On October 3,
24   which is the next hearing date, there will be a hearing on the
25   government's motion to stay.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5

79IMDANC

1         THE COURT:  That's when the judge is going to hear
2   your motion to stay.  I won't know the ruling on the motion to
3   stay tomorrow.
4         MR. YANKWITT:  No, your Honor.  We asked for an
5   extension of tomorrow's hearing for that very purpose.  That
6   was denied by both the Court and --
7         THE COURT:  Tomorrow is just a scheduling hearing, if
8   I heard you right.  That's going to be to schedule the
9   estimation proceedings.
10        MR. YANKWITT:  Yes, your Honor, which starts off on a
11   rocket ship pace starting tomorrow that the government thinks
12   is not reasonable.
13        THE COURT:  But the judge hasn't agreed with the
14   debtor either yet?
15        MR. YANKWITT:  That's correct, your Honor.  The
16   government simply wants to say that if we have a date certain
17   before your Honor.
18        THE COURT:  You don't want me to try to give you a
19   stay today, you don't want to give me a stay.  I understand the
20   limited relief you want today.  You want a date certain for
21   making the application to withdraw the reference.
22        MR. YANKWITT:  We filed it with your Honor today.  We
23   just want a date either for a hearing, or if your Honor wants
24   to just review it on the papers, that's fine as well.  The
25   order to show cause proposes that debtors submit papers to your

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6

79IMDANC

1   Honor by Friday at 4 p.m. and that your Honor decides it at its
2   earliest possible convenience.
3        THE COURT:  I'm sure you'll want to reply?
4        MR. YANKWITT:  Yes, your Honor, we would love to
5   reply.
6        THE COURT:  If they submit papers on Friday, that's
7   whatever it is, I lost track, the 20 something.
8        MR. YANKWITT:  That's --
9        THE COURT:  The 21st.
10        MR. YANKWITT:  That's the 21st, your Honor, yes.
11        THE COURT:  And your reply?
12        MR. YANKWITT:  Would be by following Thursday at 4:00.
13        THE COURT:  That's the 4th?
14        MR. YANKWITT:  Yes, your Honor.
15        THE COURT:  What that does is, have the papers in the
16   day I leave for my vacation.  My first vacation in 15 months if
17   you're interested, my first vacation in 15 months.  I'm not
18   going to delay it by even eight minutes.  In fact, I leave at
19   2:30 or something or 11:30.  On the 4th, I'm gone at some
20   point.  I think the flight is at 1:30.  I will leave at 11:30
21   and I won't see this place for the next two weeks and a day.  I

Page 3

79IMDANC.txt
22    cannot wait.  It's been a long 15 months.
23           The point is, I won't even get back in town until the
24    23rd of October to greet your fully submitted motion at that
25    time.  If you need an estimate you have to realize that his
                 SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

                                               7

     79IMDANC
1    stay application date, which is the 4th, I think you said --
2    when --
3           MR. YANKWITT:  October 3.
4           THE COURT:  Right.  That will be my last full day at
5    the office, so if you need an emergency request for a stay,
6    should he deny a stay that's when we should schedule, either
7    late on the 3rd or early on the 4th.  In terms of to withdraw
8    the reference, that's one thing.  If you need to appeal the
9    denial of the stay on an emergency basis, we need to look at
10   the calendar and book something on the calendar.  Do you know
11   what time on the 3rd?
12         MR. YANKWITT:  It's 10:00.  It's impossible to predict
13   when he will be done on October 3.
14         THE COURT:  What is possible to predict is I have
15   theater tickets at 8:00 on the 3rd.  I'm going on vacation on
16   the 4th, theater on the 3rd.  Therefore, the latest I could see
17   you is 6 p.m.  Maybe we better book it on the 3rd at 6 with
18   respect to the stay.  Just hold it on both your calendars.  If
19   you can come at 5 or 5:30; otherwise, it's 6.  I am going to
20   put that down as a hold.  That should really get me into the
21   mood for the theater.
22         Mr. Bennett, is there any chance that you consent to
23   withdrawing the reference?
24         MR. BENNETT:  No, your Honor.  We think there is no
25   basis whatsoever for it.
                 SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

                                               8

     79IMDANC
1          THE COURT:  Despite him citing the statute for you,
2    157(d), and it says shall and if this is a complex civil
3    statute I don't even have a choice, it's absolutely mandatory
4    and there is no basis whatsoever despite courts all over the
5    country holding CERCLA as a complex federal statute, but still
6    he's hallucinating?
7          MR. BENNETT:  Yes, he is.
8         THE COURT:  Have you ever been accused of that before,
9    Mr. Yankwitt.
10         MR. YANKWITT:  I'm one of those straight people who
11   has not even tried hallucinogenics.
12         MR. BENNETT:  Here is the source of the disconnect.  I
13   managed to read his papers on the train down from 41st Street.
14   The cases that they are citing are 20 some years old.  Those
15   early cases, CERCLA was recently born and when the intersection
16   between CERCLA and bankruptcy was at issue, do in fact have a
17   couple of points on the map that seem to indicate that
18   withdrawal may be appropriate.  The more recent cases are very
19   much to the opposite effect --
20        THE COURT:  How did you find those on the train?
21        MR. BENNETT:  We have known for some time that they
22   planned this.  They told us a while ago.  This is their fourth
23   request for a stay.  The first request for a stay was when we
24   made an application --
25        THE COURT:  On the same basis.  You've tried this four
                 SOUTHERN DISTRICT REPORTERS, P.C.
                      Page 4

79IMDANC.txt
(212) 805-0300
9

79IMDANC
1    times on the same basis.
2            MR. BENNETT:  It's basically all on the same theory.
3    The first time was, Judge Lifland, please don't conduct a
4    hearing to establish the schedule.  I have a deposition that
5    day, it's going to be a big problem, wait a couple of weeks.
6    The judge denied that.  The second request was in the response
7    to our estimation motion.  They say, Judge, please put this all
8    on a three-months later calendar.  That is what Judge Lifland
9    is going to be considering tomorrow.  The third request is, now
10   in connection with the withdrawal of the reference motion, they
11   made the application to Judge Lifland for a stay of
12   proceedings.  I guess that's going to be on for consideration
13   before Judge Lifland on October 3, and now we are in front of
14   this Court similarly asking for a stay.
15           Just to get some background --
16           THE COURT:  Wait a minute.  There are these recent
17   cases that you've already researched somehow on the train
18   because you knew this was coming.
19           MR. BENNETT:  Not on the train.
20           THE COURT:  I understand.  But you anticipated this.
21   You researched this already and you know that the recent cases
22   disagree with the older cases.
23           MR. BENNETT:  Yes.
24           THE COURT:  Mr. Yankwitt, are you unaware that recent
25   cases have diverged from the older ones?
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                              10

79IMDANC
1            MR. YANKWITT:  Of course not.  We spent half a page on
2    page 186 of our brief discussing these recent cases.
3            THE COURT:  Be sure you speak slowly.
4            MR. YANKWITT:  Sorry.  I apologize, your Honor.  There
5    are two cases.  One is 1994 and one is 2002, which I assume
6    Mr. Bennett is referring to.  We obviously found those cases
7    and we pointed them out to the Court, both bankruptcy and
8    district court.  Those cases are not on point.
9            THE COURT:  Are they CERCLA?
10           MR. YANKWITT:  They are, your Honor.  Those were a
11   very limited issue.  In one of those cases there is a
12   Massachusetts court that has a bankruptcy hearing and then
13   there is another bankruptcy hearing in district court in New
14   York.  And what the Court says is, all they were trying to
15   figure out is what claims were discharged by the prior
16   bankruptcy court.  It's a simple issue, it's a straightforward
17   application.  Indeed, there is dicta in those cases that say,
18   had this been interpretation of CERCLA law, that would be an
19   entirely different story.  Clearly, the government was aware of
20   those cases.  We are confident those cases in fact help the
21   government.  Certainly, we weren't trying to hide anything from
22   the Court.
23           THE COURT:  Are those the cases you're thinking of?
24           MR. BENNETT:  No, they are not.
25           THE COURT:  What are the cases?
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                              11

79IMDANC
1            MR. BENNETT:  What I'm thinking of is a recent case
2    that was tried in the Southern District of Texas, Corpus
                              Page 5

79IMDANC.txt

3 Christi bankruptcy court, five-day estimation hearing.  The
4 government chose not to make this withdrawal of reference
5 request.  What's apparent here is this is a strategic approach.
6    THE COURT:  That's hardly a case worth citing.  No
7 court weighed in on anything.
8    MR. BENNETT:  My point, this is a strategic request.
9    THE COURT:  I have never known nothing but lawyers do
10 to make strategic requests.  That's what lawyers do for a
11 living.  There is no holding in the Corpus Christi case.
12    MR. BENNETT:  Fair enough.  But the Court should be
13 aware that essentially what's going on here, this issue related
14 to contamination of this site has been knocking around this
15 agency for ten years without any resolution.
16    THE COURT:  Be that as it may, what cases do you have
17 that we are talking about, the more recent cases that go in a
18 different direction?
19    MR. BENNETT:  There is another case in Wisconsin that
20 was similarly tried to a determination.
21    THE COURT:  Where the government didn't make this
22 motion?
23    MR. BENNETT:  To the best of my knowledge, the
24 government didn't make that motion.
25    THE COURT:  There is nothing of interest there.  The
        SOUTHERN DISTRICT REPORTERS, P.C.
           (212) 805-0300

                       12

79IMDANC

1 Court didn't say anything about the intersection of CERCLA and
2 bankruptcy.
3    MR. BENNETT:  The point of it is, if this were so
4 important, and that is the key.  What they cite -- this I did
5 read on the train -- is this language from the Cablevision
6 case.  Matters must be withdrawn if they require the bankruptcy
7 court to substantially interpret federal statutes.  That's not
8 the same thing as apply federal statutes.  In fact, in the Dana
9 case, Judge Lifland --
10    THE COURT:  All I'm saying is, no court weighed in
11 because no request was made.  And this isn't like one of those
12 things in life that's not waivable.  If the government couldn't
13 choose to raise it, so be it.
14    MR. BENNETT:  Fair enough.  I appreciate that point.
15 My point is that the standard is not, does it touch a federal
16 statute.  If that were the case, then everything --
17    THE COURT:  Not doesn't touch a federal statute, but
18 whether the government has to interpret --
19    MR. BENNETT:  Substantially interpret.
20    THE COURT:  Substantially interpret a federal statute.
21    MR. BENNETT:  The point is, you have to in that
22 connection ask yourself, is this an application of some novel
23 law that Judge Lifland is going to have to do?  The questions
24 that are presented --
25    THE COURT:  Does he have to substantially interpret
        SOUTHERN DISTRICT REPORTERS, P.C.
           (212) 805-0300

                       13

79IMDANC

1 CERCLA?
2    MR. BENNETT:  He doesn't have to do anything more than
3 apply existing case law on the subject.  In fact, they make the
4 point that this case law is 100 percent crystal clear.  If so,
5 it's not a matter of substantial --
6    THE COURT:  Does he have to substantially interpret
7 CERCLA?  Is that the standard?
          Page 6

79IMDANC.txt

8          MR. YANKWITT:  Yes, your Honor, that is the standard.
9          THE COURT:  And the judge has to do that here, he has
10   to substantially interpret CERCLA?
11          MR. YANKWITT:  Yes, your Honor.  The government
12   believes joint and several liability applies, even if Dana can
13   prove that one agency of the government is also a potentially
14   responsible person.  Dana asserts the government cannot assert
15   joint and several liability.  That's a difficult question.
16   Courts have weighed in on that differently.  There is an issue
17   of visibility of harm that the parties disagree on.  There are
18   many complex issues.  Dana argues, for example, an act of God
19   prevents CERCLA liability here.  The government says that
20   doesn't apply here.  That doesn't apply under CERCLA.  The
21   parties disagree on many important complex federal issues which
22   is why the government believes it's important.
23          If I may, your Honor, just two quick points.  This is
24   the government's first request for a stay.
25          THE COURT:  I think what he's saying, before that you
            SOUTHERN DISTRICT REPORTERS, P.C.
                (212) 805-0300

                                              14

79IMDANC

1   were seeking delay.  He didn't mean a normal delay.  He said
2   you were too busy, two weeks of deposition.  That means, Judge,
3   Judge, please delay this.
4          MR. YANKWITT:  I prefer not working on the Jewish
5   holidays.
6          MR. BENNETT:  I prefer not to be required to turn in a
7   brief 4:00 on the evening of Kol Nidre, which is what this
8   order to show cause would cause us to do this Friday.
9          THE COURT:  I know it's Friday.  I'm looking at
10   Bennett.  I didn't get it.  Now I get it.
11          In any event, don't do it Friday because I'm not going
12   to get it until I come back.  If you want to do it Monday, do
13   it Monday.
14          MR. YANKWITT:  Can I suggest, your Honor, if
15   Mr. Bennett could turn in the papers on Monday, which is the
16   23rd --
17          THE COURT:  The what?
18          MR. YANKWITT:  23rd of September.
19          MR. BENNETT:  That's giving me five days, including
20   the holiday.
21          MR. YANKWITT:  Then we could then on the 28th submit a
22   reply.  Then your Honor could actually have a fully briefed
23   motion.
24          THE COURT:  How did we get it faster than slower?
25          MR. YANKWITT:  I think I misspoke on the dates, your
            SOUTHERN DISTRICT REPORTERS, P.C.
                (212) 805-0300

                                              15

79IMDANC

1   Honor.  I apologize.
2          MR. BENNETT:  My suggestion is that we brief this
3   thing in such a way that the Court has it in time for --
4          THE COURT:  For the flight so I can ruin the vacation
5   reading about bankruptcy law on the airplane?
6          MR. BENNETT:  October 3.
7          THE COURT:  I understand.
8          MR. BENNETT:  We will have the hearing in the morning
9   with Judge Lifland, we will find out whether he is going to
10   give a stay.  In the afternoon if there is no stay we will have
11   the argument before this court.
12          THE COURT:  No, you won't.
                   Page 7

79IMDANC.txt

```
13              MR. BENNETT:  We can do it earlier.
14              THE COURT:  No.  You can do it when I get back.
15              MR. BENNETT:  That's fine, too.  That's certainly
16      fine.
17              THE COURT:  Let's go back to the briefing schedule.
18      You don't want to do it this Friday, the 28th -- you don't want
19      to do it this Friday, the 21st.  Got you.  You want to do it --
20              MR. BENNETT:  Normal schedule, ours would be due the
21      28th.
22              THE COURT:  That's what you originally said.
23      Mistakenly but originally, and then reply on the 4th.
24              MR. YANKWITT:  My thought was they could respond by
25      the 24th.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
```

                                                                16

79IMDANC

```
1               THE COURT:  He said he essentially would have to work
2       all weekend including the holiday.
3               MR. YANKWITT:  Your Honor, with all due respect, we
4       submitted our papers on the same time frame in five days.
5               THE COURT:  We don't know that.  You could have been
6       working on this for a month.  Moving papers are different than
7       responding papers.  You should have been gearing up and doing
8       research back at the office.
9               MR. YANKWITT:  But we responded to their papers --
10              THE COURT:  It is not going to make any difference,
11      folks.  You want until the 28th, that's fine.  You can have
12      until the 4th, that's fine, and then I can ruin one flight or
13      the other reading that.  Nothing I find more fascinating than
14      reading about estimation hearings and CERCLA on the airplane.
15      That's the schedule.  We have this emergency time set aside.
16      Now you want time for the hearing on the way back?
17              MR. YANKWITT:  Yes, your Honor.
18              MR. BENNETT:  This is after you come back from
19      vacation?
20              THE COURT:  Yes, that's right.
21              MR. BENNETT:  I hope it's some place nice.
22              THE COURT:  It is.  We will say 11:00 on Thursday, the
23      25th.  Is that all right?
24              MR. BENNETT:  Actually, I have a conflict.  I'm
25      supposed to be speaking.  I can do the 24th or the 26th.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
```

                                                                17

79IMDANC

```
1               THE COURT:  Where are you speaking?
2               MR. BENNETT:  In D.C.
3               THE COURT:  You're out the whole day on Thursday?
4               MR. BENNETT:  I can check the schedule.  I think it's
5       the morning.
6               THE COURT:  If it's the morning, I can also do 2:30 or
7       3 on the 25th.
8               MR. BENNETT:  Can we pick that and I'll go back and
9       confirm that that's okay?
10              THE COURT:  I hope it is because -- tell him to put
11      you on first thing in the morning.  Stay over Wednesday night,
12      speak first thing, don't fly, take the train.  Anybody who
13      flies is stupid.  And then you'll get back in time for the
14      hearing on 3.
15              MR. BENNETT:  Did you say 2 or 3?
16              THE COURT:  I said 2:30 or 3.  If you can make it
17      2:30, it's better.  If you can't, I'll move it to 3 if you can
```

                            Page 8

79IMDANC.txt
18  make that.  I'll put it down for 2:30 on the 25th.
19          Did you get all that you needed today, Mr. Yankwitt?
20  You have a briefing schedule, you have an emergency day to
21  appeal the stay, you have a real date for the argument on this
22  motion to withdraw.  Is there anything else you need today?
23          MR. YANKWITT:  Can I have ten seconds to confer with
24  my colleague, your Honor?
25          THE COURT:  Sure.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                                    18
    79IMDANC
1           MR. YANKWITT:  Your Honor, since your Honor scheduled
2   a hearing for the 25th, could our reply be due after your
3   vacation?
4           THE COURT:  No.  Because I may want to read this on
5   vacation on the way out and then shred it.  I don't want to
6   read it there.  On the plane is one thing.  Planes are boring
7   anyway.  I never have once watched a movie.  I want it.
8           MR. YANKWITT:  You'll have it.
9           THE COURT:  So I can read it.
10          Are you guys done?  If you are, please leave.  Have a
11  good holiday for those of you who are having a holiday.
12                              oOo
13
14
15
16
17
18
19
20
21
22
23
24
25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300