UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
|                                    :
In re                                :    07 Civ. 8160 (SAS)
                                     :
Dana Corporation, et al.,            :    Chapter 11
                                     :
                                     :    Bankr. Case No. 06-10354 (BRL)
                                     :    (Jointly Administered)
           Debtors.                  :
------------------------------------x

## REPLY MEMORANDUM IN FURTHER SUPPORT OF THE GOVERNMENT'S MOTION FOR WITHDRAWAL OF THE REFERENCE

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
86 Chambers Street – 3rd Floor
New York, New York 10007
Telephone: (212) 637-2745
Facsimile:  (212) 637-2686

- Of Counsel -

RUSSELL M. YANKWITT
PIERRE G. ARMAND
DANIEL P. FILOR
Assistant United States Attorneys

Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044

The Government[1] respectfully submits this Reply in further support of its Motion to Withdraw the Reference with regard to Debtors' Objection to the Government's Proofs of Claim and Debtors' Estimation Motion (collectively, "Debtors' Objections") filed in In re Dana Corporation, Bankr. Case No. 06-10354 (BRL).

## PRELIMINARY STATEMENT

This Court should withdraw the reference as to Debtors' Objections. These Objections raise novel and complicated issues under CERCLA, such as joint and several liability, divisibility of harm, and appropriateness of remedial measures. Goals of CERCLA -- to determine accurately the cost of remediating pollution and to force responsible parties to bear those costs -- are in conflict with the goals of Chapter 11 of the Bankruptcy Code -- to permit debtors to discharge claims and emerge from bankruptcy expeditiously. This conflict is exacerbated by Debtors' sudden insistence, after almost a year in bankruptcy, upon estimating the Government's environmental claims in a rapid and cursory fashion that could potentially result in a woefully inaccurate determination. Debtors' opposition papers attempt to shroud these complex issues by relying on cases in which bankruptcy courts merely applied well settled statutes -- statutes other than CERCLA. Debtors' arguments fail because this Court must substantially and materially consider complex CERCLA issues, which may have a profound effect on the parties, the environment, and the taxpayers.

## ARGUMENT

### A. Debtors' Objections Are Subject to Mandatory Withdrawal of the Reference

It is uncontested that a district court "does not have discretion to deny a petition for withdrawal" where the issues in question require a "significant interpretation of federal laws" that

---

[1] The defined terms in the Government's opening Motion to Withdraw the Reference ("Gov. Br.") will also be used in this Reply.

affect interstate commerce. (See Gov. Br. at 14) (citing cases). It is also uncontested that CERCLA affects interstate commerce. (Id. at 14-15) (citing cases). Thus, the only issue is whether resolution of Debtors' Objections requires a significant interpretation of CERCLA. Here, the reference should be withdrawn because this Court must undertake significant interpretation of CERCLA, as well as the intersection between federal environmental law and bankruptcy law. See 28 U.S.C. § 157(d).[2]

Courts in this District have faced the conflict between CERCLA's promotion of comprehensive environmental cleanups and assessment of response costs against responsible parties, and the Bankruptcy Code's equitable discharges of debtors' liabilities to afford them a fresh start. (Gov. Br. at 14-15) (citing cases). In these cases, recognizing the potential conflicts between CERCLA and the bankruptcy laws, the courts withdrew the reference. Courts in other districts have reached the same conclusion. For example, in in EPA v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.), the district court weighed the competing goals of CERCLA and bankruptcy, and held that withdrawal was appropriate to resolve debtor's contention that a valid claim of joint and several liability under environmental law should somehow not apply in bankruptcy court, and issues of past response costs, future response costs, and natural resource damages under CERCLA. 134 B.R. 188,

---

[2] The Government does not dispute that many "environmental cases have been addressed in bankruptcy courts over the years, in many jurisdictions." (Debtors' Opp. Br. at 3). These proceedings, however, generally occur when, unlike here: (1) neither party has made a motion to withdraw the reference; and/or (2) the issues before the bankruptcy judge are factual and do not require an interpretation of complex federal non-bankruptcy law. See, e.g., In re FV Steel & Wire Co., No. 04-22421 (SVK), 2007 WL 2116385 (Bankr. E.D. Wis. July 19, 2007) (holding estimation proceeding where neither party moved to withdraw the reference). See also In re Kasier Group Int'l, 289 B.R. 597 (Bankr. D. Del. 2003) (same); Al Tech Specialty Steel Corp. v. Allegheny Int'l (In re Allegheny Int'l), 158 B.R. 361, 383 (Bankr. W.D. Penn.1993), rev'd in part on other grounds, 104 F.3d 601 (3d Cir. 1997) (same).

...
...

192 (N.D. Tex. 1991).³ As in Gypsum, resolution of Debtors' Objections will require substantial consideration of CERCLA as well as conflicts between CERCLA and the Bankruptcy Code.

### 1. Complex Federal Environmental Issues and Interpretation of the Intersection Of Environmental and Bankruptcy Law

First, the Court must address the novel argument that a bankruptcy court "is not required to give effect" to a valid CERCLA claim of joint and several liability. (Debtors' Objections ¶ 6). This contention is contrary to precedent that bankruptcy courts allow or estimate claims in accordance with nonbankruptcy law unless the bankruptcy code provides otherwise (which is not the case for joint and several liability), see 11 U.S.C. § 502; Travelers Casualty & Surety Co. v. Pacific Gas and Electric Co., 127 S. Ct. 1199 (2007); Raleigh v. Illinois Dep't of Revenue, 530 U.S. 15, 20, 24-25 (2000) ("Bankruptcy courts are not authorized in the name of equity to make wholesale substitution of underlying law controlling the validity of creditors' entitlements, but are limited to what the Bankruptcy Code itself provides"); Butner v. United States, 440 U.S. 48, 55 (1979) (interests should be not treated differently in bankruptcy to reduce uncertainty, discourage forum shipping, and prevent windfalls by the happenstance of bankruptcy).

Second, to resolve Debtors' Objections, the Court must not only address the conflict between bankruptcy and non-bankruptcy law, but also confront substantial issues of pure environmental law under CERCLA. For example, Debtors assert that they should not be held jointly and severally liable for the costs incurred and to be incurred at any of the six Superfund sites. Specifically, Debtors contend that principles of equity should preclude the Government from asserting joint and several

---

³ Debtors' attempt to minimize the Gypsum case on the ground that it is too "old," is belied by the fact that half of the cases Debtors cited in their brief are 10 years old or older. (See Debtors' Opp. Br. at 11). In any event, Gypsum continues to be cited by numerous courts and is strikingly similar to the case now before this Court.

liability against Dana on the theory that the United States Department of Defense is partially liable for the contamination at the CDE site as a potentially responsible person ("PRP"). Debtors, however, fail to cite or address contrary Second Circuit precedent. See Consolidated Edison Co. of NY, Inc. v. UGI Utils. Inc., 423 F.3d 90, 100, n.9 (2d Cir. 2005) (Gov. Br. at 19) (observing that a PRP may sue another PRP for a joint and several liability under § 107).[4] Thus, to the extent that Debtors seek to avoid this environmental liability, they appear to seek a change in existing law or, at the very least, a novel application of the law to the facts of this case.

Resolution of Debtors' Objections also will require an analysis of Dana's divisibility of harm argument, which will require a substantial interpretation of CERCLA. Debtors incorrectly assert that the Government's claims are divisible and thus that they should be held liable only for a fraction of the cleanup costs, and that divisibility is a factual question. (Debtors' Opp. Br. at 7). To the contrary, a defendant advancing a divisibility defense under CERCLA must prove either that: (1) there are distinct harms and it is not responsible for those harms; or (2) there is a reasonable basis for determining the contribution of each cause to a single harm. U.S. v. Alcan Aluminum Corp., 315 F.3d 179, 185 (2d Cir. 2003). The preliminary issue of whether there is a reasonable basis for

---

[4] Debtors' other citations actually support the Government's argument that this Court should withdraw the reference because complex issues of environmental law are at stake. For example, Debtors cite Cadillac Fairview/California, Inc. v. Dow Chemical Co., 299 F.3d 1019 (9th Cir. 2002), which is inapposite because the Government controlled the contaminated property and had given a broad contractual indemnity to the operator, and United States v. Shell Oil Co., 294 F.3d 1045 (9th Cir. 2002), where the Government conceded liability for benzol-related waste but successfully argued that the district court holding should be overturned for the non-benzol waste because the Government was merely a customer. (See Debtors' Opp. Br. at 8). While Debtors' legal analysis is incorrect, what is clear is that resolution of the issue of joint and several liability will require the Court to interpret CERCLA precedent. See also In re Nat'l Gypsum Co., 139 B.R. at 414 ("CERCLA as developed by case law provides for a joint and several standard of liability where the harm is indivisible."); United States v. Gurley, 317 F. Supp. 2d 870, 882-83 (E.D. Ark. 2004) (same, collecting cases).

apportionment of the environmental harm is a question of law. U.S. v. Hercules, Inc., 247 F.3d 706, 718 (8th Cir. 2001) (citing In re Bell Petroleum Svc. Inc., 3 F.3d 889, 902 (5th Cir. 1993)); U.S. v. Broderick Inv. Co., 862 F. Supp. 272, 276 (D. Colo. 1994). Accordingly, the validity of Debtors' assertion will also require a substantial consideration under CERCLA of whether the divisibility concept is relevant here at all, and if so, what the appropriate factors are to consider.[5]

Further, Debtors' Objections will require an evaluation of whether the Government's response costs were, and will be, incurred for "response actions" taken in a manner "not inconsistent" with the National Contingency Plan. Debtors' contention that the costs are, and will be, the result of arbitrary and capricious actions by EPA will raise legal, technical, and policy issues that will require substantial and material interpretation of CERCLA. (Gov. Br. at 20).

Finally, the resolution of the Government's claims for natural resources damages also will require a substantial and material interpretation under CERCLA regarding what qualifies as an "act of God" defense. Debtors argue that "the critical issue concerning the natural resources claim is simple causation, and the Bankruptcy Court is fully capable of resolving this purely factual dispute," (Debtors' Opp. Br. at 9-10), yet Debtors fail to cite any case where a Bankruptcy Court has resolved these difficult legal concepts presenting mixed question of law and fact.

---

[5] In fact, the only case cited by Debtors from this Circuit held that the claim was not divisible. See United States v. Alcan Aluminum Corp., 990 F.2d 711, 722 (2d Cir. 1993) (affirming the district judge's finding that the manufacturer's claim was not divisible and remanding to determine amount of response costs). Moreover, after the case was consolidated with another action concerning a second site, the district court granted the government's motion for summary judgment as to the manufacturer's response cost liability. Thereafter, following a bench trial, the district court ruled that the manufacturer was jointly and severally liable for response costs at both sites. On appeal, the Court of Appeals held that the manufacturer failed to demonstrate that harm done at the sites was divisible, as was required for it to escape joint and several liability. See 315 F.3d 179 (2d Cir. 2003).

## 2. The Complex Issues Raised in Debtors' Objections are Not Well Settled Law

Debtors assert that the issues presented here are not subject to mandatory withdrawal because they are not novel issues. As a threshold matter, Debtors' invoke the incorrect legal test. The proper legal question is whether the issues are either "straightforward" and "well settled," or complex, requiring significant interpretation of nonbankruptcy law.

Moreover, Debtors' position is undermined by the very cases they cite, which involve straightforward issues, and do not involve complex legal issues under CERCLA. The sole CERCLA case cited by Debtors merely raised the relatively simple issue of when a claim arose, not the factually and legally complex issues of a PRP's joint and several liability for cleanup costs, and whether bankruptcy law can trump a valid claim of joint and several liability under environmental law. See LTV Steel Co. v. Union Carbide Corp. (In re Chateaugay Corp.), 193 B.R. 669, 674 (S.D.N.Y. 1996) ("[T]he sole CERCLA issue in the present case is when defendants' claim arose"). As stated in the Government's moving brief, there is some conflict among courts as to whether withdrawal of the reference is mandatory to resolve the issue of when a CERCLA claim arises for bankruptcy purposes. (Gov. Br. at 18, n.6) (citing cases). These decisions, however, have no bearing whatsoever on this case, because when the Government's CERCLA claim arose is not at issue here. Rather, the complex issues concern the resolution of substantive disputes under CERCLA (e.g., whether joint and several liability applies, potential allocation of liability among PRPs, whether EPA employed and will employ the proper remedial measures, and the costs of those future response measures).[6] Indeed, the fact that Debtors cite only one inapposite CERCLA decision underscores

---

[6] Debtors' reliance on Oneida LTD v. Pension Benefit Guar. Corp., 372 B.R. 107, 111 (S.D.N.Y. Jul. 19, 2007), is, therefore, equally unavailing because the straightforward issue in that non-CERCLA action was simply a "determination of when a claim arises and whether it may

the fact that there is <u>not</u> a substantial body of cases in which bankruptcy courts have been called upon to resolve the kind of legal questions presented here.

Other cases relied upon by Debtors are similarly inapposite. Unlike here, they: (1) did not involve conflicts between bankruptcy laws and other federal statutes, and/or (2) involved straightforward applications of these non-bankruptcy laws. For example, the issue in <u>In re Enron Power Marketing, Inc.</u>, No. 01 Civ. 7964 (GBD), 2003 WL 68036, at *5 (S.D.N.Y. Jan. 8, 2003), was a "simple" breach of contract dispute, which involved considering the clear and "unambiguous language" of the contract. See also <u>In re Int'l Ass'n of Machinists and Aerospace Workers v. E Airlines, Inc. (In re Ionosphere Clubs, Inc.)</u>, 103 B.R. 416, 420 (S.D.N.Y. 1989) (involving "straightforward application" of federal statute)." (<u>See</u> Debtors' Opp. Br. at 4-5).[7]

Debtors' remaining cases support the Government's arguments. In <u>Dow Jones/Group W. Television Co. v. Consumer News and Bus. Channel P'ship</u>, 127 B.R. 3, 5 (S.D.N.Y. 1991), neither party moved to withdraw the reference. In fact, the <u>Dow Jones</u> court <u>specifically distinguished the straightforward application before it</u> -- the "mere application of established antitrust principles to new facts" -- <u>with a CERCLA action</u> where "the ruling depended on the court's finding that the case required a significant interpretation of CERCLA." Similarly, in <u>Adelphia Commc's Corp. v. Rigas</u>, No. 02 Civ. 8495, 2003 WL 21297258, at *4 (S.D.N.Y. June 4, 2004), the court addressed only the

---

be discharged." (Debtors' Opp. Br. at 4).

[7]   Likewise, in <u>In re Board of Dirs. of Telecom Arg., S.A.</u>, No. 05 Civ. 8803 (SAS), 2005 WL 3098934, at *2 (S.D.N.Y. Nov. 18, 2005), the court held that withdrawal was not necessary because a prior court had already held that "there is no real conflict" between the Trust Indenture Act and a particular foreign statute. See also <u>In re Chadbourne Indus.</u>, 100 B.R. 663, 668 (S.D.N.Y. 1989) (holding that withdrawal was not necessary because labor issue of whether a trustee was a "successor employer" had been squarely addressed by a prior Supreme Court decision and thus the court did not have to interpret federal labor laws). (Debtors' Opp. Br. at 4).

standard and pleading requirements under RICO and the Exchange Act, and held that "[t]here exists a substantial body of law discussing RICO and the Exchange Act to guide the bankruptcy court." Finally, in Laventhal & Horwath, 139 B.R. 109, 115 (S.D.N.Y. 1992), the court held that mandatory withdrawal was not appropriate because the district court had previously ruled on the RICO issues and "[t]hus the Congressional purpose of utilizing a federal district court to interpret a federal, non-Bankruptcy statute already has been largely fulfilled."[8]

Accordingly, resolution of the Debtors' Objection will require substantial and material consideration, interpretation, and application of CERCLA, which is not akin to a straightforward application of unambiguous contracts or well established RICO or trademark laws. For these reasons, this Court should withdraw the reference under the mandatory withdrawal provision.

**B.     This Court Should Withdraw the Reference As a Matter of Discretion**

In the alternative, the Court should withdraw the reference as a matter of discretion pursuant to 28 U.S.C. § 157(d), which provides that the district court "may" withdraw the reference for "cause shown." The parties agree that in determining whether cause exists, district courts should consider first whether the claim is a "core claim," and then apply the Orion factors. See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1101 (2d Cir. 1993).

Core proceedings are those that invoke "a substantive right provided by title 11" that "could arise only in the context of a bankruptcy case." See Silverman v. General Ry. Signal Co. (In re Leco

---

[8]   Debtors' statement that the cases cited by the Government "'have been superseded'" is entirely misplaced. (Debtors' Opp. Br. at 10). Debtors quote In re Revere Copper and Brass, Inc., 172 B.R.192, 196 (S.D.N.Y. 1999), but that quote is derived from the plaintiff's brief in that case – not the court's holding. In any event, as noted above, the issue in that case depended on the definition of "claim" and when the claim arose – issues not related to the complex issues involved in the instant matter.

Enter., Inc.), 144 B.R. 244, 249 (S.D.N.Y. 1992) (quotation omitted). Here, if Debtors had not filed for bankruptcy, the Government would have pursued its claim by filing a CERCLA enforcement action in district court.[9] Accordingly, consideration of Debtors' Objections is a non-core proceeding.

Alternatively, even if the Court were to hold that resolution of the Government's CERCLA claims is a core proceeding, withdrawal of the reference is still appropriate. See LTV Steel Co., 2002 WL 484950, at *6. First, permissive withdrawal is an appropriate use of judicial resources because district courts have an expertise in interpreting complex, federal environmental statutes such as CERCLA. Moreover, even a bankruptcy court's decision on a core proceeding is appealable as a matter of right to this Court. See Orion Pictures Corp., 4 F.3d at 1101. Thus, if the Bankruptcy Court resolves Debtors' Objections in the first instance, the non-prevailing party would likely appeal, and it would, thus, be more efficient for this Court to decide the CERCLA issues in the first instance.

Second, resolution of these CERCLA issues in this Court would not unduly delay the proceedings because this Court has imposed an "aggressive," discovery schedule that will resolve the claims expeditiously, but on an appropriately complete evidentiary record.[10] Third, withdrawal

---

[9] Debtors' statement that the Government's decision to file its claims in the Bankruptcy Court "removes any possible doubt" that this is a core claim (Debtors' Opp. Br. at 13), is equally misguided. The Government was forced to file a claim in the bankruptcy proceeding to avoid having its claim discharged. The Government then moved to withdraw the reference as soon as Debtors filed their Claim Objection.

[10] Debtors' argument that the rushed discovery was caused "[t]hrough no fault of its own" is false. For nearly a year after the Government filed its Proofs of Claim on September 21, 2006, the Debtors assured the Government that they would set aside a reserve fund sufficient to cover the amounts set forth in the Government's Proofs of Claim, so that the parties could litigate the claims in an appropriately deliberate manner after the Debtors' emergence from bankruptcy. Then, just a few months before the Debtors' "long stated goal" of emergence from bankruptcy in December 2007, Debtors professed the now-immediate need to resolve the Government's claims in an unreasonably abbreviated estimation proceeding. Further, Article IV, Section B, Paragraph 5 of Debtors' Plan of Reorganization proposes that the total amount of general unsecured claims

of only the federal CERCLA issues will not hinder uniformity in bankruptcy administration. Rather, the validity and extent of the Government's claims will be resolved by this Court, and the claims, as allowed, will receive appropriate treatment under an approved Bankruptcy plan. Finally, there is no forum shopping because if the Court were to deny this motion, any appeal of the Bankruptcy Court's ruling with respect to the CERCLA issues would be appealed to this Court.[11] Accordingly, the Orion factors favor permissive withdrawal of the reference as a matter of discretion.

## CONCLUSION

For the foregoing reasons, the motion of the Government for withdrawal of the reference pursuant to 28 U.S.C. § 157(d) should be granted.

Dated: New York, New York
       October 5, 2007

Respectfully submitted,

- Of Counsel: -

Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044

By: _____

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York

RUSSELL M. YANKWITT
PIERRE G. ARMAND
DANIEL P. FILOR
Assistant United States Attorneys

---

should not exceed $3.25 billion. Debtors have apparently determined that the best way to ensure that the general unsecured claims do not exceed the $3.25 billion threshold is to seek to cap the Government's environmental claims by forcing a cursory estimation based on hasty discovery, a one-day hearing, and an incomplete factual record.

[11] Debtors' only arguments to the contrary are that the Bankruptcy Court (1) is the appropriate forum to apply purportedly "established CERCLA" law, and (2) has dealt with bankruptcy issues in this case for the past 18 months. First, the Government has already established that ths case involves resolution of complex CERCLA issues. Second, while the Bankruptcy Court has had prior experience dealing with the bankruptcy issues, Debtors' Objections raise the first substantive CERCLA issues in this case.

## **CERTIFICATE OF SERVICE**

I, Russell M. Yankwitt, an Assistant United States Attorney for the Southern District of New York, hereby certify that on October 5, 2007, I caused to be served a copy of the foregoing Reply in Further Support of the Government's Motion to Withdraw the Reference, upon the following:

<u>By e-mail and overnight mail</u>:
Marc S. Levin, Esq.
Deputy General Counsel
Dana Corporation
4500 Dorr Street
Toledo, Ohio 43615

Jeffrey B. Ellman, Esq.
Jones Day
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309-3053
Counsel to the Debtors

Kenneth H. Eckstein, Esq.
Thomas Moers Mayer, Esq.
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
Counsel to the Official Committee of Unsecured Creditors

The BMC Group, Inc.
Attn: Dana Corporation Noticing
1330 E. Franklin Avenue
El Segundo, California 90245
Noticing Agent

The BMC Group, Inc.
Attn: Dana Corporation Noticing
P.O. Box 952
El Segundo, California 90245-0952
Noticing Agent

Douglas B. Bartner, Esq.
Shearman & Sterling LLP
599 Lexington Avenue
New York, New York 10022
Counsel to Citicorp

Gary L. Kaplan, Esq.
Brian Pfeiffer, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004
Counsel to Equity Holders

Jon D. Cohen, Esq.
Trent P. Cornell, Esq.
Scott N. Schreiber, Esq.
Stahl Cowen Crowley LLC
55 West Monroe Street, Suite 1200
Chicago, IL 60603
Counsel to Retiree Committee

By overnight mail:

Greg M. Zipes, Esq.
Office of the United States Trustee
Southern District of New York
33 Whitehall Street, 21st Floor
New York, New York 10004


Dated: New York, New York
       October 5, 2007

                                          RUSSELL M. YANKWITT
                                          Assistant United States Attorney