USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/20/07

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                :

**IN RE DANA CORPORATION, et al.**    :   **OPINION AND ORDER**
                :
         **Debtors.**    :   **07 Civ. 8160 (SAS)**
                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

On September 18, 2007, the United States Government filed a motion
to withdraw the reference of certain issues in the above-referenced petition from
the United States Bankruptcy Court for the Southern District of New York
pursuant to 28 U.S.C. § 157(d) ("section 157(d)"). Specifically, the Government
moves to withdraw the reference of the objection (the "Claim Objection") of Dana
Corporation and forty of its domestic direct and indirect subsidiaries ("Dana," or
collectively, "Debtors") to the Government's proofs of claim, as well as Debtors'
motion for an order establishing procedures to estimate those claims (the
"Estimation Motion"). For the following reasons, the Government's motion is
granted.

## II.    BACKGROUND

### A.    Procedural History

On March 3, 2006, Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  On September 21, 2006, the Government filed two proofs of claim on behalf of the Environmental Protection Agency (the "EPA") and the Departments of Commerce and the Interior.[1]  Debtors moved on September 5, 2007 for the entry of an order establishing procedures to estimate the Government's claims and for estimation of the claims pursuant to those procedures.[2]  Debtors' motion proposed that fact and expert discovery conclude within two months so that the estimation hearing on the claims could be held by December 2007.[3]

On September 7, 2007, Debtors objected to the Government's proofs of claim primarily on the ground that the Government's largest claim seeks response costs for environmental damage that is allegedly unrelated to any activity

---

[1]    *See* Memorandum in Support of Motion for Withdrawal of the Reference Pursuant to 28 U.S.C. § 157(d) ("Govt. Mem."). *See also* 9/21/06 Proofs of Claim Nos. 13796 ("Cornell-Dubilier Electronics, Inc. ('CDE') Site Proof of Claim") and 13321, Ex. A to Declaration of Russell M. Yankwitt, Assistant United States Attorney ("Yankwitt Decl.").

[2]    *See* Govt. Mem. at 3.

[3]    *See id.*

2

conducted by Dana.[4]  The Government then filed an objection to Debtors'

Estimation Motion on September 14, 2007 contending, inter alia, that the matter

should be withdrawn to this Court and that Debtors' proposed estimation schedule

and procedures are "unreasonable in that they fail to afford sufficient time to

develop a complete factual record" regarding the claims at issue.[5]  The bankruptcy

court, over the Government's objection, entered an order establishing the

estimation process and timeline for the claims at issue, with the estimation hearing

set for January 14, 2008.[6]

On September 18, 2007, the Government moved to withdraw the

reference of Debtors' Claim Objection as well as the Estimation Motion.

---

[4]      *See id.  See also* Debtors' Objections to Claims ("Debtors Obj.") of
the United States EPA, National Oceanic and Atmospheric Administration of the
Department of Commerce ("Dept. of Commerce") and the Department of the
Interior Acting Through the Fish and Wildlife Service ("Dept. of Interior"), Ex. A
to Amended Declaration of Steven C. Bennett, Debtors' Counsel, ("Bennett
Decl.") in Support of Memorandum of Law of Debtors and Debtors in Possession
in Opposition to Motion of United States Government for Withdrawal of
Reference Pursuant to 28 U.S.C. § 157(d) ("Debtors Opp.").

[5]      Objection of the United States of America to the Motion of Debtors
and Debtors in Possession (A) For an Order Establishing Procedures to Estimate
Claims of the EPA, Dept. of Commerce, and Dept. of Interior and (B) to Estimate
These Claims Pursuant to the Procedures, Ex. D to Yankwitt Decl.

[6]      *See* Order Establishing Procedures to Estimate Claims of the EPA,
Dept. of Commerce and Dept. of Interior, Ex. D to Bennett Decl.

Additionally, the Government requested that the bankruptcy court stay

consideration of these proceedings pending this Court's decision on its motion to

withdraw the reference. By memorandum decision and order dated October 3,

2007, the bankruptcy court denied the Government's motion, finding that the

Government had failed to clearly demonstrate a likelihood of success on its motion

to withdraw the reference, and had "not demonstrated any harm it would suffer if

discovery on its claims were to continue pending" this Court's decision.[7]   In

contrast, "the potential harm to the Debtors and their estates, creditors, workforce

and other parties in interest is great."[8]  The Government appealed the bankruptcy

court's denial of the stay. By Order dated October 4, 2007, I denied the motion for

a full stay pending my decision on the motion to withdraw, but granted a sixty-day

extension of the discovery schedule, thereby pushing the date of the estimation

hearing past the previously scheduled date of January 14, 2008. On October 25,

2007, the parties appeared before the Court for oral argument on the Government's

motion to withdraw the reference.

---

[7]      *In re Dana Corp.*, No. 06 Civ. 10354, 2007 WL 2908221, at *2
(Bankr. S.D.N.Y. Oct. 3, 2007).

[8]      *Id.*

4

**B.    The Government's Proofs of Claim**

The Government's claims against the Debtors largely stem from response costs incurred and to be incurred by the EPA, pursuant to section 107(a) of the Comprehensive and Environmental Response, Compensation, and Liability Act ("CERCLA"),[9] for its response efforts at six Superfund sites across the country:  Tremont City, Ohio; Elkhart, Indiana; Claypool, Indiana; Hastings, Nebraska; Southington, Connecticut; and South Plainfield, New Jersey.[10]  The approximate total of past and future response costs for these sites is $295 million, with the South Plainfield site (the "CDE Site") accounting for about $250 million of that amount.[11]  Additionally, the Government asserts a claim on behalf of the Departments of Commerce and Interior pursuant to section 107(f) of CERCLA for natural resource damage at the CDE Site for an estimated amount of twenty to thirty-seven million.[12]

Because the CDE Site accounts for the bulk of the Government's claims, it is the site on which the parties focus much of their attention.  The CDE

---

[9]    *See* 42 U.S.C. § 9607(a) *et seq.*

[10]    *See* CDE Site Proof of Claim ¶ 1(a).

[11]    *See* Govt. Mem. at 4.

[12]    *See id.* (citing 42 U.S.C. § 9607(f)).

Site was owned by Dana and its corporate predecessor from approximately 1914 until 1956.[13] During that period, from 1936 to 1956, Dana and its predecessor leased the property to CDE, which subsequently purchased the property from Dana in 1956 and continued its operations there until 1962.[14] CDE was engaged in the manufacture of electronic components, including capacitors, and used polychlorinated biphenyls ("PCBs") and chlorinated organic solvents in its manufacturing processes. According to the Government's proof of claim, CDE disposed of PCB-contaminated materials and other hazardous substances, resulting in elevated levels of PCBs, volatile organic compounds, and inorganic material that are now present in the property's soil, sediment, groundwater, surface water, and structures.[15]

In 1996, the EPA began testing activities at the CDE Site at the request of the New Jersey Department of Environmental Protection.[16] After additional testing and collection activities, as well as placement of the CDE Site

---

[13]     See id. at 5.

[14]     See id.

[15]     See CDE Site Proof of Claim ¶¶ 34-36.

[16]     See Govt. Mem. at 6.

6

onto the National Priorities List,[17] the EPA initiated its remedial investigation for

the CDE Site in 2000 and divided the property into four operable units.[18] While

remedial action for the first operable unit has been concluded for the most part,

remedial action for the other operable units are at varying stages of design and

progress.[19]

  As stated in the Government's CDE Site Proof of Claim, Debtors'

liability for the response costs incurred and to be incurred at the CDE Site stems

from its status as "owner and/or operator of the CDE [f]acility at the time of

disposal of hazardous substances" within the meaning of section 107(a)(2) of

CERCLA.[20] Debtors deny that there was any disposal of hazardous wastes during

the time it was an "owner or operator" of the CDE Site.[21] Moreover, Debtors

contend that "to the extent that the Government's evidence shows that the disposal

of hazardous substances occurred during this time, such disposal or other activity

took place . . . at the direction and/or under the supervision of agencies of the

---

  [17] *See* CDE Site Proof of Claim ¶ 37.

  [18] *See id.*

  [19] *See id.* ¶¶ 38-41. *See also* 10/25/07 Transcript of Oral Argument ("10/25/07 Tr.") at 12:17-13:1.

  [20] *See* CDE Site Proof of Claim ¶ 44.

  [21] *See* Debtors Obj. ¶ 34.

United States," including the Defense Department, and without Debtors' actual knowledge.[22] According to Debtors, the Government, through the Defense Department, served as an operator and contributed to the environmental damage at issue by controlling operations at the CDE Site and demanding that CDE increase its manufacture of capacitors pursuant to the nation's World War II effort.[23]

## III.  APPLICABLE LAW

### A.  Mandatory Withdrawal

Section 157(d) mandates that the district court withdraw a proceeding referred to the bankruptcy court if "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."  The Second Circuit Court of Appeals construes this provision "narrowly," requiring withdrawal of the reference only if "substantial and material consideration of non-Bankruptcy Code federal [law] is necessary for the resolution of the proceeding."[24]

Withdrawal of the reference is  appropriate where the case would

---

[22]  *Id.* ¶ 39.

[23]  *See id.* ¶ 40.

[24]  *Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 995 (2d Cir. 1990) (citations omitted).

require "the bankruptcy court to engage itself in the intricacies" of non-Bankruptcy law, as opposed to "routine application" of that law.[25] The "bare contention" that non-bankruptcy law is dispositive or in conflict with the bankruptcy code is not sufficient.[26]

## B.    Permissive Withdrawal

Section 157(d) gives the district court discretion to withdraw the reference of a case referred to the bankruptcy court "in whole or in part . . . on timely motion of any party, for cause shown." Although the statute does not define "cause," the Second Circuit has held that "[a] district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core."[27] Section 157(b)(2) sets forth a nonexhaustive list of core proceedings, including the "allowance or disallowance of claims against the estate . . . and estimation of claims or interests for the purposes of confirming a plan

---

[25]    *Id. Accord City of New York v. Exxon Corp.,* 932 F.2d 1020, 1026 (2d Cir. 1991).

[26]    *California v. Enron Corp. (In re Enron Corp.),* No. 05 Civ. 4079, 2005 WL 1185804, at *2 (S.D.N.Y. May 17, 2005) ("bare contention" that claim involved Federal Power Act and Natural Gas Act preemption issues and conflicting Federal Energy Regulatory Commission opinions regarding tariffs not sufficient for purposes of withdrawal).

[27]    *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion),* 4 F.3d 1095, 1101 (2d Cir. 1993).

under chapter 11 . . . ."[28] Congress intended that core jurisdiction be construed

broadly to avoid overwhelming the district court with bankruptcy matters.[29]

"[C]ore matters are ones with which the bankruptcy court has greater familiarity

and expertise."[30]

      While the court's determination of whether a matter is core is "often

central to the analysis of whether there is cause to withdraw a reference to the

bankruptcy court," it does not dispose of the issue.[31]  Rather, after the court makes

its determination, the inquiry then turns to "whether the claim or proceeding . . . is

legal or equitable, and considerations of efficiency, prevention of forum shopping,

and uniformity in the administration of bankruptcy law."[32]

    **C.**    **CERCLA**

      CERCLA's section on liability provides, in pertinent part, that:

---

[28]    28 U.S.C. § 157(b)(2)(B).

[29]    *See Enron Power Mktg., Inc. v. Holcim, Inc. (In re Enron Corp.)*, No. 04 Civ. 509, 2004 WL 2149124, at *3 (S.D.N.Y. Sept. 23, 2004) (quotation marks omitted).

[30]    *Id.* (citations omitted).

[31]    *In re FMI Forwarding Co., Inc.*, No. 00 Civ. 41815, 2005 WL 147298, at *5 (S.D.N.Y. Jan. 24, 2005) (citing *In re Houbigant, Inc.*, 185 B.R. 680, 686 (S.D.N.Y. 1995)).

[32]    *In re Orion*, 4 F.3d at 1101.

.

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

. . .

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for –

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and . . . .[33]

The Second Circuit has made clear that when the Government seeks to recover

response costs for removal or remedial action under this section, it is "*not* required

under CERCLA [to] show that a specific defendant's waste caused incurrence of

clean-up [and other response] costs,"[34] and therefore an owner of a facility can be

&

---

[33]    42 U.S.C. § 9607(a)(1)-(4) (2002).

[34]    *United States v. Alcan Aluminum Corp*, 990 F.2d 711, 721 (2d Cir. 1993).

11

held liable even "without a finding of causation of the release . . . ."[35]

## IV.    DISCUSSION

### A.    Mandatory Withdrawal

It is undisputed that CERCLA is a federal statute that regulates

organizations or activities affecting interstate commerce.[36]  As such, I turn to the

question of whether "substantial and material consideration of non-Bankruptcy

Code federal [law] is necessary for the resolution" of the proceeding at issue, thus

requiring mandatory withdrawal of the reference.[37]

The Government contends that mandatory withdrawal applies because

"resolution of the Debtors' Claim Objection and Estimation Motion requires

substantial and material consideration, interpretation and application of

---

[35]    *Id.* (citing *State of New York v. Shore Realty Corp.*, 759 F.2d 1032,
1044 (2d Cir. 1985)).  *Accord United States v. Atlantic Research Corp.*, 127 S. Ct.
2331, 2336 (2007) ("[E]ven parties not responsible for contamination may fall
within the broad definitions of potentially responsible parties ("PRP") in §§
107(a)(1)-(4)) (citing 42 U.S.C. § 9607(a)(1)).

[36]    *See, e.g.*, *In re Chadborne Indus., Ltd.*, 100 B.R. 663, 667 (S.D.N.Y.
June 5, 1989) (quotation omitted); *In re National Gypsum Co.*, 134 B.R. 188, 192
(N.D. Tex. 1991) (noting that CERCLA is "precisely the 'type of law . . . Congress
had in mind when it enacted the statutory withdrawal provision'") (quoting *United
States v. Ilco*, 48 B.R. 1016 (N.D. Ala. 1985)).  Indeed, Debtors neither dispute
nor even mention this fact in their opposition.

[37]    *In re Ionosphere Clubs*, 922 F.2d at 995.

CERCLA."[38]  According to the Government, three main issues are in dispute and are subject to section 157(d) because they require substantial consideration or application of CERCLA, or because they invoke a conflict between CERCLA and the equitable principles of bankruptcy law.

  *First*, because Debtors oppose the imposition of joint and several liability for costs incurred and to be incurred at the six Superfund sites, the Government argues that withdrawal is warranted based on a conflict between CERCLA precedent, which supports joint and several liability, and equitable principles in bankruptcy.[39]  Specifically, the Government contends that this issue presents the bankruptcy court with the "novel argument that a bankruptcy court is 'not required to give effect'" to a valid CERCLA claim of joint and several liability, and also requires that the court "confront substantial issues of pure environmental law under CERCLA."[40]  Moreover, the Government maintains that because Debtors raise a divisibility of harm defense to the imposition of joint and

---

[38]  Govt. Mem. at 21.

[39]  *See id.* ("[A]t a minimum, Dana's contention would require the Court to decide whether to apply applicable CERCLA precedent or employ equitable principles of bankruptcy law notwithstanding the contrary dictates of CERCLA.").

[40]  Reply Memorandum in Further Support of the Government's Motion for Withdrawal of the Reference ("Reply Mem.") at 3-4 (quoting Debtors Obj. ¶ 6).

13

several liability, CERCLA rather than bankruptcy law will have to be considered and applied.[41]

      *Second*, the Government argues that Debtors' objection that its "response actions" were inconsistent with the National Contingency Plan, as defined by CERCLA, raises "legal, technical and policy issues that will require application of CERCLA."[42] *Third*, according to the Government, resolving the issue of whether Debtors are entitled to an "act of God" defense warrants withdrawal because it requires substantial interpretation of CERCLA.[43]

      The crux of Debtors' opposition to the motion to withdraw is that these contested issues are not novel and do not require any substantial or material interpretation of CERCLA. Rather, their resolution requires "only a simple application of established law to the facts," and the "need to develop these facts for examination under prevailing legal standards does not require withdrawal of the reference."[44]

      During oral argument before the Court on October 25, 2007, the

---

[41]    *See id.* at 19-20.

[42]    *Id.* at 20.

[43]    *See id.*

[44]    Debtors Opp. at 7.

14

Government focused its presentation on the first issue regarding the imposition of

joint and several liability, as well as the availability of a divisibility of harm

defense.[45] The Government conceded, albeit with caveats, that the inquiry

regarding the alleged inconsistency between the Government's response actions

and the National Contingency Plan, as well as the "act of God" defense presents

close questions that may be largely factual in nature. As such, I focus on whether

the resolution of the issues regarding the imposition of joint and several liability

and the availability of the divisibility of harm defense requires a substantial and

material application and interpretation of CERCLA. Additionally, because the

parties agree that the availability of equitable allocation is also a major point of

contention despite their limited briefing on the issue, I address it as well.

### 1.    Joint and Several Liability

I begin with the question of whether applying joint and several

liability against Debtors for the response costs incurred and to be incurred at the

Superfund sites requires the bankruptcy court to substantially and materially

interpret CERCLA. The imposition of joint and several liability on PRPs in this

---

[45]     *See* 10/25/07 Tr. at 9:8-11 (The Government: "The first issue is
whether a bankruptcy court is required to give effect to a valid CERCLA claim of
joint and several liability. The second issue is whether or not divisibility should
apply here.").

context is well-settled as, "[u]nder CERCLA, courts have explained that it is fair to apply joint and several liability because Congress *intended* those proven to be 'partially culpable to bear the cost of the uncertainty'. . . ."[46]  Adding a "common law gloss onto [CERCLA's] statutory framework," courts have "at once adopted a scheme of joint and several liability but at the same time have limited somewhat the availability of such liability against multiple defendants charged with adding hazardous substances to a Superfund site."[47]  "In the CERCLA context, courts have relied on the rule of joint and several liability from the Second Restatement of Torts [§ 433A-B] to hold that 'damages should be apportioned only if *defendant* can demonstrate that the harm is divisible' even where there are many defendants."[48]  "But where each tortfeasor causes a single indivisible harm, then

---

[46]     *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liability Litig.*, 447 F. Supp. 2d 289, 303 n.61 (S.D.N.Y. 2006) (quoting *O'Neil v. Picillo*, 883 F.2d 176, 179 (1st Cir. 1989)).

[47]     *Alcan*, 990 F.2d at 721-22.

[48]     *In re MTBE*, 447 F. Supp. 2d at 303 n.61 (emphasis in original) (quoting *O'Neil*, 883 F.2d at 178).  *Accord United States v. Burlington Northern & Santa Fe Railway Co.*, – F.3d –, No. 03 Civ. 17125, 2007 WL 2473236, at *10 (9th Cir. Sept. 4, 2007) ("[A]lthough the harm may be *capable* of apportionment, the harm may not actually be *apportionable* in the particular case as a factual matter, given the evidence produced, because the party advocating apportionment has not come forward with the minimum showing needed to meet its burden of proof as to the proper division of liability.").  *See also Alcan*, 990 F.2d at 722 ("The Restatement (Second) of Torts § 433A (1965) has been relied upon in

damages are not apportioned and each is liable in damages for the entire harm."[49]

Because the Second Circuit has made clear that "commingling is not synonymous with indivisible harm,"[50] a PRP "may escape liability for response costs if it either succeeds in proving that its [] emulsion, when mixed with other hazardous wastes, did not contribute to the release and the clean-up costs that followed, or contributed at most to only a divisible portion of the harm."[51] Debtors concede that joint and several liability applies if it cannot demonstrate that the harm suffered at the Superfund sites is divisible.[52] However, Debtors argue the facts will show that the harm, even if comprised of commingled hazardous wastes, is in fact divisible and damages can therefore be apportioned accordingly, thereby eliminating the need for joint and several liability.[53]

The question of whether joint and several liability can be imposed, or whether a divisibility of harm defense is available, entails the consideration and

---

determining whether a party should be held jointly and severally liable for the entire cost of remediating environmental harm at the site.") (citations omitted).

[49]  *Alcan*, 990 F.2d at 722.

[50]  *Id.*

[51]  *Id.*

[52]  *See* Debtors Opp. at 7.

[53]  *See id.*

application of CERCLA. What is less clear is whether the determination of the divisibility of the harm and the apportionment of damages entails "the simple application of established law to the facts" or something greater.

The Second Circuit has stated, albeit in dicta, that questions regarding "the availability of affirmative defenses . . . are likely to require further interpretation of CERCLA" and will likely necessitate mandatory withdrawal of the reference.[54] In assessing Debtors' divisibility of harm defense, the bankruptcy court would have to determine whether there are distinct harms or a "reasonable basis for apportioning liability."[55] Debtors attempt to downplay the level of analysis required to resolve the issue of whether their divisibility of harm defense defeats the imposition of joint and several liability. While the divisibility analysis may be "intensely factual,"[56] a court must still engage in substantial and material consideration of CERCLA. Indeed, "the preliminary issue of whether the harm to the environment is capable of apportionment among two or more causes is a

---

[54] *Exxon*, 932 F.2d at 1026. *But see In re C-TC 9th Ave. P'ship*, 177 B.R. 760, 764 (N.D.N.Y. 1995) (denying motion for withdrawal of the reference and stating that reliance on *Exxon* is misplaced because "the issue of mandatory withdrawal is only discussed in dicta").

[55] *Alcan*, 990 F.2d at 722.

[56] *United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 269 (3d Cir. 1992).

question of law."[57] This "purely legal question" asks whether "conceptually, the contamination traceable to the" PRPs, "with perfect information, would be allocable, as would be the cost of cleaning up that contamination."[58] Following that legal inquiry, the party advancing the defense must then "present evidence relevant to establishing divisibility of harm"[59] that is "sufficient to establish a reasonable basis for the apportionment of liability . . . ."[60]

 While the bankruptcy court is certainly competent to address CERCLA issues, and although bankruptcy courts have done so in the past,[61] I am not convinced that resolution of the disputed issues at stake here "requires only a straightforward application of established CERCLA law to what are largely factual

---

 [57]  *United States v. Hercules*, 247 F.3d 706, 718 (8th Cir. 2001). *Accord Burlington*, 2007 WL 2473236, at *10 ("We inquire, *first*, whether the particular harm at issue in the case is theoretically capable of apportionment – *i.e.*, whether it could ever be apportioned or whether it is, by nature, too unified for apportionment. That question is one of law.").

 [58]  *Burlington*, 2007 WL 2473236, at *10.

 [59]  *Alcan*, 990 F.2d at 722.

 [60]  *Burlington*, 2007 WL 2473236, at *10.

 [61]  While Debtors and the bankruptcy court have cited cases supporting the proposition that bankruptcy courts have addressed CERCLA issues, those cases are distinguishable. *See, e.g.*, *In re Kaiser Group Int'l, Inc.*, 289 B.R. 597 (Bankr. D. Del. 2003) (estimating CERCLA claim where neither party moved to withdraw the reference and where debtors stipulated to liability for purposes of the motion to estimate the claim, but disputed only the amount of their liability).

issues."[62] Indeed, even the question of whether Debtors have presented evidence

supporting apportionment of liability requires extensive consideration of "proof

disclosing the relative toxicity, migratory potential, degree of migration, and

synergistic capacities of the hazardous substances at the site."[63] Even where, as

here,[64] a debtor advances an argument in favor of divisibility when its

responsibility under CERCLA "derives solely from [its] status as a landowner,"

courts have expressly cautioned against a "meat axe approach to the divisibility

issue" that "relie[s] on the simplest of considerations: percentages of land area,

time of ownership, and types of hazardous products."[65]

       In order to resolve these inquiries, both legal and factual, a

bankruptcy court would be required to engage in careful and significant

consideration of CERCLA, a statute "outside its realm of expertise,"[66] and to apply

---

[62]    *In re Dana Corp.*, 2007 WL 2908221, at *2.

[63]    *Alcan*, 990 F.2d at 722.

[64]    *See* Debtors Obj. ¶ 4 ("the Government's claim is based solely on the
fact that Dana was the record owner of the [CDE Site] for a twenty-year period
(*i.e.*, 1936 to 1956) when its tenant, CDE, . . . is alleged to have caused PCBs and
TCE to be released into the environment").

[65]    *Burlington*, 2007 WL 2473236, at *11.

[66]    *In re Horizon Air, Inc.*, 156 B.R. 369, 374 n.5 (S.D.N.Y. 1993)
("[C]ases construing § 157(d) make clear that when a bankruptcy court is called
upon to interpret statutes outside its realm of expertise, the district court is

20

it to a complex body of facts. Notably, courts in this Circuit have stated that the "appropriate forum" depends upon the issue at stake, with "liability issues . . . decided by the district court . . . and bankruptcy discharge issues by the [b]ankruptcy [c]ourt . . . ."[67]

Moreover, section 157(d)'s "'substantial and material' standard is satisfied even where a non-bankruptcy federal statute only 'arguably conflicts' with the Bankruptcy Code."[68] CERCLA's "primary goals include encouraging the timely clean-up of hazardous waste sites and placing the cost of that clean-up on those responsible for creating or maintaining the hazardous condition."[69] The goals underlying voluntary reorganization under the Bankruptcy Code include allowing and assisting a debtor to "obtain a fresh start in life and an opportunity to

_____

required to remove the reference.").

[67]    *In re Chateaugay Corp.*, 193 B.R. 669, 678 (S.D.N.Y. 1996).

[68]    *In re Cablevision S.A.*, 315 B.R. 818, 821 (S.D.N.Y. 2004) (quoting *Bear, Stearns Sec. Corp. v. Gredd*, No. 01 Civ. 4379, 2001 WL 840187, at *2 (S.D.N.Y. July 25, 2001)). *Accord In re Natl. Gypsum*, 134 B.R. at 192 ("The conflict begins at a basic level, since the goal of CERCLA – cleaning up toxic waste sites promptly and holding liable those responsible for the pollution – is at odds with the premise of bankruptcy, which [is] to allow debtors a fresh start by freeing them of liability.").

[69]    *Consolidated Edison of New York, Inc. ("Con Ed") v. UGI Utils., Inc.*, 423 F.3d 90, 94 (2d Cir. 2005) (citations and quotation marks omitted).

move ahead free of financial distress as quickly as possible."[70]  Indeed, Debtors

themselves attempt to invoke the equitable principles and goals of bankruptcy.

Debtors call the Government's claim "inherently unfair[]"[71] and object to the

imposition of joint and several liability on the CERCLA claims on the ground that

the bankruptcy court is "not required to give effect to the Government's

prosecutorial discretion to seek joint and several liability here."[72]  Because

CERCLA and the Bankruptcy Code arguably conflict in that the former seeks the

full recovery of costs incurred or to be incurred in connection with the clean-up of

environmental pollution while the latter seeks the prompt discharge of liability, I

am further convinced that withdrawal is both mandated and appropriate.[73]

---

[70]      *In re Chalasani*, 92 F.3d 1300, 1310 (2d Cir. 1996).

[71]      Debtors Obj. ¶ 7.

[72]      *Id.* ¶ 6.  In this same paragraph, Debtors cite a case from the Second
Circuit for the proposition that "bankruptcy courts are courts of equity,
empowered to invoke equitable principles to achieve fairness and justice in the
reorganization process . . . ." *In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 n.4
(2d Cir. 1994).

[73]      *See In re Natl. Gypsum*, 134 B.R. at 192 (stating that a "potential for
conflict results in [the] interaction" between CERCLA and the Bankruptcy Code).
*See also Southern Pacific Transp. Co. v. Voluntary Purchasing Groups, Inc.*, 252
B.R. 373, 385 (E.D. Tex. 2000) ("[T]he policies underlying CERCLA are at odds
with the ultimate objectives of the Bankruptcy Code in important respects and
thus, will require particularly close attention.") (citation omitted).

## 2.    Equitable Allocation

Alternatively, Debtors contend that "even if the [c]laim is not

divisible . . . the facts of the case will require equitable allocation because the

CDE Site was operated at the direction of the Government . . . at the time that

environmental damages were caused."[74]  In their Claim Objection, Debtors state

that because "Dana itself did not dispose of hazardous wastes when it was the

owner of a portion of the CDE Site, and did not direct or control, or have

knowledge of the release by any other parties . . . , principles of equity dictate that

Dana should not be allocated any material liability for clean-up of the CDE Site."[75]

Debtors also object to the Government's proofs of claim on the ground that "the

Government should not have standing to assert a claim for joint and several

liability, since its claim is quintessentially one for contribution and one that

effectively seeks to shift the Government's own liability to Dana."[76]  Debtors

further argue that because any claim for contribution asserted against the

---

[74]    Debtors Opp. at 8.  *See also* 10/25/07 Tr. at 33:17-20 (Debtors' counsel: "The [] question is does the Government have to contribute some portion, and in this estimation context you do have to take account of the fact that the Government has a little bit of PCB on its hands.").

[75]    Debtors Obj. ¶ 55.

[76]    *Id.* ¶ 44.

23

Government will require the court to consider equity, the Government necessarily

fails in its argument that raising equitable considerations in the bankruptcy

proceeding creates a conflict between CERCLA and the Bankruptcy Code.[77]

The Government counters that it is entitled to "assert a CERCLA

claim against Dana for the entire cost of the remedial action, and Dana can then

assert a [s]ection 113 counterclaim for any amounts for which the Government is

allegedly responsible."[78] Moreover, the Government argues that "[e]ven if the

court were to determine that the Government is [liable as] an owner/operator, there

is a question of law as to whether or not the Government can [still] sue Debtors

under a theory of joint and several liability. The Government asserts . . . that it

can, but it's going to be a substantial and material question for this Court to

decide."[79]

As an initial matter, I disagree with Debtors' contention that because

the Government might itself be potentially responsible for the harm as an

"operator," it "should not have standing to assert a claim for joint and several

---

[77]     *See* Debtors Opp. at 8 n.6.

[78]     Govt. Mem. at 19 (citing *Con Ed*, 423 F.3d at 100 n.9).

[79]     10/25/07 Tr. at 11:14-20.

24

liability" under section 107.[80]  Rather, the Second Circuit has stated that "nowhere

does the plain language of section 107(a) require that the party seeking necessary

costs of response be innocent of wrongdoing."[81]  Further, the Second Circuit has

instructed that while "some might argue that a person, who, if sued, would be

partly liable for necessary costs of response may be unjustly enriched if allowed to

recover 100 percent of its costs from other persons," such "fear seems misplaced"

because there is nothing preventing a party sued under section 107(a) from

bringing a counterclaim for an offsetting contribution under section 113(f)(1).[82]

Indeed, Debtors themselves are aware that their concerns regarding the

Government's own liability may be more properly addressed in a section 113(f)

contribution action.[83]

    As background, section 113(f)(1) was enacted as part of the

---

[80]    Debtors Obj. ¶ 44.

[81]    *Con Ed*, 423 F.3d at 100.

[82]    *Id.* at 100 n.9.  *Accord United States v. Atlantic Research Corp.*, 127
S. Ct. 2331, 2335, 2339 (2007) (affirming the Eighth Circuit's holding that "the
plain terms of [section] 107(a)(4)(B) allow a PRP to recover costs from other
PRPs, and noting that the Eighth Circuit joins the Second Circuit in "holding that
[section] 113(f) does not provide 'the exclusive route by which [PRPs] may
recover clean-up costs'") (citation omitted).

[83]    *See* Debtors Opp. at 8 n.6 ("The Government concedes that Debtors
are entitled to assert a contribution claim against it for the Government's own
liability at the CDE Site.").

Superfund Amendments and Reauthorization Act of 1986, and states, in part, that

"[a]ny person may seek contribution from any other person who is liable or

potentially liable under section [107(a)], during or following any civil action under

section [106] of this title or under section [107(a)] of this title."[84]

    Without delving into the merits of the underlying CERCLA liability, I

am persuaded, for purposes of this motion, by the Government's contention that

Debtors have raised numerous issues that require substantial and material

consideration of CERCLA. The following examples prove the point: (i) Debtors'

objection to the imposition of joint and several liability; (ii) Debtors' defense that

the harm at issue is divisible and capable of apportionment; (iii) Debtors'

contention that the Government is also a PRP due to its relationship to the CDE

Site; and (iv) Debtors' related argument that the Government's claim for recovery

of costs is one for contribution under section 113. Each of these issues lies at the

heart of CERCLA. Rather than the simple application of law to facts, the issues at

stake here involve a number of difficult legal issues, as well as complicated fact

issues specific to CERCLA, that are outside the purview of the bankruptcy court's

expertise. Because of this and because the bankruptcy court, in addressing these

issues, will be forced to confront the conflict between the underlying goals of

---

[84]    42 U.S.C. § 9613(f)(1).

CERCLA and those of the Bankruptcy Code, I am withdrawing the reference to the bankruptcy court of all proceedings related to the Government's claims, including but not limited to the Claim Objection and the Estimation Motion. Withdrawal of the reference is mandatory because substantial and material consideration of CERCLA is required for the resolution of those proceedings.

### 3.    National Contingency Plan and Act of God Defense

As the Government essentially concedes, the resolution of whether the Government's response actions were inconsistent with the National Contingency Plan, or the availability to the Debtors of an "act of God" defense, requires further fact development before I can even determine whether either issue requires the substantial and material consideration of CERCLA. By way of background, the National Contingency Plan is prepared and published by the President of the United States, and it provides for the "efficient, coordinated, and effective action to minimize damage from oil and hazardous substance discharges, including containment, dispersal, and removal of oil and hazardous substances . . . ."[85] While the inquiry into whether the Government's actions were inconsistent

---

[85]      33 U.S.C. § 1321(d) (2006).

with the National Contingency Plan is primarily a factual one,[86] its resolution may

require the Court to substantially take into account the policy considerations

underlying CERCLA.

   With respect to the "act of God" defense, CERCLA defines an "act of

God" as an "unanticipated grave natural disaster or other natural phenomenon of

an exceptional, inevitable, and irresistible character, the effects of which could not

have been prevented or avoided by the exercise of due care or foresight."[87]

Debtors invoke the "act of God" defense pursuant to section 107(b) of CERCLA

to contend that "two 100-year floods in nine years"[88] qualify as acts of God and as

such, Debtors cannot be held liable for the "release or threat of release of a

hazardous substance and the damages resulting therefrom . . . ."[89]  This affirmative

defense raises a number of questions that will require the bankruptcy court to

materially consider and interpret CERCLA.  As an initial matter, the court will

have to assess whether the alleged floods can be properly classified as "acts of

God" as defined by CERCLA.  Beyond that, the court must also determine

---

[86] *See United States v. Gurley*, 317 F. Supp. 2d 870, 875 (E.D. Ark. 2004).

[87] 42 U.S.C. § 9601.

[88] Debtors Obj. ¶ 86(c).

[89] 42 U.S.C. § 9607(b)(1).

28

whether the release or threatened release of hazardous substances was caused

"solely" by these floods.[90] This inquiry will necessarily involve the consideration

of numerous facts, and will involve mixed questions of law and fact concerning,

inter alia, the relationship among the natural events, the conditions at the site,

Debtors' role, and the actual release or threatened release of hazardous materials.

Such an inquiry will require the court to interpret CERCLA and to consider the

policy goals that underlie the statute.

### B.   Permissive Withdrawal

Because I hold that withdrawal of the reference is mandatory, I need

not reach the question of whether permissive withdrawal is also warranted.

However, in light of the extensive oral argument made by both parties, I briefly

address the question of whether the Claim Objection and the related estimation

proceeding are core or non-core proceedings.

The Government argues that because its claims arise under CERCLA

and could have been enforced independently in a district court action outside of

the context of a bankruptcy case, the resolution of the Claim Objection and

---

[90]   *Id. See also United States v. Barrier Indus., Inc.*, 991 F. Supp. 678, 680 (S.D.N.Y. 1998).

Estimation Motion constitutes a non-core proceeding.[91]  The Government contends

that it had intended to bring a section 107 claim under CERCLA in district court

following the conclusion of its response and remedial action, as it usually does,

but instead filed its proofs of claim pursuant to Debtors' bankruptcy solely so that

its claims would not later be barred.[92]  As such, the Government disputes that the

act of filing a proof of claim in bankruptcy court necessarily renders the resolution

of that claim a core proceeding.[93]  Moreover, the Government contends that its

CERCLA claims are tangential to the central claims at issue in the bankruptcy, and

the bankruptcy court lacks expertise in this area.[94]

       In opposition, Debtors contend that this proceeding is core by

statutory definition because it is "precisely about the allowance or disallowance of

the Government's [c]laim against the Debtors' bankruptcy estate[] . . . ."[95]

---

[91]     *See* Govt. Mem. at 23; Reply Mem. at 9. *See also* 10/25/07 Tr. at
19:16-20 (The Court: "You say it's non-core because it's CERCLA?"  The
Government: "Because the Government could have brought this claim regardless
of the bankruptcy, if the bankruptcy didn't exist . . . .").

[92]     *See* 10/25/07 Tr. at 16:18-17:4.

[93]     *See* 10/29/07 Letter from Russell M. Yankwitt, Assistant United
States Attorney, to the Court ("Yankwitt Letter") at 1-2.

[94]     *See* 10/25/07 Tr. at 17:25-18:10.

[95]     Debtors Opp. at 13.

Additionally, according to the Debtors, once the Government filed its proofs of claim in bankruptcy court, it chose to subject itself to that court's jurisdiction.[96] Debtors further argue that "[t]here is no special rule for CERCLA claims," and the resolution of those claims against the bankruptcy estate is core.[97]

While neither party has cited any binding case law that is directly on point, I find the Second Circuit's language in *In re S.G. Phillips Constructors, Inc.* to be very instructive.[98] In holding that the bankruptcy court had core jurisdiction over a creditor's prepetition contract claim against the debtor under 28 U.S.C. § 157(b)(2)(B), the Second Circuit cited to:

> [T]he basic principle that the filing of a proof of claim invokes the special rules of bankruptcy concerning objections to the claim, estimation of the claim for allowance purposes, and the rights of the claimant to vote on the proposed distribution. *Understood in this sense, a claim filed against the estate is a core proceeding because it could arise only in the context of bankruptcy.*[99]

---

[96]    *See id.*

[97]    10/29/07 Letter from Steven C. Bennett, Esq., Debtors' Counsel, to the Court at 2.

[98]    45 F.3d 702 (2d Cir. 1995).

[99]    *Id.* at 706 (citing *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1390 (2d Cir. 1990)). *Accord In re Trident Shipworks, Inc.*, 247 B.R. 513, 514 (M.D. Fla. 2000) ("There is no question that the [bankruptcy c]ourt has discretion to determine the appropriate method of estimation, especially the purpose of the estimation. The estimation proceeding is clearly a 'core' proceeding.") (citations

In so holding, the Second Circuit expressly rejected as unpersuasive the creditor's argument that "when a creditor files a proof of claim under protest in order to avoid losing its rights in bankruptcy, it does not consent to determination of its claims by the bankruptcy court, and it preserves its rights to object to the bankruptcy court's jurisdiction."[100] The court reasoned that "[i]nvoking equitable jurisdiction in the bankruptcy context might be analogized to invoking a court's jurisdiction by filing a complaint."[101] As such, "by filing its proof of claim[, the creditor] . . . not only triggered § 157(b)(2)(B) subject matter jurisdiction, but also necessarily submitted to the [bankruptcy] court's equitable power to resolve its claims."[102]

In light of the Second Circuit's reasoning, and because the Government has failed to cite to any case supporting its contention that the

---

omitted).

[100]    *Id.*

[101]    *Id.*

[102]    *Id.* at 705, 706 ("Because nothing is more directly at the core of bankruptcy administration . . . than the quantification of all liabilities of the debtor, the bankruptcy court's determination whether to allow or disallow a claim is a core function.") (citation omitted).

32

resolution of CERCLA claims is by definition a non-core proceeding,[103] I hold that the matter at issue is core. Because mandatory withdrawal is warranted for the reasons stated above, and because my determination that the instant proceeding is core precludes an alternative ground for withdrawal, I decline to address the remaining *Orion* factors.

## V.   CONCLUSION

For the reasons set forth above, the Government's motion to withdraw the reference is granted. The Clerk of the Court is directed to close this motion and related motions [Docket Entry Nos. 1 and 4]. A conference is scheduled for December 7, 2007, at 4:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         November 20, 2007

---

[103]   *See* Yankwitt Letter at 2 (conceding that it was "unable to find a CERCLA case in the non-adversary proceeding context where the court held that the CERCLA issue was non-core," and, perhaps in recognition of the weakness of its argument, quickly shifting its focus to mandatory withdrawal, stating "In any event, this [core versus non-core] issue is not relevant to the Government's motion for mandatory withdrawal of the reference.").

## Appearances

**For the United States of America**:

Russell Marc Yankwitt
Pierre G. Armand
Daniel P. Filor

Assistant United States Attorneys
United States Attorney's Office
86 Chambers Street, 3rd Floor
New York, NY 10007
(212) 637-2745
Fax: (212) 637-2730

**For Debtors**:

Steven C. Bennett, Esq.
Jones Day
222 East 41st Street
New York, NY 10017
(212) 326-3939
Fax: (212) 755-7306

Marc S. Levin, Esq.
Dana Corporation
4500 Dorr Street
Toledo, OH 43615

**For Official Committee of Unsecured Creditors**:

Paul Bradley O'Neill, Esq.
Kramer, Levin, Naftalis & Frankel, LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 715-7583
Fax: (212) 715-8000