MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
By:    PIERRE G. ARMAND
        MATTHEW L. SCHWARTZ
        DANIEL P. FILOR
        JOHN D. CLOPPER
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York  10007
Tel. No.:  (212) 637-2724
Fax No.:  (212) 637-2730
Email: pierre.armand@usdoj.gov

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| In re | : |
|  | : |
| Dana Corporation, et al. | : |
|  | : |
| Debtors. | : |
|  | : |

Docket No. 07 Civ. 8160 (SAS)

Bankr. Case No. 06-10354 (BRL)

**MOTION TO ENTER PROPOSED**
**STIPULATION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## I.  PRELIMINARY STATEMENT

Plaintiff the United States of America (the "United States" or "Government") hereby

moves this Court to approve, sign, and enter as a final judgment, the proposed Stipulation and

Order ("Stipulation") lodged with the Court on June 17, 2008.

The Stipulation resolves the claims of the United States, on behalf of the Environmental

Protection Agency ("EPA"), the National Oceanic and Atmospheric Administration of the

Department of Commerce ("Commerce"), and the Fish and Wildlife Service of the Department

of the Interior ("Interior"), under the Comprehensive Environmental Response, Compensation,

and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 et seq., against debtors Dana Corporation

and 40 of its affiliates (the "Debtors" or "Dana"), for response costs incurred and to be incurred,

as well as natural resource damages, in connection with the Cornell-Dubilier Electronics, Inc. Superfund Site, in South Plainfield, New Jersey ("CDE Site").

Under the Stipulation, EPA, Commerce and Interior will collectively receive allowed general unsecured claims with respect to the CDE Site totaling $100,710,000, of which $97,590,000 will be allocated to EPA and $3,120,000 will be allocated to Commerce/Interior.

The Stipulation further resolves comparatively smaller claims of the United States on behalf of EPA against the Debtors under CERCLA for response costs incurred and to be incurred in connection with five other Superfund sites, namely:  (1) the West Highway 6 and Highway 281 Site, located in Hastings, Nebraska (the "Hastings Site"); (2) the Lakeland Landfill Disposal Services, Inc. Site, located near Claypool, Indiana (the "Lakeland Site"); (3) the Main Street Well Field Site, East Side, located in Elkhart, Indiana (the "Main Street Site"); (4) the Solvents Recovery Service of New England, Inc. Site, located in Southington, Connecticut (the "SRSNE Site"); and (5) the Tremont City Barrel Fill Site, located in Tremont City, Ohio (the "Tremont Site") (collectively, the "Other Sites").   The Stipulation also settles the United States' claims on behalf of EPA against the Debtors for civil penalties under the Clean Water Act, 33 U.S.C. §§ 1251, et seq., with respect to Dana's former facility located in Muskegon, Michigan (the "Muskegon Facility"); and under Sections 103(a) and 109 of CERCLA, 42 U.S.C. §§ 9603(a) and 9609, with respect to Dana's former facility located in Bellefontaine, Ohio (the "Bellefontaine Facility") (collectively, the "Facilities").

Under the Stipulation, EPA will receive allowed general unsecured claims with respect to the Other Sites and Facilities as follows:  (1) $24,290,000 for the Hastings Site; (2) $265,000 for the Main Street Site; (3) $205,000 for the Lakeland Site; (4) $145,000 for the Muskegon

Facility; (5) $24,172 for the Bellefontaine Facility; (6) $18,000 for the SRSNE Site; and (7) $13,080 for the Tremont Site.

Pursuant to 28 C.F.R. § 50.7, notice of the Stipulation was published in the Federal Register on June 30, 2008, 73 Fed. Reg. 36900-36901.  The comment period has ended.   The United States received only one comment concerning the Stipulation.  The comment, submitted by D.S.C. of Newark Enterprises, Inc. ("DSC"), pertains solely to the CDE Site.  A copy of the comment is attached hereto as Exhibit A.  DSC is the current owner of real property at the CDE Site and a potentially responsible party ("PRP") with respect to that Site.  Although DSC entered into a partial administrative settlement with EPA in July 2007 with respect to a narrow aspect of Site remediation, DSC's liability at the CDE Site has not yet been resolved.

In its comment, DSC raises only one issue concerning the Stipulation.  It contends that the Stipulation should be rewritten to provide for the reduction of the potential liability of non-settling PRPs at the CDE Site (such as DSC itself) by Dana's equitable share of the total liability, as opposed to the amount of cash the United States receives pursuant to the Stipulation. DSC's assertion is meritless, as CERCLA expressly provides that when the United States reaches an administrative or judicially approved settlement with a PRP, the potential liability of non-settling PRPs shall be reduced solely by the amount paid by settling parties.

The United States has carefully considered this comment concerning the CDE Site and, after such consideration, has determined that the proposed Stipulation is fair, adequate, reasonable and consistent with the purposes of CERCLA.  See Section 122 of CERCLA, 42 U.S.C. § 9622.  The settlement codified in the proposed Stipulation was reached after the parties' careful and informed assessment of the merits, costs, risks and delays that litigation would entail,

as weighed against the value of settlement, including the benefit of receiving cash at the present time to fund remediation efforts at the Sites.

Accordingly, for the reasons set forth herein, the United States respectfully moves this Court to approve and enter as a final judgment the Stipulation lodged with this Court on June 30, 2008.  The function of the district court in reviewing such motions is not to substitute its judgment for that of the parties to the Stipulation, but to confirm that the terms of the Stipulation are fair and adequate and are not unlawful, unreasonable, or against public policy.  United States v. Hooker Chem. & Plastics Corp., 540 F. Supp. 1067, 1072 (W.D.N.Y. 1982), aff'd, 749 F.2d 968 (2d Cir. 1984).  If the Court finds that these standards have been met, then the settlement should be entered.  United States v. Akzo Coatings, 949 F.2d 1409, 1426 (6th Cir. 1991).

The undersigned counsel for the United States has contacted counsel for the Debtors, and the Debtors consent to the relief requested in this motion and agree to the entry of the Stipulation.  See Stipulation, ¶ 33.

A copy of the Stipulation, containing the signatures of the parties, was attached to the Notice of Lodging filed with the Court on June 30, 2008.   Another copy of the Stipulation is attached hereto as Exhibit B for reference.

The Government respectfully submits that a separate memorandum in support of this motion is not necessary because this motion includes citations to the applicable legal authorities and does not raise any novel issue of law.  Additionally, given that the only comment the United States received relates solely to the CDE Site, this motion will focus on the CDE Site and will not discuss the Other Sites and Facilities in detail.

4

## II.  GENERAL STATUTORY/FACTUAL BACKGROUND

### A.     Statutory Background

CERCLA was enacted to provide a framework for cleanup of the nation's worst hazardous waste sites.  The primary goal of CERCLA is to protect and preserve public health and the environment from the effects of releases or threatened releases of hazardous substances to the environment.  See Voluntary Purchasing Groups, Inc. v. Reilly, 889 F.2d 1380, 1386 (5th Cir. 1989); Dedham Water Co. v. Cumberland Farms Dairy, Inc., 805 F.2d 1074, 1081 (1st Cir. 1986); New York v. Shore Realty Corp., 759 F.2d 1032, 1040, n.7 (2d Cir. 1985); O'Neil v. Picillo, 682 F. Supp. 706, 726 (D.R.I. 1988), aff'd, 883 F.2d 176 (1st Cir. 1989).

CERCLA also created a Hazardous Substance Superfund, known simply as the Superfund, to finance federal response actions undertaken pursuant to Section 104(a) of CERCLA.  26 U.S.C. § 9507.  Although CERCLA authorizes cleanup of hazardous waste sites using money provided by the Superfund, the Fund is a limited source and cannot finance cleanup of all of the many hazardous waste sites nationwide.  See S. Rep. No. 96-848, 96th Cong., 2d Sess. at 17-18 (1980), reprinted in 1 Sen. Comm. on Env't & Pub. Works, Legislative History of CERCLA 305, 324-25 (1983).  Thus, the United States is tasked with seeking to ensure that the limited Superfund monies expended by the federal government in response to a release or threatened release of hazardous substances are recovered through the liability scheme set forth in Section 107 of CERCLA wherever possible.  See B.F. Goodrich Co. v. Murtha, 958 F.2d 1192, 1198 (2d Cir. 1992) (a statutory purpose to hold responsible parties liable for the costs of the cleanup).

Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), permits the United States to recover its costs of responding to releases of hazardous substances from PRPs.  Pursuant to Section 107(a),

the PRPs include the owners and operators of Superfund sites at the time of the disposal of hazardous substances at the sites, the current owners and operators of Superfund sites, as well as the generators and transporters of hazardous substances sent to Superfund sites. See United States v. Alcan Aluminum Corp., 990 F.2d 711, 722 (2d Cir. 1993); O'Neil, 883 F.2d at 178; United States v. Monsanto, 858 F.2d 160, 168-171 (4th Cir. 1988). Section 107(a) of CERCLA creates strict, joint and several liability where environmental harm is indivisible. See Alcan Aluminum Corp., 990 F.2d at 722. Replenishment of expended Superfund monies is crucial to the continuing availability of funds for future cleanups.

**B.    The CDE Site**

The CDE Site consists of a 26-acre industrial park (the "CDE Facility") and the surrounding area that has been contaminated as a result of releases of hazardous substances from the CDE Facility. See United States Proof of Claim No. 13796, dated September 21, 2006 ("POC") (Exhibit C hereto) ¶ 35. Dana and its corporate predecessor owned the CDE Facility from approximately 1914 until 1956, when Dana sold it to Cornell-Dubilier Electronics, Inc. ("CDE"). Id. Dana leased the CDE Facility to CDE from 1936 to 1956. Id. CDE occupied the CDE Facility from 1936 to 1962, manufacturing electronic components that contained polychlorinated biphenyls ("PCBs"). Id. EPA has detected PCBs and volatile organic compounds throughout the Site soil and groundwater. See Declaration of Peter Mannino, dated September 18, 2007 ("Mannino Decl.") (Exhibit D hereto) ¶¶ 7-8. PCBs have also been detected inside commercial properties at the CDE Facility, at adjacent residential and commercial properties, and in the surface water and sediments of the nearby Bound Brook. Id. During its operations, CDE used PCBs and chlorinated organic solvents in its manufacturing processes. Id. ¶¶ 6-7. In its proofs of claim in this matter, the United States alleged that the elevated

6

concentrations of PCBs and chlorinated organic solvents at the CDE Site were caused by releases and disposal during, inter alia, Dana's ownership of the property.  POC ¶¶ 35, 44; see also Mannino Decl. ¶¶ 6-7.  Since 1962, the CDE Facility has been operated as a rental property, occupied by more than 100 commercial and industrial companies.  Mannino Decl. ¶ 9.  The current owner is DSC.  Id. ¶ 13, n.1.

In July 1998, EPA included the CDE Site on the National Priorities List, 40 C.F.R. §§ 300.1, et seq.  POC ¶ 37.  EPA initiated the Remedial Investigation ("RI") for the CDE Site in 2000, and divided the Site into four operable units ("OUs").  Mannino Dec. ¶ 14.  EPA issued the Record of Decision ("ROD") for OU1 in 2003, calling for the excavation of soils contaminated with PCBs from several properties within the CDE Site, and the investigation of additional properties during the remedial design phase to determine which, if any, additional properties will require remediation.  Id. ¶¶ 15-16.  In 2004, EPA issued the ROD for OU2, which addressed contaminated soil and buildings at the CDE Facility.  Id. ¶ 19.  The ROD calls for excavation of capacitors discarded on the property and some of the contaminated soils, and capping of the remainder of the soils.  Id.  EPA expects to complete the RI/FS for OU3 (groundwater remediation), and to undertake the RI/FS for OU4 (Bound Brook sediments), by March 2010.  Id. ¶ 25.  EPA has not issued RODs for OU3 and OU4.  Id. ¶¶ 26-28.

On May 3, 2006, the Debtors filed voluntary chapter 11 petitions in the Bankruptcy Court for the Southern District of New York.  The United States filed proofs of claim against the Debtors on September 21, 2006, which were updated on October 25, 2007, seeking, inter alia, approximately $360 million in response costs and damages with respect to the CDE Site, including approximately $8.6 million in past response costs and $20-37 million in natural

resource damages.  See POC ¶¶34-44, 49-51; United States Updated Proof of Claim No. 14958, dated October 25, 2007 (Exhibit E hereto).

On September 7, 2007, the Debtors filed an objection to the United States' proofs of claim, which was amended on December 7, 2007.  In its objection, Dana asserted, inter alia, that the United States was a PRP at the CDE Site on account of its alleged control over CDE's World War II operations, and that Dana, an alleged passive landowner, should at most be allocated a small share of the liability.

**C.    The Stipulation and Order**

The Stipulation provides that EPA and Commerce/Interior will collectively receive allowed general unsecured claims for the CDE Site in the amount of $100,710,000, of which $97,590,000 will be allocated to EPA for past and future response costs and $3,120,000 will be allocated to Commerce/Interior for natural resource restoration and assessment.  Under Dana's Third Amended Joint Plan of Reorganization, confirmed on December 26, 2007, general unsecured creditors are paid in stock of the reorganized Dana entity.  The United States Treasury will monetize the stock the United States receives as a result of this settlement.  It is unclear at this time how much cash the United States will ultimately receive from monetization of this stock.  The Debtors' Disclosure Statement, dated October 23, 2007, estimated that holders of allowed general unsecured claims would receive between a 72 and 86 percent recovery, based on a projected share price of approximately $22 per share.  The stock, however, is currently trading at approximately $6 per share.

In exchange for the payments to be made by Dana, the United States covenants "not to bring a civil action or take any administrative action against the Debtors pursuant to Sections 106 and 107 of CERCLA . . . relating to the Sites."  Stipulation at ¶ 21.  The Stipulation reserves

criminal liability; liability for natural resource damages at sites other than the CDE Site; claims for failure to meet a requirement of the Stipulation; liability at the Sites arising after signature of the Stipulation; and claims relating to other sites.  Id. at ¶ 22.  The liability of non-settling PRPs at the CDE Site will be reduced by the amount of net cash CDE and Interior/Commerce receive pursuant to the Stipulation (i.e., on account of monetization of non-cash distributions).  Id. at ¶¶ 18-19.  The Stipulation also provides the Debtors with such protection from contribution actions or claims as provided in Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), for matters addressed by the Stipulation.  Id. at ¶ 29.  The Stipulation defines the "matters addressed" as "all natural resource damages with respect to the CDE Site, and all response actions taken or to be taken, and response costs incurred or to be incurred, at or in connection with the Sites by the United States or any other person, except the States of Connecticut, Indiana, Nebraska, New Jersey and Ohio."  Id.

### III.  ARGUMENT

Approval of a stipulation or consent decree is a judicial act committed to the informed discretion of the Court.  In re Cuyahoga Equipment Corp., 980 F.2d 110, 118 (2d Cir. 1992); United States v. Hooker Chem. & Plastics Corp., 540 F. Supp. 1067, 1072 (W.D.N.Y. 1982), aff'd, 749 F.2d 968 (2d Cir. 1984); United States v. Cannons Eng'g Corp., 720 F. Supp. 1027, 1035 (D. Mass 1989), aff'd 899 F.2d 79 (1st Cir. 1990).  Judicial review of a settlement negotiated by the United States is subject to special deference; the Court should not engage in "second-guessing the Executive Branch."  Cannons Eng'g Corp., 899 F.2d at 84; In re Cuyahoga, 980 F.2d at 118 (noting the "usual deference given the EPA"); New York v. Solvent Chemical Corp., 984 F. Supp. 160, 165 (W.D.N.Y. 1997) ("This Court recognizes that its function in reviewing consent decrees apportioning CERCLA liability is not to substitute its

9

judgment for that of the parties to the decree but to assure itself that the terms of the decree are fair and adequate and are not unlawful, unreasonable, or against public policy. . . . The limited standard of review reflects a clear policy in favor of settlements.") (internal quotation marks omitted). An evidentiary hearing is not required in order to evaluate a proposed CERCLA consent decree. <u>United States v. Charles George Trucking Co.</u>, 34 F.3d 1081, 1085 (1st Cir. 1994); <u>Cannons</u>, 899 F.2d at 94.

For the reasons discussed below, nothing raised in DSC's comment serves to undercut the conclusion that the Stipulation is fair, reasonable, and furthers the goals of CERCLA. <u>See</u> <u>Charles George Trucking Co.</u>, 34 F.3d at 1084; <u>Cannons</u>, 899 F.2d at 85. Therefore, the Court should approve the Stipulation.

## 1. The Settlement is Fair

The fairness of a CERCLA settlement involves both procedural fairness and substantive fairness. <u>Cannons</u>, 899 F.2d at 86-88. To measure procedural fairness, the Court "should look to the negotiation process and gauge its candor, openness, and bargaining balance." <u>Id.</u> at 86. The negotiation of the Stipulation was procedurally fair because it was negotiated at arm's length and the Debtors were represented by sophisticated counsel. DSC does not question the procedural fairness of the Stipulation.

To measure "substantive" fairness, the Court should consider whether the settlement is "based upon, and roughly correlated with, some acceptable measure of comparative fault, apportioning liability . . . according to rational (if necessarily imprecise) estimates of how much harm each PRP has done." <u>Id.</u> at 87. <u>See also</u> <u>United States v. Davis</u>, 261 F.3d 1, 24 (1st Cir. 2001); <u>Charles George Trucking, Inc.</u>, 34 F.3d at 1087; <u>United States v. DiBiase</u>, 45 F.3d 541, 544-45 (1st Cir. 1995). The Stipulation is "substantively" fair. Here, the relevant obligations in

10

the Stipulation are the product of a complex analysis of the Debtors' liability at the CDE Site, litigation risks, the existence of other PRPs, the circumstances under which contamination occurred, and multiple other factors.  As the Court is aware, these issues formed the backdrop for an extended and contentious negotiation, culminating in a mediation in which the parties submitted voluminous briefing.  The resulting terms of the settlement, which permit the United States to immediately recover its past response costs as well as a significant portion of future response costs, are substantively fair.

### 2.  The Settlement is Reasonable

Three factors are relevant to determining whether a CERCLA settlement is reasonable: technical adequacy of the work to be performed in cleansing the environment; satisfactory compensation to the public for response costs; and the risks, costs and delays inherent in litigation.  See Charles George, 34 F.3d at 1087; Cannons, 899 F.2d at 89-90.  The first prong of the reasonableness inquiry is not at issue in this settlement, as the Debtors are not performing the remedy.  However, the Stipulation does satisfy the other, necessarily intertwined, considerations relevant to reasonableness.  As discussed above, for the CDE Site, the Debtors are required to pay the United States an allowed general unsecured claim totaling $100,710,000.  Most of the allowed claim, $97,590,000, will be paid to EPA for past and future response costs, while the remainder, $3,120,000, will go to Commerce/Interior, primarily for the restoration and assessment of natural resources.  This division is reasonable, given that most of the costs asserted in the United States' proofs of claim relate to EPA's response costs at the CDE Site, and takes relative litigation risk into account.  Further, the settlement satisfactorily compensates the public, and reasonably balances myriad competing factors, including the strength of the United States' case against Dana; Dana's bankruptcy; Dana's claims concerning its asserted role at the

CDE Site and the alleged liability of the United States; and the United States' desire to recover funds to remediate the CDE Site while minimizing the expense and potential delay of protracted litigation.  Accordingly, the Stipulation and Order is reasonable.

### 3.  The Settlement is Consistent with the Statutory Goals of CERCLA

The primary goals of CERCLA are to "encourage prompt and effective responses to hazardous waste releases and to impose liability on responsible parties," and to "encourage settlements that would reduce the inefficient expenditure of public funds on lengthy litigation." In re Cuyahoga, 980 F.2d at 119.  This settlement furthers these statutory goals.  As discussed above, Dana is providing the reimbursement of the United States' past response costs at the CDE Site, as well as a significant portion of its future response costs and natural resource damages. The settlement further meets the statutory goal of providing final resolution of liability for settling parties.  Moreover, the Stipulation serves CERCLA's goal of reducing, where possible, the litigation and transaction costs associated with response actions, as well as the public policy favoring settlement to reduce costs to litigants and burdens on the courts.  See Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982), cert. denied, 464 U.S. 818 (1983).

### B.    The Comment Does Not Render the Stipulation Inappropriate, Inadequate, or Improper

As discussed above, the United States received only one comment concerning the Stipulation.  The comment was submitted by DSC, the current owner of the CDE Facility and a PRP.  In its comment, DSC presents a narrow legal argument, objecting to paragraphs 18 and 19 of the Stipulation.  These paragraphs are standard provisions providing that the liability of non-settling PRPs at the CDE Site will be reduced by the amount of net cash (i.e., via monetization of stock) the United States receives pursuant to the Stipulation.  However, as

DSC's liability at the Site remains unresolved and, therefore, it remains potentially liable for EPA's unrecovered response costs, DSC has an interest in minimizing the liability it faces.  Not surprisingly, therefore, DSC urges that Dana was "the major contributor" of hazardous waste to the CDE Site and that Dana's share of liability is more than the amount it has agreed to pay under the settlement.  With this as its premise, DSC argues that the Stipulation should state that the liability of non-settling parties will be reduced by the settling party's equitable share of the total liability.   As set forth below, DSC's comment flies in the face of CERCLA's explicit language as well as its policy and does not render the settlement inappropriate, improper, or inadequate.  See Section 122(d)(2)(B) of CERCLA, 42 U.S.C. § 9622(d)(2)(B).

First, DSC's proposed revision to the Stipulation is contrary to the plain language of CERCLA, which makes absolutely clear that the potential liability of non-settling PRPs, such as DSC, is to be reduced only by the amount of the settlement.  Section 113(f)(2) of CERCLA states:

> A person who has resolved its liability to the United States or a State in an administratively or judicially approved settlement shall not be liable for contribution for matters addressed in the settlement.  Such settlement does not discharge any of the other potentially responsible persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.

42 U.S.C. § 9713(f)(2) (emphasis supplied).  Following this statutory mandate, the courts consistently recognize that CERCLA settlements with the Government reduce the potential liability of non-settling parties only by the amount of the settlement, not the equitable share of the settling party's liability.  See, e.g., Cannons Eng'g Corp., 899 F.2d at 91-92 (the "clear and unequivocal statutory mandate" of CERCLA § 113(f)(2) "overrides" objections of non-settling parties that their liability should be reduced not by the amount of settlement but by the equitable shares of the settling parties); United States v. City of Grand Rapids, Michigan, 166 F. Supp. 2d

1213, 1222 (W.D. Mich. 2000) ("The statute immunizes settling parties from liability for contribution and provides that only the amount of the settlement – not the pro rata share attributable to the settling party – shall be subtracted from the liability of the nonsettlors."); United States v. Rohm & Haas, 721 F. Supp. 666, 677 (D.N.J. 1989) (rejecting application of the Uniform Comparative Fault Act and noting that "Congress has plainly indicated that non-settling defendants . . . will be credited only with the amount of the settlement and nothing more."); Acushnet River and New Bedford Proceedings Re Alleged PCB Pollution, 712 F. Supp. 1019, 1027 (D. Mass. 1989) ("the words of the statute are clear: the potential liability of the others is reduced 'by the amount of settlement,' not by the settlor's proportionate share of any damages ultimately determined to have been caused").

Second, the approach advocated by DSC would undercut one of the primary goals of CERCLA – to encourage parties to enter into early settlements with the United States in order to provide funds to EPA to expeditiously remediate contaminated sites.  See B.F. Goodrich v. Betkoski, 99 F.3d 505, 514 (2d. Cir. 1996) (statutory purpose of "encouraging settlements that reduce the inefficient expenditure of public funds on lengthy litigation"); In re Cuyahoga, 980 F.2d at 119 (one purpose of CERCLA is to encourage settlements).  As the court noted in City of Grand Rapids, while "[t]his can prove to be a substantial benefit to settling PRPs – and a corresponding detriment to their more recalcitrant counterparts" – "Congress designed the statute so that the threat of disproportionate liability would encourage parties to settle early with the United States and discourage dilatory behavior." 166 F. Supp. 2d at 1222 (citing Cannons Eng'g Corp., 899 F.2d at 91).

The authorities that DSC proffers to support its request for the Stipulation to reduce their liability by the amount of Dana's equitable share of the liability at the CDE Site are inapposite.

It is possible that DSC's comment presents an accurate summary of the caselaw pertaining to contribution litigation among or between PRPs who seek to allocate among themselves their respective liabilities. But the key point here is that those cases have no bearing on the settlement now before this Court because none of them involved a settlement of a party's "liability to the United States," and thus none of them implicated Section 113(f)(2) of CERCLA (quoted above), the statutory provision which unequivocally controls here. See Section 113(f)(2) ("Such settlement. . . reduces the potential liability of the others by the amount of the settlement.") (emphasis added). This is, of course, the rather simple explanation for why the cases cited by DSC could reach the conclusions they do given the existence of Section 113(f)(2).

Indeed, the discussion in American Cyanamid Co. v. King Industries, Inc., one of the authorities upon which DSC relies, makes this very clear:

> The non-settling defendants contend that adoption of the UCFA would be at variance with First Circuit precedent. Their sole support of this argument is [Cannons]. . . . Reliance upon Cannons is grossly misplaced. In that case, Judge Wolf focused on Congress' creation of contribution protection for private parties that settle with the United States or with a State under § 113(f)(2) of CERCLA. . . The court found that with settlements under § 113(f)(2), the plain language of the statute allowed non-settling defendants in CERCLA cases to reduce their liability only by the amount of the settlement not by the settling defendant's share of the liability. Thus, in these types of settlement cases, Congress rejected UCFA principles. One reason for adoption of this rule under § 113(f)(2) was to encourage settlements by providing protection to early settlers and subjecting non-settlers to paying the plaintiff's unrecovered costs. By contrast, the Cannons court noted that other courts had applied the UCFA rule in CERCLA settlement agreements among private parties that did not involve the government. In short, Cannons envisioned different contribution rules applicable to CERCLA settlements with federal or state officials under § 113(f)(2), and settlements solely among private parties.

814 F. Supp. 215, 219 (D.R.I. 1993) (citations omitted; emphasis in original).[1]  Paragraphs 18 and 19 of the Stipulation simply apply the important and well established CERCLA principle embodied in Section 113(f)(2) of the statute.  DSC's complaint lies not with the Stipulation, but with CERCLA itself.

Finally, DSC fails to articulate what Dana's equitable share of the liability should be, presenting only the conclusory allegation that Dana was "the major contributor" of contamination at the CDE Site.  As explained above, the settlement takes into account a careful analysis of many factors, including the circumstances under which the contamination of the CDE Site occurred.  In particular, the settlement accounts for the fact that Dana owned the CDE Facility property for a period of years and that CDE's manufacturing operations, which involved, among other things, the burying of capacitors containing PCBs on the Site property, were the principal source of Site contamination.  See Mannino Dec. ¶¶ 6-7.  In short, DSC provides no basis to question the negotiated share in the Stipulation.  The Stipulation meets all of the criteria for entry.

---

[1]    Similarly, and again contrary to DSC's suggestion, to the extent that Section 113(f)(1) of CERCLA "direct[s]" courts to use "equitable factors" in allocation, it does so with the express limitation that this be done "[i]n resolving contribution claims."  In short, therefore, Section 113(f)(1) has absolutely nothing to say about the legal issue that is the subject of DSC's comment.

## IV.  CONCLUSION

For the reasons stated above, the Court should enter the proposed Stipulation and Order.

Dated: New York, New York              Respectfully submitted,
       September 10, 2008

                          MICHAEL J. GARCIA
                          United States Attorney for the
                          Southern District of New York

            By:     */s/    Pierre G. Armand*
                          PIERRE G. ARMAND
                          MATTHEW L. SCHWARTZ
                          DANIEL P. FILOR
                          JOHN D. CLOPPER
                          Assistant U.S. Attorneys
                          86 Chambers Street, 3rd Floor
                          New York, New York  10007
                          Tel. No.:  (212) 637-2724
                          Fax No.:  (212) 637-2730

To:     By First Class Mail
       Steven C. Bennett, Esq.
       Jones Day
       222 East 41st Street
       New York, New York 10017

       Jeffrey B. Ellman, Esq.
       Jones Day
       1420 Peach Tree Street, N.E., Suite 800
       Atlanta, Georgia 30309-3053
       *Attorneys for the Debtors*

       Alan D. Halperin, Esq.
       Halperin Battaglia Raicht LLP
       555 Madison Avenue, 9th Floor
       New York, New York 10022-3301
       *Attorneys for the Claims Monitor*

       William R. Schikora, Esq.
       Dykema Gossett PLLC
       400 Renaissance Center
       Detroit, Michigan 48243
       *Attorneys for the Lakeland Administrative Fund*

       Andy Velez-Rivera, Esq.
       Office of the United States Trustee (Region 2)
       33 Whitehall Street, Suite 2100
       New York, New York 10004

<u>CERTIFICATE OF SERVICE</u>

I, Pierre G. Armand, an Assistant United States Attorney for the Southern District of New York, hereby certify that on September 10, 2008, I caused a copy of the foregoing Motion to Enter Proposed Stipulation to be served upon the following by first class mail:

Steven C. Bennett, Esq.
Jones Day
222 East 41st Street
New York, New York 10017

Jeffrey B. Ellman, Esq.
Jones Day
1420 Peach Tree Street, N.E., Suite 800
Atlanta, Georgia 30309-3053
*Attorneys for the Debtors*

Alan D. Halperin, Esq.
Halperin Battaglia Raicht LLP
555 Madison Avenue, 9th Floor
New York, New York 10022-3301
*Attorneys for the Claims Monitor*

William R. Schikora, Esq.
Dykema Gossett PLLC
400 Renaissance Center
Detroit, Michigan 48243
*Attorneys for the Lakeland Administrative Fund*

Andy Velez-Rivera, Esq.
Office of the United States Trustee (Region 2)
33 Whitehall Street, Suite 2100
New York, New York 10004

Dated:          New York, New York
                     September 10, 2008

                                                          */s/    Pierre G. Armand*
                                                          PIERRE G. ARMAND