# **EXHIBIT A**

**WOLFF & SAMSON PC**
COUNSELLORS AT LAW
THE OFFICES AT CRYSTAL LAKE
ONE BOLAND DRIVE
WEST ORANGE, NEW JERSEY 07052
973-325-1500
TELECOPIER: 973-325-1501

NEW YORK OFFICE:
140 BROADWAY
FORTY-SIXTH FLOOR
NEW YORK, NEW YORK 10005
212-973-0572

WWW.WOLFFSAMSON.COM

WRITER'S E-MAIL:
lsands@wolffsamson.com
WRITER'S DIRECT DIAL:
973-530-2098
WRITER'S TELECOPIER:
973-530-2298

DAVID SAMSON
ARTHUR S. GOLDSTEIN*
ARMEN SHAHINIAN*
THOMAS R. O'BRIEN*
GAGE ANDRETTA*
DANIEL A. SCHWARTZ*
KAREN L. GILMAN
KENNETH N. LAPTOOK*
FREDRIC P. LAVINTHAL
DAVID M. HYMAN*
DAVID L. SCHLOSSBERG
ROGER J. BREENE
DAVID N. RAVIN*
BERNARD S. DAVIS
HOWARD J. SCHWARTZ*
PAUL M. COLWELL
ROBERT E. NIES
MORRIS BIENENFELD*
DENNIS M. TOFT
GEORGE A. SPADORO*
JEFFREY M. GUSSOFF*
JOHN F. CASEY
JAMES D. FERRUCCI
JOHN M. SIMON

JOHN A. McKINNEY, JR.
STEPHEN L. FERSZT*
LAURENCE M. SMITH
WILLIAM E. GOYDAN*
DARRYL WEISSMAN*
PETER E. NUSSBAUM
LORI GRIFA*
MICHELLE A. SCHAAP
ADAM K. DERMAN
ADAM P. FRIEDMAN*
MITCHELL S. BERKEY*
CATHERINE P. WELLS
JONATHAN BONDY*
SEAN M. AYLWARD
DANIEL M. MURPHY*
ROBERT H. CRESPI*
JUNIE HAHN*
JOSEPH TRIPODI*
JILL D. ROSENBERG*
JOHN O. LUKANSKI*
ROXANNA E. HAMMETT
BARBARA B. MANAHAN
RONALD L. ISRAEL*

*MEMBER NJ AND NY BARS
*MEMBER NY BAR ONLY
^REGISTERED PATENT ATTORNEY

MARTIN L. WIENER (1942 - 2002)

AARON D. BASSAN
LAUREN M. O'SULLIVAN
JOSEPH ZAWILA
HOWARD K. UNIMAN
STEVEN S. KATZ*
JUNE S. MELLER*
ANDREW S. KENT*
ERIC J. LEVINE*
DORIT F. KRESSEL*
JOSEPH MONAGHAN
STEPHEN G. CORDARO*
WARREN BARROWS*
LAURIE J. SANDS*
DONNA M. EREM
LEE D. HENIG-ELONA*
JOHN P. MALONEY*
COUNSEL

CARL B. LEVY
RHONDA CARNIOL*
BARBARA S. HUTCHEON
ANDREW D. ELLIS
KLAUS P. STOFFEL*^
STEPHEN M. ASPERO*
STEPHEN A. KISKER*
DAVID E. WOLFF*
ARTHUR T. HILSON*
OF COUNSEL

JOSEPH A. DICKSON
BRUCE D. ETTMAN*
CARLOS G. MANALANSAN*
MYRNA BLUME
DANIEL D. BARNES*
WILLIAM R. FINIZIO
DIANA L. BUONGIORNO
THOMAS J. TRAUTNER
LINDA D. SULLIVAN*

JENNIFER R. JACOBUS
JOSHUA M. LEE
KAREN L. MARKS
TODD W. TERHUNE
SHANNON L. KEIM
MARGARET O'ROURKE WOOD
MARK A. FORAND*
DENISE J. PIPERSBURGH*
RUSSEL D. FRANCISCO*
NICOLE F. DIMARIA
DANIEL T. McKILLOP
FARAH N. HOMSI*
SCOTT E. LINSKY*
DAVID M. DUGAN*
ELISA M. PAGANO
KATHRYN E. SONG*
KIRAN V. SOMASHEKARA*
RACHEL C. SANTARLAS*^
XAVIER M. BAILLIARD
KEYANA C. LAWS*
NATASHA M. SONGONUGA*
MELISSA A. SALIMBENE*
NICOLE K. MARTIN
ERIC YUN
NANCY A. DEL PIZZO*
DARREN GRZYB
BETH J. ROTENBERG*
DEEPA A. KAIREN*
BRIAN KANTAR*
ELIZABETH C. YOO*
PETER D. SIMON
JOSHUA M. LEVY*
PATRICIA D. CLEARY*
GRAHAM H. CLAYBROOK*
KIMBERLY DILORENZO
CHRISTOPHER J. DONADIO
MAULIK M. SANGHAVI*
MERISA B. VINICK

PLEASE REPLY TO WEST ORANGE

July 29, 2008

*Via E-Mail and Regular Mail*
Assitant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611

Re:   In re Dana Corporation, et al., D.J. Ref. 90-11-3-531/4

Dear Sir or Madam:

D.S.C. of Newark Enterprises Inc. ("DSC") respectfully submits the following comments regarding Paragraphs #18 and #19 of the Stipulation and Order, in In Re Dana Corporation, et al., Case No. 07-8160, published in the Federal Register on June 30, 2008.

Paragraph #18 in the Stipulation and Order states that credit for cash amounts received by EPA in settlement with respect to a particular Site, including the Cornell-Dubilier ("CDE") Site, "shall be credited by EPA to its account for the respective Site, which credit shall reduce the

1141639.1

**WOLFF & SAMSON PC**

July 29, 2008
Page 2

liability of non-settling potentially responsible parties to EPA for the respective Site by the amount of the credit." Paragraph #19, regarding natural resource damage claims for the CDE Site states:

> Only the amount of cash received by Commerce and Interior (or net cash received by Commerce and Interior on account of monetization of non-cash distributions) pursuant to the Plan on account of the Allowed Commerce/Interior Claim, and not the total amount of the allowed claim, shall be credited by Commerce and Interior to their accounts for the CDE Site, which credit shall reduce the liability of non-settling potentially responsible parties to Commerce and Interior for the CDE Site by the amount of the credit. . . .

Both Paragraphs #18 and #19 address claims stemming from alleged contamination found at the CDE Site. Dana Corporation owned the CDE Site for 37 years. Spicer Manufacturing, a predecessor to Dana Corporation, operated at the Site for over 27 years and its operations resulted in contamination at the Site. Also, from 1936 to 1956, Dana Corporation leased the Site to Cornell-Dubilier Electronics, Inc. During the period of its lease, Cornell-Dubilier Electronics, Inc. added to the contamination at the Site  Although other potentially responsible parties have been identified for the Site, Dana Corporation is the major contributor to the alleged contamination found at the Site; a Site where the government estimates a worst case scenario clean up to cost $267 million dollars, $37 million of which includes natural resource damages. In fact, Dana Corporation and Cornell-Dubilier Electronics, Inc. are responsible for the entire contamination found at the Site since there is no evidence of contamination occurring during the time DSC owned the Site.

1141639.1

**WOLFF & SAMSON PC**

July 29, 2008
Page 3

      Yet, under the Stipulation and Order, Dana Corporation is only contributing 38% to the costs of the clean up of the Site. In fact, Dana Corporation is only contributing $3,120,000 towards the $37 million natural resource damage claim, a mere 8%. Given that Dana Corporation owned and operated at the Site during the period of time the Site was contaminated, Dana Corporation's share is significantly more than 38%. Therefore, to ensure that the cost of the clean up at the CDE Site is borne by the parties responsible for the contamination, or the government if it chooses to settle with a responsible party at a discounted amount, DSC submits the Stipulation and Order should state that in any allocation of costs incurred at the Site, Dana Corporation's share should be based upon its equitable share of the liability at the Site and not on the amount of money it paid pursuant to the Stipulation and Order. This would appropriately result in the government being responsible for the consequence of the bargain it struck in its settlement with Dana Corporation. It is also supported by caselaw regarding CERCLA settlements.

      Most courts addressing the issue of reducing non-settling parties' liability have applied the 'equitable share' approach. This approach divides the parties' liability as per their equitable share, rather than just reducing the total liability by the amount of the settlement. The Uniform Comparative Fault Act ("UCFA") expressly provides for the former, while the Uniform Contribution Among Tortfeasors Act ("UCATA") provides for the latter.

      The UCFA dictates the application of comparative fault, and reduces the non-settling defendants' liability by the amount of the settlor's equitable share of the obligation. <u>Barton Solvents, Inc. v. Southwest Petro-Chem</u>, Inc. 834 F.Supp. 342, 348 (D.Kan., 1993) (as cited by

1141639.1

**WOLFF & SAMSON** PC

July 29, 2008
Page 4

the District of New Jersey in Stearns & Foster Bedding Co. v. Franklin Holding Corp., 947 F.Supp. 790, 813 (D.N.J., 1996)). The alternative approach, which is set forth in the Stipulation and Order, is found under the UCATA, sometimes referred to as the "pro tanto" approach. Under the UCATA, the liability of non-settling defendants is reduced by the dollar amount stipulated in the settlement. UCATA § 4.

The principles of UCFA are more consistent with CERCLA's goals of fostering settlements by achieving an equitable apportionment of liability for non-settling parties. In Stearns & Foster, the non-settling defendants challenged the approval of a negotiated settlement. 947 F. Supp at 813. There, the parties were aware that the potential liability of the settling defendants far exceeded the amount they had offered in settlement. The court was faced with the quandary as to whether the non-settling defendants were entitled to no more than a *pro-tanto* reduction for the settlement amount, or in the alternative, an equitable deduction, which implicitly requires a determination of the settling defendants' allocable percentage of the fault. The court in Stearns & Foster followed Section 6 of the UCFA, which provides as follows:

> A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount of the released person's equitable share of the obligation ...

Id. Ultimately, the court in Stearns & Foster approved the proposed settlement, provided that it reduced the total liability by the parties' equitable shares.

1141639.1

**WOLFF & SAMSON** PC

July 29, 2008
Page 5

In addition, in <u>Lyncott Corporation v. Chemical Waste Management, Inc., et al.</u>, 690 F. Supp. 1409, 1418 (E.D. Pa. 1988), the court applied UCFA to a CERCLA contribution action stating that "U.C.F.A. expressly provides for the application of comparative fault in actions based in strict liability." In <u>American Cyanamid Co. v. King Indus., Inc.</u>, 814 F.Supp. 215 (D.R.I., 1993), the court also applied principles of the UCFA to a CERCLA contribution action, finding it more fair than UCATA, because, as the court held, plaintiffs must "bear the risk that the potential settling defendants' share of the cleanup costs may be greater than the settlement amount."

In fact, CERCLA itself provides for the equitable allocation of response costs by allowing contribution claims and directing courts to "allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C.A. § 9613(f). "Congress sought through CERCLA not only to expedite the cleanup of hazardous waste sites but also to assure the equitable allocation of associated costs among all responsible parties." <u>Rockwell International Corp. V. IU International Corp.</u>, 702 F. Supp. 1384, 1389 (N.D. Ill. 1988).

In light of the above, DSC states that the Stipulation and Order should provide for the equitable allocation of Dana Corporation's share of any alleged liability for the clean up of the CDE Site and natural resource damages stemming from the Site. Given the amount of time Dana Corporation owned and operated at the Site, Dana Corporation's share of the cleanup costs should not be discounted in an allocation process. The government has decided to enter into this settlement with Dana Corporation, and, therefore, as stated in <u>American Cyanamid</u>, the

**WOLFF & SAMSON PC**

July 29, 2008
Page 6

government should bear the risk of the settlement. Accordingly, DSC submits that the Stipulation and Order should provide for the equitable allocation of Dana Corporation's share of liability at the CDE Site regardless of what Dana Corporation has paid pursuant to the Stipulation and Order.

Very truly yours,

*Laurie J. Sands*

LAURIE J. SANDS

cc   Joseph Lockwood

1141639.1