# **EXHIBIT C**

Part 1 of 2



FORM B10/Dana (Modified Official Form 10)

| UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK | | PROOF OF CLAIM |
|---|---|---|
| Name of Debtor: Dana Corp. | Case Number: 06-10354 | |

NOTE: Other than claims under 11 U.S.C. § 503(b)(9) this form should not be used to make a claim for administrative expenses arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503(a).

| Name of Creditor (The person or other entity to whom the debtor owes money or property): US Environmental Protection Agency US Dep't of Commerce and Interior | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
| Name and address where notices should be sent: U.S. Attorney's Office- SDNY AUSA Russell M. Yankwitt 86 Chambers St., 3rd Fl, NY,NY 10007 Telephone number: (212) 637-2745 | ☐ Check box if you have never received any notices from the bankruptcy court in this case. ☐ Check box if the address differs from the address on the envelope sent to you by the court. THIS SPACE IS FOR COURT USE ONLY |
| Last four digits of account or other number by which creditor identifies debtor: | Check here ☐ replaces if this claim ☐ amends a previously filed claim, dated: |

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes      See Attached
- ☐ Other _____

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of your SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
       (date)      (date)

**2. Date debt was incurred:** See Attached

**3. If court judgment, date obtained:** See Attached

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

**Unsecured Nonpriority Claim $** See Attached
☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Secured Claim**
☐ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☐ Real Estate  ☐ Motor Vehicle  ☐ Other _____
Value of Collateral: $_____
Amount of arrearage and other charges at time case filed included in secured claim if any: $_____
See Attached

**Unsecured Priority Claim.**
☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority.
Amount entitled to priority $ See Attached
Specify the priority of the claim:
- ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)
- ☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4).
- ☐ Contribution to an employee benefit plan – 11 U.S.C § 507(a)(5).
- ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties owed to governmental units –11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a) (___).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**Section 503(b)(9) Claim** $_____
☐ Check this box if your claim is for the value of goods received by the debtor within 20 days before the date of commencement of the case (11 U.S.C. § 503(b)(9)). Include the amount of such claim in the space for "Amount entitled to priority" above.

**5. Total Amount of Claim at Time Case Filed:** $_____ + _____ + _____ = See Attached
              (unsecured)  (secured)  (priority)        (Total)

If all or part or your claim is secured OR entitled to priority treatment, also complete the relevant portions of Item 4 above.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**6. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**7. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Date-Stamped Copy:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

RECEIVED SEP 21 2006 CLAIMS PROCESSING CENTER USBC, SDNY  3

Date 9/21/06  Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): AUSA Russell M. Yankwitt

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Dana Corporation
13796

FORM B10/Dana (Modified Official Form 10)

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In particular types of cases or circumstances, such as bankruptcy cases that are not filed voluntarily by a debtor, there may be exceptions to these general rules.*

## — DEFINITIONS —

### Debtor
The person, corporation, or other entity that has filed a bankruptcy case is called the debtor.

### Creditor
A creditor is any person, corporation, or other entity to whom the debtor owed a debt on the date that the bankruptcy case was filed.

### Proof of Claim
A form telling the bankruptcy court how much the debtor owed a creditor at the time the bankruptcy case was filed (the amount of the creditor's claim). This form must be filed with the clerk of the bankruptcy court where the bankruptcy case was filed.

### Secured Claim
A claim is a secured claim to the extent that the creditor has a lien on property of the debtor (collateral) that gives the creditor the right to be paid from that property before creditors who do not have liens on the property.

Examples of liens are a mortgage on real estate and a security interest in a car, truck, boat, television set, or other item of property. A lien may have been obtained through a court proceeding before the bankruptcy case began; in some states a court judgment is a lien. In addition, to the extent a creditor also owes money to the debtor (has a right of setoff), the creditor's claim may be a secured claim. (See also *Unsecured Claim.*)

### Unsecured Claim
If a claim is not a secured claim it is an unsecured claim. A claim may be partly secured and partly unsecured if the property on which a creditor has a lien is not worth enough to pay the creditor in full.

### Unsecured Priority Claim
Certain types of unsecured claims are given priority, so they are to be paid in bankruptcy cases before most other unsecured claims (if there is sufficient money or property available to pay these claims). The most common types of priority claims are listed on the proof of claim form. Unsecured claims that are not specifically given priority status by the bankruptcy laws are classified as *Unsecured Nonpriority Claims.*

## Items to be completed in Proof of Claim form (if not already filled in)

**Court, Name of Debtor, and Case Number:**
Fill in the name of the federal judicial district where the bankruptcy case was filed (for example, Southern District of New York), the name of the debtor in the bankruptcy case, and the bankruptcy case number. If you received a notice of the case from the court, all of this information is near the top of the notice.

**Information about Creditor:**
Complete the section giving the name, address, and telephone number of the creditor to whom the debtor owes money or property, and the debtor's account number, if any. If anyone else has already filed a proof of claim relating to this debt, if you never received notices from the bankruptcy court about this case, if your address differs from that to which the court sent notice, or if this proof of claim replaces or changes a proof of claim that was already filed, check the appropriate box on the form.

1. **Basis for Claim:**
Check the type of debt for which the proof of claim is being filed. If the type of debt is not listed, check "Other" and briefly described the type of debt. If you were an employee of the debtor, fill in your social security number and the dates of work for which you were not paid.

2. **Date Debt Incurred:**
Fill in the date when the debt first was owned by the debtor.

3. **Court Judgments:**
If you have a court judgment for this debt, state the date the court entered the judgment.

4. **Classification of Claim**
**Secured Claim**
Check the appropriate place if the claim is a secured claim. You must state the type and value of property that is collateral for the claim, attach copies of the documentation of your lien, and state the amount past due on the claim as of the date the bankruptcy case was filed. A claim may be partly secured and partly unsecured. (See DEFINITIONS, above).

**Unsecured Priority Claim**
Check the appropriate place if you have an unsecured priority claim, and state the amount entitled to priority. (See DEFINITIONS, above). A claim may be partly priority and partly nonpriority if, for example, the claim is for more than the amount given priority by the law. Check the appropriate place to specify the type of priority claim. Claims entitled to administrative priority under 11 U.S.C. § 503(b)(9) should be asserted by filling in the appropriate information on this Proof of Claim form. All other administrative claims must be asserted by an appropriate "request" under 11 U.S.C. § 503(a) and should not be asserted on this Proof of Claim form.

**Unsecured Nonpriority Claim**
Check the appropriate place if you have an unsecured nonpriority claim, sometimes referred to as a "general unsecured claim". (See DEFINITIONS, above). If your claim is partly secured and partly unsecured, state here the amount that is unsecured. If part of your claim is entitled to priority, state here the amount not entitled to priority.

5. **Total Amount of Claim at Time Case Filed:**
Fill in the total amount of the entire claim. If interest or other charges in addition to the principal amount of the claim are included, check the appropriate place on the form and attach an itemization of the interest and charges.

6. **Credits:**
By signing this proof of claim, you are stating under oath that in calculating the amount of your claim you have given the debtor credit for all payments received from the debtor.

7. **Supporting Documents:**
You must attach to this proof of claim form copies of documents that show the debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents. If documents are not available, you must attach an explanation of why they are not available.

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
By: RUSSELL M. YANKWITT
Assistant United States Attorney
86 Chambers Street
New York, New York 10007
Telephone: (212) 637-2745
Facsimile: (212) 637-2686

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re: DANA CORP.,           )
                             )
            Debtor.          ) No. 06-10354 (BRL)
                             )

**PROOF OF CLAIM OF THE UNITED STATES ON BEHALF OF
THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,
THE NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION OF THE
DEPARTMENT OF COMMERCE, AND THE DEPARTMENT OF INTERIOR
ACTING THROUGH THE FISH AND WILDLIFE SERVICE**

1. This Proof of Claim is filed by the Attorney General of the United States at the request of the United States Environmental Protection Agency ("EPA"), National Oceanic and Atmospheric Administration ("NOAA") of the Department of Commerce, and the Department of Interior acting through the Fish and Wildlife Service ("FWS"). The Attorney General is authorized to make this Proof of Claim on behalf of the United States. This Proof of Claim relates to the environmental liabilities of Debtor Dana Corp. ("Debtor" or "Dana") to the United States for:

(a) the recovery of response costs incurred and to be incurred by EPA under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended ("CERCLA"),


Dana Corporation
13795

42 U.S.C. §§ 9601-9675, in connection with the following Facilities: (1) the Tremont City Landfill Superfund Site in Tremont City, Ohio; (2) the Main Street Well Field Superfund Site in Elkhart, Indiana; (3) the Lakeland Landfill Disposal Services, Inc. Superfund Site in Claypool, Indiana; (4) the West Highway 6 & Highway 281 Superfund Site in Hastings, Nebraska; and (5) the Cornell-Dubilier Electronics, Inc. Superfund Site in South Plainfield, New Jersey;

  (b) the recovery of civil penalties and punitive damages and stipulated penalties under CERCLA for violations of administrative orders issued by EPA with respect to the Cornell-Dubilier Electronics, Inc. Superfund Site in South Plainfield, New Jersey;

  (c) the recovery of damages for injury to, destruction of, or loss of natural resources, under the trusteeship of the United States, including the reasonable costs of assessing such injury, destruction or loss, under Section 107 of CERCLA, 42 U.S.C. § 9607, with respect to the Cornell-Dubilier Electronics, Inc. Superfund Site, located in South Plainfield, New Jersey; and

  (d) the recovery of civil penalties under the Clean Water Act, 33 U.S.C. §§ 1251 et seq. ("CWA") with respect to violations at a facility located at 2051 South Harvey Street, Muskegon, Michigan ("Muskegon Facility"). In addition, with

respect to equitable remedies that are not within the Bankruptcy Code's definition of "claim," 11 U.S.C. § 101(5), this proof of claim is only filed in protective fashion, as described more fully below.

### EPA CLAIMS FOR CERCLA RESPONSE COSTS

2.  Under CERCLA, Dana is liable to reimburse all response costs incurred and to be incurred by EPA in connection with response action taken or to be taken at each of the Superfund Sites described below, plus statutory prejudgment interest on such costs, as follows:

(a) Each Site is a "Facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

(b) Dana is liable to the United States pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for response costs incurred or to be incurred by the United States with respect to each of the Facilities because it is the owner or operator (or legal successor to an owner or operator) of the respective Facility, was the owner or operator (or legal successor to an owner or operator) of the respective Facility at the time of disposal of hazardous substances, and/or was an arranger (or legal successor to an arranger) for disposal or treatment of hazardous substances that it owned or possessed at the respective Facility. There have been "releases" and/or "threatened releases" of "hazardous substances" at each Facility, within the meaning of CERCLA. Response costs have been and will be incurred

3

by EPA in responding to "releases" at each Facility not inconsistent with the National Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, and set forth at 40 C.F.R. Part 300, as amended. As noted below, some of the Facilities are on the National Priorities List established pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605.

(c) Liability under CERCLA is strict, and each responsible party is jointly and severally liable to the United States unless the responsible party demonstrates that the harm is divisible among responsible parties. Other potentially responsible parties may along with Dana also be jointly and severally liable to the United States under CERCLA with respect to the Facilities discussed below.

### Tremont City Landfill Superfund Site

3. The Tremont City Landfill Superfund Site is an approximately 80-acre inactive landfill located at 3108 Snyder-Domer Road in Tremont City, German Township, Clark County, Ohio ("Tremont Facility"). The Tremont Facility is comprised of three facilities: a closed 8.5 acre portion of the Site that operated from 1976 to 1979, as a licensed landfill for the disposal of barreled or drummed wastes ("Barrel Disposal Facility"); a closed

4

56 acre sanitary landfill; and a closed 14-to-15 acre closed oil recycling hazardous waste storage and transfer facility.

4. Between 1976 and 1979, approximately 50,000 drums of industrial waste and approximately 52,000 gallons of bulk liquids of sludge were disposed of at the Barrel Disposal Facility.

5. Documents maintained by the owner/operators of the Tremont Facility establish that Dana arranged for disposal or treatment of hazardous substance-containing sludge at the Barrel Disposal Facility.

6. There have been actual and threatened releases of hazardous substances at the Tremont Facility. Soil sampling results obtained by U.S. EPA and Ohio EPA confirmed that the soil at the Barrel Disposal Facility had elevated levels of inorganic compounds, such as arsenic, cyanide and lead; and elevated levels of organic compounds, such as xylene, toluene and methylene chloride. Additionally, groundwater sampling results revealed elevated levels of volatile organic compounds, such as acetone and chlorofluorocarbons, in groundwater or seeps underneath or down-gradient of the Barrel Disposal Facility; and elevated levels of inorganic compounds, such as arsenic and lead, in groundwater near or down-gradient of Barrel Disposal Facility.

7. In response to the actual and threatened releases of hazardous substances at the Tremont Facility, EPA has incurred, and will continue to incur, response costs that are not inconsistent with the National Contingency Plan, promulgated under Section 105 of CERCLA, 42 U.S.C. § 9605, and set forth at 40 C.F.R. Part 300. In October 2002, EPA entered into an Administrative Order on Consent (AOC) with 15 parties with respect to the Barrel Disposal Facility, in which seven parties agreed to perform the work required for a remedial investigation and feasibility study, and eight parties, including Dana, paid a sum into a fund as their share of the cost for the work to be performed.

8. EPA has incurred a total of approximately $430,000 in unreimbursed response costs, not covered by the AOC, with respect to the Barrel Disposal Facility, not including prejudgment interest, and, although the remedial investigation and feasibility study at the Barrel Disposal Facility is nearly complete, EPA presently estimates that the cost for future remedial activities at the Barrel Disposal Facility may be approximately $7,650,000.

9. Because Dana arranged for disposal or treatment of hazardous substances (or arranged for transport of hazardous substances for disposal or treatment) at the Barrel Disposal Facility, within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), Dana is jointly and severally liable to the United States for all unreimbursed response costs incurred

6

and to be incurred by the United States in connection with the Barrel Disposal Facility, plus prejudgment interest on such costs. The United States hereby asserts a claim against Dana for all unreimbursed past and future response costs (plus interest) for the Barrel Disposal Facility, which are currently estimated to be approximately $8,080,000.

### Main Street Well Field Superfund Site

10. The Main Street Well Field Superfund Site is located at or near 942 N. Main Street in Elkhart, Elkhart County, Indiana, and covers approximately 48 acres with respect to the Well Field, as well as all surrounding areas of groundwater contamination that flows or is drawn into the Main Street Well Field, and all contaminated soil contributing to that groundwater contamination, which encompasses various industrial acreage ("Main Street Facility").

11. There have been actual and threatened releases of hazardous substances at the Main Street Facility. Groundwater monitoring data and soil sampling data obtained by U.S. EPA revealed extensive groundwater and soil contamination at the Facility, including several "hot spots" on the east side of the well field as a result of disposal and/or spillage of solvents

7

used in degreasing operations, which were owned and operated by Durakool, Inc. ("Durakool") and Excel Corp.

12. EPA issued a Unilateral Administrative Order (UAO), Docket No. V-W-92-C-140, on February 20, 1992, as modified on April 30, 1992, to nine responsible parties, including Durakool as a then-present owner and operator of the Main Street Facility. Under the UAO, Durakool was required to, *inter alia*, implement a groundwater monitoring and reporting program on its respective property on the east side of the well field and reimburse EPA all response costs incurred in overseeing Durakool's implementation of its respective requirements under the UAO or in performing any response action which Durakool failed to perform in compliance with the UAO.

13. On information and belief Dana acquired Durakool or its successor(s), and assumed Durakool's liabilities with respect to Main Street Facility under the UAO since approximately September 1992.

14. In response to the actual and threatened releases of hazardous substances at the Main Street Facility, EPA has incurred, and will continue to incur, response costs that are not inconsistent with the National Contingency Plan, promulgated under Section 105 of CERCLA, 42 U.S.C. § 9605, and set forth at 40 C.F.R. Part 300. Through July 31, 2006, EPA has incurred $203,735.15, not including interest, in unreimbursed oversight costs with respect to Dana's obligations under the UAO, and EPA

presently estimates that it will likely incur at least $250,000 in future response costs overseeing Dana's obligations under the UAO.

15. As a legal successor to an owner or operator of the Main Street Facility at the time of disposal of hazardous substances, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), Dana is jointly and severally liable to the United States for all unreimbursed response costs incurred and to be incurred by the United States in connection with the Main Street Facility Facility, plus prejudgment interest on such costs. The United States hereby asserts a claim against Dana for all unreimbursed past and future response costs (plus interest) for the Main Street Facility, which are currently estimated to be at least $453,735.15.

16. As discussed below (in the Section "Injunctive Obligations Under Environmental Statutes") this Proof of Claim is filed in a protective manner with respect to Dana's obligation to perform work with respect to the Main Street Facility, including, but not limited to, under the UAO. EPA presently estimates that it will cost Dana and other jointly and severally liable parties approximately $600,000 to complete response action under the UAO.

### Lakeland Landfill Disposal Services, Inc., Superfund Site

17. The Lakeland Landfill Disposal Services, Inc., Superfund Site is an approximately 39-acre inactive landfill located in the City of Claypool, Kosciusko County, Indiana ("Lakeland Facility").

18. During its operation as a landfill from 1974-1978, a multitude of hazardous substances were disposed of at the Lakeland Facility, including approximately 18,000 drums of industrial waste, approximately 8,900 tons of plating sludge, and more than two million gallons of plating waste containing various hydroxide sludges.

19. Records maintained by the State of Indiana and former owners/operators of the Lakeland Facility establish that Dana arranged for disposal or treatment of plating sludge and waste, among other hazardous substances, at the Facility.

20. In March 1989, EPA listed the Lakeland Facility on the National Priorities List. In March 1989, EPA also issued an administrative order on consent in which Dana and three other responsible parties agreed to conduct a remedial investigation to determine the full extent of releases of hazardous substances from the Facility and perform a feasability study to evaluate alternatives for remedial action to prevent or mitigate the migration or releases of hazardous substances from the Facility.

21. In April 1994, EPA issued a Unilateral Administrative Order (UAO) to Dana and four other responsible parties, as entities that arranged for the disposal of hazardous

substances at the Facility. The UAO required Dana and the other responsible parties to perform the remedial action necessary to address the soil and groundwater contamination at the Facility as a result of disposal of hazardous substances. Under the UAO, Dana and the other responsible parties are still required to perform long-term operation and maintenance work, such as treatment, sampling and analysis of groundwater, to ensure that critical clean-up standards are ultimately obtained and implement institutional controls.

22. In response to the actual and threatened releases of hazardous substances at the Lakeland Facility, EPA has incurred, and will continue to incur, response costs that are not inconsistent with the National Contingency Plan, promulgated under Section 105 of CERCLA, 42 U.S.C. § 9605, and set forth at 40 C.F.R. Part 300. Through November 30, 2005, EPA has incurred approximately $1,459,000, including prejudgment interest, in unreimbursed response costs in connection with the Lakeland Facility, and EPA presently estimates that it will likely incur at least $250,000 in future response costs in overseeing the work performed under the UAO by Dana and the other responsible parties.

23. Because Dana arranged for disposal or treatment of hazardous substances (or arranged for transport of hazardous substances for disposal or treatment) at the Lakeland Facility, within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), Dana is jointly and severally liable to the United

11

States for all unreimbursed response costs incurred and to be incurred by the United States in connection with the Lakeland Facility, plus prejudgment interest on such costs. The United States hereby asserts a claim against Dana for all unreimbursed past and future response costs (plus interest) for the Lakeland Facility, which are currently estimated to be at least $1,709,000.

24. As discussed below (in the Section "Injunctive Obligations Under Environmental Statutes"), this Proof of Claim is filed in a protective manner with respect to Dana's obligation to perform work with respect to the Lakeland Facility, including, but not limited to, under the UAO. EPA presently estimates that it will cost Dana and other jointly and severally liable parties approximately $3,000,000 to complete response action under the UAO.

### West Highway 6 & 281 Hastings Superfund Site

25. The West Highway 6 & 281 Superfund Site is located near the intersection of West Highway 6 & Highway 281, with a physical address of 1900 Summit Avenue in Hastings West Industrial Park on approximately 12.5 acres in Hastings, Nebraska ("Hastings Facility").

26. As the owner of the Hastings Facility, Dana manufactured a variety of cast piston rings for internal combustion engines at its Facility from approximately 1978-2002. During the manufacturing process, Dana used volatile organic